# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| **VITAMINS ONLINE, INC.,**<br><br>Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>**HEARTWISE, INC. et al**<br><br>Defendants/Counterclaim Plaintiffs. | **MEMORANDUM DECISION AND ORDER**<br><br>**Case No. 2:13-CV-00982-DAK-PMW**<br><br>District Judge Dale A. Kimball<br><br>Magistrate Judge Paul M. Warner |

District Judge Dale A. Kimball referred this matter to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(A).[1] Before the court are the following three motions: (1) Vitamins Online, Inc.'s ("Plaintiff") motion to compel Heartwise, Inc. d/b/a NatureWise ("Defendant") to produce sample products;[2] (2) Plaintiff's motion for sanctions for an alleged spoliation of evidence;[3] and (3) Defendant's motion seeking to reopen fact discovery for the limited purpose of deposing non-party Richard Meirowitz.[4]

**1. Plaintiff's Motion to Compel**

On October 30, 2013, Plaintiff served Defendant a copy of the Complaint alleging unfair

---

[1] *See* docket no. 59.

[2] *See* docket no. 55.

[3] *See* docket no. 97.

[4] *See* docket no. 76.

competition and false and misleading advertising of Defendant's Garcinia Cambogia and green coffee dietary supplements.[5]  Specifically, Plaintiff alleges that the dietary supplements were falsely advertised because they did not meet the label claims for the products.  On July 18, 2014, Plaintiff served Defendant with its second discovery request, which included a request for "samples of each [lot] of [Defendant's] Products"[6] at issue in this case, in order to test Defendant's products to determine their contents.

Defendant answered that it would "produce samples of each [lot] of [its] Products that exist and which are in its possession."[7]  Nevertheless, Defendant did not produce any samples. After several attempts to cure the deficiency, Plaintiff filed the instant motion to compel.

Plaintiff seeks production of at least one sample bottle of each of the following:  product GCE500-180 lot numbers 3657, 4082 (expiration November 2016), 4082 (expiration January 2017), 3761, and 3844.  Plaintiff also requests that the court grant costs and fees incurred in bringing the motion.  In response, Defendant argues that regulations under the Food and Drug Administration ("FDA") require it to retain a certain quantity of each batch of its products so that they may be tested or examined by the FDA if necessary.  Defendant contends that it has only the amount of bottles required by the FDA for some of its products, and compelling it to produce those bottles to Plaintiff for testing will render it non-compliant with the FDA's regulations and possibly subject it to sanctions.

The court concludes that Defendant must produce the samples requested sufficient for

---

[5] *See* Docket no. 2.

[6] Docket no. 56, Ex. A

[7] *Id*. at Ex. B

testing as set forth in Plaintiff's motion.  While the court understands Defendant's concern regarding the FDA's regulations, this order compelling production of the samples should serve as protection against any potential sanction imposed by the FDA for failure to abide by its regulations.  Accordingly, Plaintiff's motion to compel is **GRANTED**.  However, the court denies Plaintiff's request for costs and fees incurred in bringing the motion.

    **2.  Motion for Sanctions**

Plaintiff seeks sanctions against Defendant for the destruction of samples of numerous batches of product at issue in this case related to Plaintiff's claims of false advertising.  Specifically, Plaintiff alleges that after this case was filed, Defendant destroyed, or caused to be destroyed some samples of its products in order to prevent Plaintiff from testing those products for compliance with Defendant's label and advertising assertions.  Defendant contends that once it learned of the accusations by Plaintiff that its products did not meet their label specifications, it had its products tested in order to combat those accusations.  Defendant maintains that this conduct was a reasonable response to the accusations leveled against it by Plaintiff and that its actions do not constitute spoliation of evidence.  Defendant further argues that even assuming a finding of spoliation, it did not possess the requisite intent and bad faith for an adverse inference instruction as a sanction, and any prejudice Plaintiff suffered was minimal.

Plaintiff asserts that Defendant's products subject to this motion can be placed into the following three categories: (1) products for which there are no existing samples to test ("Category 1 Products"); (2) products for which there are only two bottles remaining, which Defendant has failed to produce based on the FDA regulations requiring it to retain samples ("Category 2 Products"); and (3) products for which Defendant has three or four bottles, of

which it is willing to produce only one or one-half of one bottle to Plaintiff for testing ("Category 3 Products").  Plaintiff provided a table listing the lot numbers for Defendant's products based on how many bottles of each product Defendant has retained.

In response, Defendant contends that Plaintiff's table makes it appear as though there are numerous lots that Defendant destroyed (or failed to preserve) for which sanctions are warranted.  According to Defendant, a majority of those lots have already been tested for at least some of the allegedly false statements that go to Plaintiff's false advertising claim.  Defendant further asserts that there are only a few lots for which no testing results are available and there are only a few lots that are lacking test results with respect to only one or two of the allegedly false statements.  In essence, Defendant argues that of the total 32 lots that have some type of test deficiency, 19 lots fall within Plaintiff's "Category 2" or "Category 3," meaning that Defendant has retained at least two bottles of each of those lots.  And, thus, Defendant concludes, there are only 13 lots for which there is no way to obtain test results regarding the statements Plaintiff alleges are false.  Defendant contends that because it acted reasonably and in good faith with respect to those products, sanctions are inappropriate in this case.

Spoliation of evidence is "'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'"  *Asher Assocs. v. Baker Hughes Oilfield Operations*, No. 07-cv-01379, 2009 WL 1328483, at *5 (D. Colo. May 12, 2009) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)).  "[L]itigants have a duty to preserve documents or materials . . . that may be relevant to ongoing and potential future litigation." *Philips Elecs. N. Am. Corp. v. BC Technical*, 773 F. Supp. 2d 1149, 1196 (D. Utah 2011).  The duty to preserve may be triggered by

the filing of a lawsuit, but if a party is on notice that future litigation is likely, the duty to preserve may arise before a lawsuit is filed.  *See id.*  "A spoliation sanction is proper where (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Burlington N. & Santa Fe Ry. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007).

"If spoliation has occurred, a court may impose a variety of sanctions including dismissal, judgment by default, preclusion of evidence, imposition of an adverse inference, or assessment of attorney's fees and costs."  *Jones v. Norton*, No. 2:09-CV-730-TC, 2014 WL 909569, at *1 (D. Utah Mar. 7, 2014).  "The severity of the sanction selected should be a function of and correspond to the willfulness of the spoliator's destructive act and the prejudice suffered by the non-spoliating party."  *United States v. Koch Indus.*, 197 F.R.D. 463, 483 (N.D. Okla. Aug. 6, 1998).  "When deciding whether to sanction a party for the spoliation of evidence, courts have considered a variety of factors, two of which generally carry the most weight: (1) the degree of culpability of the party who lost or destroyed the evidence, and (2) the degree of actual prejudice to the other party."  *Jordan F. Miller Corp. v. Mid-Continent Aircraft Service, Inc.*, No. 97-5089, 1998 WL 68879, *4 (10th Cir. Feb. 20, 1998).

In the Tenth Circuit, to impose an adverse inference as a spoliation sanction, Plaintiff must demonstrate that (1) Defendant destroyed evidence that it had a duty to preserve, (2) Plaintiff was prejudiced by the destruction of the evidence, and (3) Defendant acted in bad faith. *See Moreno v. Taos County Bd. of Com'rs*, 587 Fed.Appx. 442, 444 (10th Cir. 2014).  The court will address each factor in turn.

First, the court concludes that Defendant failed to preserve evidence that it had a duty to

preserve. Defendant became aware that Plaintiff was in the process of initiating a lawsuit against it for false advertising on or about October 2, 2013, and Plaintiff filed the Complaint shortly thereafter, on October 28, 2013. The Complaint was served on Defendant on October 30, 2013. Despite its knowledge concerning this lawsuit, Defendant provided samples of Category 1, 2, and 3 Products to third-party testing facilities to be tested after it had a duty to preserve evidence relevant to this action. By sending the only available samples of many of these batches to be tested, Defendant has prevented Plaintiff from inspecting and testing the Category 1 and 2 Products to prove its false advertising claims. Defendant also has refused to produce any amount of the Category 3 that would leave Defendant in possession of less than two bottles of any particular batch pursuant to the FDA regulations discussed above.

      Second, the court likewise concludes that Plaintiff was prejudiced by the failure to preserve the evidence. Defendant's actions have prevented Plaintiff from determining the full scope of its claims. Indeed, Defendant set forth the following argument in its opposition memorandum to Plaintiff's Motion for Partial Summary Judgment of Willful False Advertising:

> [Plaintiff] fails to proffer any evidence demonstrating which lots/batches of [Defendant's] product were sold during the time that this [allegedly false advertisement] was made by [Defendant]. Accordingly, even assuming arguendo that there are batches/lots of [Defendant] Garcinia Cambogia product that did contain less than [the advertised amount], [Plaintiff] cannot show that any such batch/lot failed to meet label claims because it cannot prove that the batch/lot was sold during the period of time when the statement appeared on the label, online, or in marketing material.[8]

      Had Defendant not destroyed the Category 1 Products, Plaintiff would be able to match the label claims to each lot, and then test each lot to see whether the product met the label claims. However, by sending the Category 1 products off for testing after Defendant's duty to preserve

---

[8] Docket no. 73 at 25.

evidence attached Defendant has assured that Plaintiff cannot prove which claims were on the labels of those products and whether those products actually met the label claims. Accordingly, this court concludes that Plaintiff has been prejudiced by Defendant's failure to preserve evidence.

Finally, the court concludes that Defendant acted in bad faith when it failed to preserve samples of its products. "Bad faith, or culpability, 'may not mean evil intent, but may simply signify responsibility and control.'" *Philips*, 773 F. Supp. 2d at 1203 (quoting *Phillip M. Adams & Assocs., L.L.C. v. Dell, Inc.*, 621 F. Supp. 2d 1173, 1193 (D. Utah 2009)). Accordingly, a party acts in bad faith when it destroys the evidence over which it exercises responsibility and control to preserve. The Complaint in this matter had already been filed and Defendant chose to send its limited supply of products to be tested, thereby destroying any remaining products for testing by Plaintiff. Further evidence of bad faith arises from Defendant's argument that it could not produce the limited products it did possess because the FDA regulations required it to retain at least two bottles of every lot until at least one year after the expiration of the lot. However, rather than preserving this evidence, Defendant sent those Category 1 products for testing, destroying even the bottles it claims it was required to retain per FDA regulations. In addition, Defendant did not regularly test its products prior to this litigation. Thus, the court concludes that these facts together demonstrate bad faith on the part of Defendant in taking affirmative actions to destroy these products after this lawsuit was filed.

Based on the foregoing, Plaintiff's motion is **GRANTED**. As for the Category 1 Products, Plaintiff is entitled to entry of an adverse inference instruction that the labels of the Category 1 Products each bore all of the allegedly false ingredient claims alleged in the

Complaint and that the products failed to meet those label claims. When jury instructions are due, Plaintiff shall submit a proposed jury instruction consistent with this order to Judge Kimball who will then approve the final instruction before it is provided to the jury.

As for the Category 2 and Category 3 Products, because of the limited supply of products to test, Plaintiff proposes that the parties submit proposed testing methodologies and facilities to the court and allow the court to specify which third party facility/facilities will test the products using which testing methodologies. Each party would then be precluded from challenging the reliability of the methodology used to test the products. Defendant did not oppose this proposal in its memorandum in opposition. However, rather than have the court decide initially, within fourteen (14) days of the date of this order, the parties shall again attempt to stipulate to the testing facility and the methodologies for testing the remaining products. If the parties cannot so stipulate, each party shall submit to the court its proposed testing methodologies and facilities and the court will decide which facility and methodologies shall be used.

### 3. Defendant's Motion to Depose Richard Meirowitz

Defendant seeks to reopen fact discovery for the limited purpose of deposing non-party Richard Meirowitz. Through the course of discovery in the lawsuit, Defendant has encountered myriad reviews and comments posted by Mr. Meirowitz who is an attorney living in New York and an Amazon "top reviewer" on various pharmaceutical products on Amazon, including Defendant's products. As discovery has progressed, Defendant has discovered the extensive nature of Mr. Meirowitz's involvement and prominence in the Amazon community, and has unearthed disparaging comments that he made about Defendant as a company and of its products.

Specifically, Defendant asserts that the purpose for deposing Mr. Meirowitz is to determine whether he is, in fact, doing more than merely writing product reviews or independently commenting on Amazon forums and threads.  For example, Defendant explains that in several of Mr. Meirowitz's posts and comments regarding Defendant's products on Amazon, he purports to have actual ingredient-based product information that is not otherwise available to the public.  Defendant concedes that while it may be possible that Mr. Meirowitz obtained this information by sending Defendant's products to an independent lab for testing, it is more likely than not that he obtained the information from Plaintiff for publication in his Amazon reviews.  Defendant asserts that both Mr. Meirowitz and Plaintiff have not been candid about their communications with one another and the influence that Mr. Meirowitz has attempted to achieve as an "Amazon Top Reviewer" to dissuade the Amazon community from purchasing Defendant's products.  As such, Defendant believes that Mr. Meirowitz is not merely a product reviewer, but an agent of Plaintiff.

On January 27, 2015, Defendant served Plaintiff with a notice of intent to serve a subpoena on Mr. Meirowitz.  On February 9, 2015, Defendant served a subpoena on Mr. Meirowitz.  Defendant asserts that, while on a telephone call with Mr. Meirowitz, Mr. Meirowitz initially disavowed any relationship with Plaintiff, but soon after sent a letter changing his position and claimed an attorney-client privilege with Plaintiff.  Defendant subsequently withdrew the subpoena. Then on May 15, 2015, during a meet and confer with Plaintiff's counsel, Defendant discussed the possibility of issuing a second subpoena and deposing Mr. Meirowitz after the close of fact discovery.  After the meet and confer, Plaintiff sent an email to Defendant agreeing not to object "to [Defendant] taking the deposition of Mr. Meirowitz after

9

the close of discovery as 'untimely so long as the subpoena [was] served on Mr. Meirowitz prior to the close of discovery on May 29.'"[9]  Plaintiff contends that its agreement did not prevent it from objecting on grounds of irrelevancy, burdensomeness, and untimeliness if Mr. Meirowitz was served after May 29, 2015.  On May 29, 2015, Defendant sent a notice of intent to serve the subpoena on Mr. Meirowitz to Plaintiff and sent the subpoena for service on Mr. Meirowitz.  However, the subpoena was not served on Mr. Meirowitz until June 1, 2015.

Plaintiff and Mr. Meirowitz filed a motion to quash the subpoena in the United States District Court for the Southern District of New York.  That court granted Plaintiff's motion on grounds of untimeliness (although the subpoena was merely one day late).  As such, this court need only determine whether to reopen fact discovery for the limited purpose of deposing Mr. Meirowitz.

"Whether to extend or reopen discovery is committed to the sound discretion of the trial court."  *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987).  Under rule 6(b) of the Federal Rules of Civil Procedure, the court may extend discovery for good cause and excusable neglect.  *See* Fed. R. Civ. P. 6(b).  The Tenth Circuit has held that courts should weigh six factors when considering whether to reopen discovery:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*Smith,* 834 F.2d at 169.  In this matter, a firm trial date has not yet been set, thus this factor

---

[9] Docket No. 81 at 12.

weighs in favor of reopening discovery. Because Plaintiff opposes the deposition, the second factor weighs against reopening discovery.

The third factor addresses whether the Plaintiff would be prejudiced. *See Smith*, 834 F.2d at 169. Here, Plaintiff claims prejudice from the additional expense of the deposition. However, expense alone is usually not enough to show prejudice. *See Glob. Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.*, No. 2:13-CV-00204-DN, 2015 WL 1467352, at *2 n.44 (D. Utah Mar. 30, 2015) (citing cases holding that expense alone will not equal legal prejudice). The court finds no other prejudice against the Plaintiff. Thus, the third factor weighs in favor of reopening discovery.

The fourth factor addresses whether the moving party was diligent in obtaining discovery within the guidelines established by the Court. *See Smith*, 834 F.2d at 169. As noted by the United States District Court for the Southern District of New York, Defendant should have "sought an extension of the discovery period under Federal Rule of Civil Procedure 16(b)," but failed to do so.[10] Instead, Defendant served a subpoena to a non-party after the end of fact discovery. This court concludes that Defendant's failure to seek an extension constitutes excusable neglect. *See* Fed. R. Civ. P. 6(b). The length of delay was short. Defendant served the subpoena on Mr. Meirowitz one business day after the cutoff of fact discovery. Defendant explains that it misunderstood its agreement with Plaintiff and believed that Plaintiff would be satisfied if Defendant provided notice to Plaintiff by the end of fact discovery, which Defendant did. While the misunderstanding may have been caused by Defendant's lack of attention, the Defendant's actions appear to be in good faith. Defendant scheduled the deposition for June 16,

---

[10] Docket No. 82, Exhibit 7.

2015. But for the untimeliness of the subpoena, there appears no reason Plaintiff would have objected to the date of the subpoena. Plaintiff fails to challenge sufficiently the relevancy or burdensomeness of the deposition. Thus, Defendant's failure to seek an extension was the result of excusable neglect. The court concludes that Defendant was diligent in attempting to depose Mr. Meirowitz.

The fifth factor addresses the foreseeability of the need for additional discovery in light of the time allowed for discovery by the Court. *See Smith*, 834 F.2d at 169. In this case, the court's initial scheduling order set October 22, 2014, as the last day of discovery.[11] Subsequently, the court twice extended fact discovery. During the last extension, Defendant learned of Mr. Meirowitz and initially attempted to depose him in February 2015, but withdrew the subpoena based on representations by Mr. Meirowitz and Plaintiff. Regardless of Defendant's agreement with Plaintiff, Defendant foresaw the need to depose Mr. Meirowitz on May 15, 2015. Thus, the court finds that the fifth factor does not weigh for or against reopening discovery.

The sixth factor addresses the likelihood that the discovery will lead to relevant evidence. *See Smith*, 834 F.2d at 169. Pursuant to Fed. R. Civ. P. 26(b)(1), any discovery sought must be relevant. "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. "The district court has broad discretion over the control of discovery, and [the Tenth Circuit] will not set aside discovery rulings absent an abuse of that discretion." *See Sec. & Exch. Comm'n v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010) (quotations and citations omitted).

---

[11] Docket No. 29 at 2.

Plaintiff has accused Defendant of manipulating the Amazon.com review system. The possibility that Plaintiff has engaged in the same nefarious conduct is relevant to this case. The information sought by Defendant is likely to be relevant to the claims and defenses in the case. Thus, the sixth factor weighs in favor of reopening discovery.

Weighing the relevant factors, the court concludes that amending the scheduling order to extend fact discovery to April 29, 2016, for the limited purpose of allowing Defendant to depose non-party Richard Meirowitz is warranted. As such, Defendant's motion to depose Mr. Meirowitz is **GRANTED**.

## **CONCLUSION**

Based on the foregoing, IT IS HEREBY ORDERED that:

(1)  Plaintiff's motion to compel is **GRANTED** as set forth above;

(2)  Plaintiff's motion for sanctions is **GRANTED** as set forth above; and

(3)  Defendant's motion to reopen fact discovery for the limited purpose of deposing Mr. Meirowitz is **GRANTED**.

**IT IS SO ORDERED**.

DATED this 31st day of March, 2016.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge