IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **VITAMINS ONLINE, INC.,** | |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| **HEARTWISE, INC.,** | Case No.  2:13-CV-982-DAK |
| Defendant. | Judge Dale A. Kimball |

This matter is before the court on the Motion for Partial Summary Judgment filed by Defendant HeartWise, Inc. d/b/a NatureWise ("NatureWise"). A hearing on the matter was held on August 29, 2016. At the hearing, Vitamins Online was represented by Chad Nydegger. NatureWise was represented by Brian Johnson, William B. Ingram, and Alan R. Houston. Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law and facts relating to the matter. Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

Plaintiff Vitamins Online, Inc. ("Vitamins Online") is a Utah-based company that manufactures and sells a variety of dietary supplements online, including on Amazon.com ("Amazon"), under the brand name NutriGold. Defendant HeartWise, Inc. d/b/a NatureWise ("NatureWise") also sells dietary supplements, including on Amazon. For purposes of this suit, Vitamins Online and NatureWise sell two competing dietary supplements: one that contains an extract of garcinia cambogia and one that contains an extract of green coffee.

Vitamins Online began selling its NutriGold Garcinia Cambogia and NutriGold Green Coffee products on Amazon before 2010. Before 2010, there was little demand and competition on Amazon for these products because they were not well known to consumers.

After Dr. Mehmet Oz, the famous television personality known as "Dr. Oz," showcased dietary supplements containing garcinia cambogia and green coffee extract for weight loss purposes on his television show, "The Dr. Oz Show," in 2011 and 2012, the demand for those dietary supplements increased. With the increase in demand, other companies, including NatureWise, began to offer competing products to Vitamins Online's products. NatureWise advertised its products as having the qualities and characteristics that Dr. Oz recommended.

After entering the green coffee and garcinia cambogia markets on Amazon, NatureWise began a practice of having its employees vote on the helpfulness of some of the reviews on its product pages. Amazon lists the reviews on its product pages using a complex algorithm that takes into account the helpfulness of the review based on the voting. By having its employees vote that positive reviews were helpful and negative reviews were unhelpful, NatureWise increased the likelihood that potential customers would see positive reviews of its products first and negative reviews last. NatureWise also encouraged customers to post or repost their positive reviews on Amazon by offering them free products or gifts cards. NatureWise would review and, in some cases, make minor edits to the reviews before asking the customers to post them on Amazon. The number of positive reviews a product receives on Amazon affects that product's position in results for product searches.

On October 28, 2013, Vitamins Online filed a Complaint against NatureWise in this court claiming unfair competition under the Lanham Act and the common law for false advertising. The Complaint included a claim for unfair competition under the Lanham Act for unfairly

competing with Vitamins Online by manipulating Amazon's customer review system ("Amazon Review Claims"). Both Vitamins Online and NatureWise filed motions for summary judgment. The court denied both the motions but denied the Amazon Review Claims portion of NatureWise's motion without prejudice. Instead of granting the Amazon Review Claims portion of the summary judgment motion, the court granted Vitamins Online's 56(d) motion to conduct additional discovery. Once the additional discovery was complete, NatureWise filed a new motion for summary judgment to dismiss Vitamins Online's Amazon Review Claims.

## DISCUSSION

NatureWise filed a summary judgment motion to renew its arguments that the court should dismiss Vitamins Online's Amazon Review Claims because NatureWise argues that its actions do not qualify as false or misleading representations of fact in commercial advertising or promotion under the Lanham Act.

## STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 971 (10th Cir. 2002) (citing Fed. R. Civ. P. 56(c)). "An issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The initial burden is on the moving party to show that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has met its initial burden of demonstrating the absence of a genuine issue of material fact, "the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific

facts showing that there is a genuine issue for trial." *Sally Beauty Co.*, 304 F.3d at 971 (citing *Anderson*, 477 U.S. at 248). The Court must "construe the evidence and the reasonable inferences drawn therefrom in the light most favorable to the nonmovant," *id.* at 972 (citation omitted), but conclusory statements and attorney arguments submitted by the nonmoving party do not create a genuine issue of material fact, *see Adler v. Wal-mart Stores, Inc.*, 144 F.3d 664, 671-72 (10th Cir. 1998).

## AMAZON REVIEW CLAIMS UNDER THE LANHAM ACT

NatureWise argues that its actions do not qualify as false advertising under the Lanham Act for two main reasons. First, NatureWise argues that it did not make any false or misleading statements in commerce. Second, NatureWise argues that, to the extent that false or misleading statements can be attributed to NatureWise, Vitamins Online has not shown that the statements have been viewed by a sufficient number of people to constitute commercial advertising or promotion. The court will first analyze the terms of the statute to determine whether NatureWise's conduct is actionable under the Lanham Act. The court will then analyze relevant caselaw.

   a. **Statutory Interpretation**

"In interpreting statutes, [the court] begin[s] with the relevant language. When the terms of a statute are unambiguous, [the court's] inquiry is complete, except in rare and exceptional circumstances. In interpreting the relevant language, however, [the court] look[s] to the provisions of the whole law, and to its object and policy." *Aulston v. United States*, 915 F.2d 584, 589 (10th Cir. 1990) (citations omitted). In interpreting the statute, the court "assume[s] 'that the legislative purpose is expressed by the ordinary meaning of the words used.'" *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982) (quoting *Richards v. United States*, 369 U.S. 1,

9 (1962)); *see also Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) ("When interpreting a statute, we must give words their 'ordinary or natural' meaning." (citation omitted)). "Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Am. Tobacco*, 456 U.S. at 68 (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980)).

### b. Relevant History of the Lanham Act

As originally enacted, and until amended in 1988, Section 43(a) of the Trademark Act of 1946 (also known as the Lanham Act) stated:

> Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description of representation.

15 U.S.C. § 1125(a) (1988). Although the legislative history surrounding the passage of Section 43(a) of the Lanham Act is small and "inconclusive," *Colligan v. Activities Club of New York, Ltd.*, 442 F.2d 686, 690 (2d Cir. 1971), courts generally recognize that the Act was intended to reduce the burden on plaintiffs to succeed in trademark infringement cases, *see Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 648 n.7 (3d Cir. 1958) (noting that the willfulness and intent provisions of the 1920 Act were purposefully excluded from the Lanham Act), and to provide a general federal law for unfair competition and unfair trade practices, *see Skil Corp. v. Rockwell Int'l Corp.*, 375 F. Supp. 777, 782 (N.D. Ill. 1974) ("Congress undoubtedly recognized and intended to remedy the destructive effect that *Erie v. Tompkins* had upon the development of

a uniform federal common law of unfair competition which was essential in a nation where interstate commerce was dominant."). Despite these broad purposes, courts initially were hesitant to interpret the Lanham Act as doing more than codifying trademark law that was in existence prior to the passage of the Act. *See, e.g.*, *Samson Crane Co. v. Union Nat'l Sales, Inc.*, 87 F. Supp. 218, 222 (D. Mass. 1949) ("[Section 43(a) of the Lanham Act] should not be interpreted so as to bring within its scope any kind of undesirable business practice which involves deception, when such practices are outside the field of the trade-mark laws, and especially when such undesirable practices are already the subject of other Congressional legislation."). Some courts even noted this hesitancy to apply the Act to the full extent of its textual language. *See, e.g.*, *Maternally Yours, Inc. v. Your Maternity Shop, Inc.*, 234 F.2d 538, 546 (2d Cir. 1956) (Clark, C.J., concurring) ("Indeed there is indication here and elsewhere that the bar has not yet realized the potential impact of [Section 43(a) of the Lanham Act]."); *Skil Corp. v. Rockwell Int'l Corp.*, 375 F. Supp. 777, 786 (N.D. Ill. 1974) ("Perhaps this lack of consistency is best explained as being evidence of the fact that the judiciary has yet to reach the limits of the coverage of the Act.").

Beginning with *L'Aiglon Apparel, Inc. v. Lana Lobell, Inc.*, 214 F.2d 649 (3d Cir. 1954), courts began interpreting Section 43(a) of the Lanham Act more broadly. *L'Aiglon Apparel*, 214 F.2d at 651 ("We find nothing in the legislative history of the Lanham Act to justify the view that [section 43(a)] is merely declarative of existing law."). Courts eventually began interpreting the law as creating a new federal statutory tort that was defined by its statutory terms. *See, e.g.*, *Gold Seal Co. v. Weeks*, 129 F. Supp. 928, 940 (D.D.C. 1955) ("Section 43(a) does create a federal statutory tort, *sui generis*."). Using the terms of the statute as a guide, courts determined that "Section 43(a) of the Lanham Act provides for two separate causes of action: one for 'false

designation of origin,' the other for 'false description or representation, including words or symbols tending falsely to describe or represent' the product." *Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 188 (2d Cir. 1980); *see also Res. Developers, Inc. v. Statue of Liberty-Ellis Island Found., Inc.*, 926 F.2d 134, 139 (2d Cir. 1991) (interpreting Section 43(a) to include "two distinct causes of action: false designation of origin or source, known as 'product infringement,' and false description or representation, known as 'false advertising'"); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1384 (2014) (interpreting a later version of Section 43(a) as creating "two distinct bases of liability: false associations . . . and false advertising.").

Although the false advertising portion of the original version of Section 43(a) only required a "false description or representation, including words or other symbols tending falsely to describe or represent the same," 15 U.S.C. § 1125(a) (1988), courts generally interpreted that phrase as requiring "false statements of fact," or a similar requirement, to sufficiently state a false advertising claim under the statute. *See Skil Corp. v. Rockwell Int'l Corp.*, 375 F. Supp. 777, 782-83 (N.D. Ill. 1974) (listing elements a plaintiff was required to allege "in order to state a claim upon which relief may be granted under Section 43(a) of the Lanham Act" including that "defendant made false statements of fact about its own product").

In 1988, Congress passed the Trademark Law Revision Act ("TLRA"), which, among other things, amended Section 43(a) of the Lanham Act to both codify judicial interpretations of Section 43(a) and to extend its coverage. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 783 (1992) (Stevens, J., concurring) ("Congress codified the judicial interpretation of section 43(a), giving its imprimatur to a growing body of case law from the Circuits that had expanded the section beyond its original language."); *ALPO Petfoods, Inc. v. Ralston Purina*

*Co.*, 913 F.2d 958, 964 & n.6 (D.C. Cir. 1990) ("Congress intended that the section 43(a) amendments largely codify pre-1988 case law."). The amendments extended the coverage of the act by allowing false advertising claims about another person's goods, services, or commercial practices, such as trade libel and product disparagement. *Gordon & Breach Sci. Publishers, S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1530 (S.D.N.Y. 1994) ("Under the 1988 amendments to Section 43(a), trade libel and product disparagement claims became actionable."). Another way the TLRA amendments extended the coverage of the Lanham Act was by adding "'commercial activities' to the original coverage of the provision, which until then had been applicable exclusively to 'goods or services.'" *Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1273 (10th Cir. 2000).

The TLRA also made structural amendments to the Section 43(a) of the Lanham Act. The structural amendments to Section 43(a) divided the prohibited conduct from the unlawful effects of that conduct and further divided the unlawful effects of product infringement/false association and false advertising causes of action into separate subsections. The post-TLRA version of Section 43(a) of the Lanham Act provides:

(a) Civil Action

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a) (2012). Under the new structure of the statute, the prohibited conduct of both product infringement/false associations and false advertising is found in Section 43(a)(1) and applies to both subsection (A), which lists the unlawful effects of product infringement/false associations causes of action, and subsection (B), which lists the unlawful effects of false advertising causes of action. This new structure opens the door to a wider range of false advertising causes of action that do not necessarily require a false or misleading description or representation of fact.

    a.  Conduct

Section 43(a)(1) of the Lanham Act describes the actionable conduct by a defendant that is typically associated with product infringement/false association causes of action and the actionable conduct by a defendant that is typically associated with false advertising causes of action. Based on the structure of the statute, all of that conduct then applies to both of the unlawful effect subsections. In other words, although the conduct described as the use of "any word, term, name, symbol, or device, . . . or any false designation of origin" is most clearly applicable to product infringement/false associations causes of action, *see, e.g.*, 15 U.S.C. § 1127 (2012) (using phrase "word, name, symbol, or device" in definitions of "trademark," "service mark," and "certification mark"), and although the conduct described as the use of a "false or misleading description of fact, or false or misleading representation of fact" is most clearly applicable to false advertising causes of action, the structure of the statute allows for either set of prohibited conduct to apply to either cause of action. Therefore, although most false advertising claims are based on the "false or misleading description of fact, or false or misleading representation of fact" language, the statute unambiguously allows for a false advertising claim

to be based on the "any word, term, name, symbol, or device" language as long as the use of that conduct "in commercial advertising or promotion" results in the unlawful effect of "misrepresent[ing] the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1) (2012).

In terms of NatureWise's conduct related to the Amazon Review Claims, the most relevant word in Section 43(a)(1) of the Lanham Act is "device," which is not defined in the Act. The ordinary meaning of the word "device" is "a piece of equipment or a mechanism designed to serve a special purpose or perform a special function." *Merriam Webster's Collegiate Dictionary* 317 (10th ed. 1993).

Vitamins Online offers evidence that NatureWise offered free product in exchange for posting positive reviews on its Amazon product pages and asked its employees to block vote on the helpfulness of reviews, both of which Vitamins Online argues are violations of the Lanham Act. NatureWise does not dispute that it performed this conduct. Instead, NatureWise argues that its conduct does not qualify as false advertising under the terms of the Lanham Act because it did not *make* a statement in commerce. But, to fall within the text of the Lanham Act, a defendant does not need to *make* a statement but only needs to *use* a statement or other form of conduct specified in the Act. Therefore, determining whether NatureWise *made* the statements at issue in this case is irrelevant to determining whether its conduct falls within the terms of the act.

Using the ordinary meaning of the word "device," the court concludes that either form of conduct performed by NatureWise could qualify as the use of a device in commerce as described by Section 43(a)(1) of the Lanham Act. By offering free products in exchange for the posting of positive reviews on its Amazon product pages, NatureWise was using a mechanism for the special purpose of increasing the number of positive reviews for its products. Similarly,

NatureWise used a mechanism provided by Amazon for customers to rate the helpfulness of reviews for the special purpose of increasing the visibility of positive reviews and decreasing the visibility of negative reviews.

NatureWise finds it significant that Vitamins Online is not able to point to a specific review or a specific helpfulness vote that was caused by NatureWise. The court does not find this fatal to Vitamins Online's claims. NatureWise does not dispute that it offered free products to customers in exchange for the posting of positive reviews, and Vitamins Online has produced several emails that demonstrate that NatureWise would ask its employees to vote on the helpfulness of positive and negative reviews to increase or decrease the visibility of those reviews, respectively. The court finds this evidence sufficient at the summary judgment stage to create a genuine issue of material fact as to whether NatureWise used the mechanisms described to encourage the posting of positive reviews and to vote on the helpfulness of some of the customer reviews on NatureWise's Amazon product pages.

    **b. Effect**

Even though the court concludes that NatureWise's conduct is sufficient to fall within the terms of Section 43(a)(1) of the Lanham Act, that conduct is only actionable if it leads to the unlawful effects also described in the Act. For false advertising claims, the prohibited conduct is actionable if the conduct, "in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of [the defendant's] or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B) (2012). For purposes of this case, the two most relevant pieces of the effects portion of a false advertising claim under the Lanham Act are that the conduct must have taken place "in commercial advertising or promotion" and

that the conduct must have the effect of "misrepresent[ing]" the nature, characteristics, or qualities of the defendant's goods or commercial activities.

**Commercial Advertising or Promotion**

The Tenth Circuit has adopted a four-part test for determining whether a defendant's conduct constitutes "commercial advertising or promotion" under Section 43(a)(1)(B) of the Lanham Act. *Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1273 (10th Cir. 2000). In order to qualify as commercial advertising or promotion, the conduct "must be: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff: (3) for the purpose of influencing consumers to buy defendant's goods or services . . . [and] (4) must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Id.* at 1273-74 (quoting *Gordon & Breach Sci. Publishers, S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1535-36 (S.D.N.Y. 1994)).

NatureWise argues that its conduct does not meet this test because NatureWise was not the source of the statements at issue and because Vitamins Online has not proven that the statements at issue were viewed by a sufficient number of the relevant purchasing public. As already mentioned, to fall within the text of the Lanham Act, a defendant does not need to *make* a statement but only needs to *use* a statement or other form of conduct specified in the Act. The court has already concluded that NatureWise's conduct falls within the terms of the Act.

NatureWise also argues that, even if its conduct is sufficient to fall within the terms of the Lanham Act, Vitamins Online has not shown that the statements at issue were viewed by a sufficient number of the relevant purchasing public. NatureWise cites to several cases that seem to imply that Vitamins Online is required to demonstrate that the statements at issue were viewed by a significant number of the relevant purchasing public. *See, e.g.*, *Sports Unlimited, Inc. v.*

*Lankford Enters., Inc.*, 275 F.3d 996, 1004 (10th Cir. 2002) ("Plaintiff has failed to show evidence of sufficient communications with any prospective customers or persons . . . who might have influence over prospective customers."); *Gen. Steel Domestic Sales, LLC v. Chumley*, 129 F. Supp. 3d 1158, 1175 (D. Colo. 2015) ("[T]o constitute an actionable advertising or promotional campaign, a dissemination of information must reach some numerically-significant quantity of actual or potential customers of the parties' products.").

Despite language in some cases suggesting a plaintiff is required to show that the information reached or was viewed by a certain number of prospective customers, the court concludes that the test only requires a showing that the information was sufficiently *disseminated* to the relevant purchasing public. In each of the cases relied on by NatureWise, the courts required the plaintiff to show that the information at issue reached a sufficient proportion of the relevant purchasing public because the information was not disseminated using a traditional advertising or promotional forum. *See, e.g.*, *Sports Unlimited*, 275 F.3d at 1004 ("[E]vidence was provided that Defendant had distributed the allegedly false reference list only to the contractor and architect on the Larned project."); *Gen. Steel*, 129 F. Supp. 3d at 1175 ("[Defendants] never intended *any* human being to read the material [Defendants] posted."). The court recognizes that the test only requires "*some* level of *public* dissemination of information" and does not require that the information be disseminated "in a 'classic advertising campaign.'" *Sports Unlimited*, 275 F.3d at 1004-05 (emphasis in original) (citations omitted). But when the information is included in a classic advertising campaign, the information is generally understood to have been disseminated to the public, and, therefore, generally meets the fourth prong of the test for commercial advertising or promotion.

In this case, the information at issue, the customer reviews and the statistics about the helpfulness votes on the customer reviews, was available for viewing on the Amazon product pages for NatureWise's products. Because NatureWise only sells the products at issue in this case through the Amazon product pages, the customer reviews and associated statistics were available for viewing at the exclusive point of sale for the products that they were associated with. Therefore, although it is unclear how many of NatureWise's actual or potential customers viewed the reviews and associated statistics, that information was disseminated to all of NatureWise's actual or potential customers that visited the product pages. Therefore, the court concludes that the information at issue in this case constitutes commercial advertising or promotion of NatureWise's products for purposes of Vitamins Online's Lanham Act claims.

**Misrepresent**

Although the Lanham Act requires a defendant's conduct to misrepresent his or her goods, services, or commercial activities in order to support a false advertising claim, the Act does not define "misrepresent." The ordinary meaning of the word "misrepresent" is "to give a false or misleading representation of usually with an intent to deceive or be unfair." *Merriam Webster's Collegiate Dictionary* 744 (10th ed. 1993).

Although the court has concluded that NatureWise's offer of free products in exchange for positive reviews may constitute the use of a device in commercial advertising or promotion, the court concludes that Vitamins Online has not provided sufficient evidence that NatureWise's conduct gave a false or misleading representation of the nature, characteristics, or qualities of NatureWise's goods or commercial activities. Although Vitamins Online has demonstrated that NatureWise was willing to give, and likely did give, free samples to some customers who posted positive reviews, Vitamins Online has not shown that the reviews posted by the customers were

not genuine. In other words, although the free products encouraged the customers to post their reviews on Amazon, Vitamins Online has not shown that the free products were used to encourage the customers to post false or misleading reviews on Amazon. Because Vitamins Online has failed to show that any of the reviews, even those reviews incentivized by free product, were counter to the actual experience of the customers, Vitamins Online has not met its burden of showing that NatureWise's practice of offering free products in exchange for the posting of reviews on Amazon in actionable under Section 43(a) of the Lanham Act.

On the other hand, the court concludes that NatureWise's attempt to manipulate the prominence of the reviews by block voting on the helpfulness of the reviews may give a false or misleading representation of the nature, characteristics, or qualities of NatureWise's goods or its commercial activities. NatureWise used a device for customers to rate the helpfulness of reviews on Amazon in order to increase the visibility of positive reviews and to decrease the visibility of negative reviews by block voting on those reviews. The reviews, and the statistics summarizing those reviews, were located on a portion of the product page labeled "Customer Reviews." Although the reviews can be filtered and sorted by different criteria, the default is to list the reviews based partially on their helpfulness rating with the highest rated reviews listed first under the heading of "Most Helpful Customer Reviews." The representation being made by the placement of these reviews on the product page is that customers wrote, posted, and rated the reviews and that the reviews that appear first in the list are the ones that customers found to be most helpful.

Although NatureWise has argued that Vitamins Online is required to show that the information on the website actually deceived potential customers, the court "need not explore this argument deeply" because "it is readily apparent, in the light most favorable to [Vitamins

Online]," that the information used by NatureWise on Amazon "could be likely to deceive customers." *Gen. Steel Domestic Sales, LLC v. Chumley*, 129 F. Supp. 3d 1158, 1185 (D. Colo. 2015). As in the *General Steel* case,

> [t]his is not a circumstance where the false representations are orthogonal to the purpose for which customers would turn to the website for information, such that they would not be likely to affect a purchasing decision, or a circumstance in which the representations are so inconsequential or hyperbolic that reasonable consumers would reflexively reject or ignore them.

*Id.* Amazon provides a platform for customers to review NatureWise's products and to vote on others' reviews of NatureWise's products. Potential customers turn to those reviews to assess customers' reactions to the product and to assist them in their purchasing decisions. By having its employees use the device provided by Amazon to block vote on the helpfulness of Amazon reviews, NatureWise may be misleading potential customers into believing that a certain number of customers found a review to be helpful when, in reality, NatureWise employees made up a block of those votes. Therefore, the court concludes that Vitamins Online has presented sufficient evidence to create a genuine issue of material fact as to whether NatureWise's use of the device for voting on the helpfulness of customer reviews on Amazon misrepresented the nature, characteristics, or qualities of NatureWise's goods or its commercial activities.

### c. Lanham Act False Advertising Caselaw

The court finds the terms of the Lanham Act to be unambiguous and, therefore, does not need to extend its analysis into relevant caselaw. However, an analysis of the relevant caselaw is necessary in this case because the court is not aware of, and the parties have not identified, any court that applies the Lanham Act to the full extent of its textual language as suggested in this Order. The Tenth Circuit generally requires a plaintiff to demonstrate four elements "[i]n order to succeed on a false advertising claim under § 43(a) of the Lanham Act":

> (1) that defendant made material false or misleading representations of fact in connection with the commercial advertising or promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the goods or services; and (4) injure the plaintiff.

*Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1252 (10th Cir. 1999) (citations omitted).

In order for an omission to be actionable under this test, the omission must be "relevant to an affirmative statement that is made false or misleading by its omission." *Wellnx Life Scis. Inc. v. Iovate Health Scis. Research Inc.*, 516 F. Supp. 2d 270, 285-86 (S.D.N.Y. 2007) (citing *Register.com, Inc. v. Domain Registry of Am., Inc.*, 2002 U.S. Dist. 24795, at *50 (S.D.N.Y. Dec. 27, 2002) (unpublished)). In other words, whether the plaintiff is alleging that the defendant made a statement or omitted information, the test requires the existence of an affirmative statement that is false or misleading.

The Tenth Circuit's test is very similar to tests for false advertising under the Lanham Act that were used before the TLRA amendments to the Act, which also often required "false statements of fact." *See, e.g.*, *Skil Corp. v. Rockwell Int'l Corp.*, 375 F. Supp. 777, 783 (1974). Under this test, and similar tests adopted in other Circuits, allegations must include a false statement of fact in order to state a claim for false advertising under the Lanham Act. *See, e.g.*, *Intermountain Stroke Ctr., Inc. v. Intermountain Health Care, Inc.*, 638 Fed. Appx. 778, 784-786 (10th Cir. 2016) (unpublished) (referring to "representations attributed to the defendant" as "the threshold component of a Lanham Act claim" and concluding that expressions of opinion "cannot form the basis of a false-advertising Lanham Act claim"); *see also Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495-96 (5th Cir. 2000) ("Essential to any claim under section 43(a) of the Lanham Act is a determination of whether the challenged statement is one of fact—actionable under section 43(a)—or one of general opinion—not actionable under section

43(a)."); *Groden v. Random House, Inc.*, 61 F.3d 1045, 1051 (2d Cir. 1995) ("[S]tatements of opinion are generally not the basis for Lanham Act liability."); *Novell, Inc. v. Network Trade Ctr.*, 25 F. Supp. 2d 1218, 1227 (D. Utah 1997) (stating that "[t]o establish a claim for false advertising, a plaintiff must prove, . . . the defendant has made false or misleading statements"). "A 'literally false' message may be either explicit or conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." *Interlink Products Int'l, Inc. v. F&W Trading*, No. 15-1340 (MAS) (DEA), 2016 WL 1260713, at *9 (D.N.J. Mar. 31, 2016) (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 586-87 (3d Cir. 2002)).

Using this test, NatureWise argues that the absence of an affirmative statement made by NatureWise to consumers is fatal to Vitamins Online's Amazon Review Claims. In addition to the argument that NatureWise did not make any of the alleged statements, which the court already considered and rejected under the terms of the statute, NatureWise also argues that none of the statements at issue are "false or misleading representations of fact" as required by the Tenth Circuit's test. *See Cottrell*, 191 F.3d at 1252. NatureWise argues that Vitamins Online has not, and cannot, identify any statement that is false or misleading or that was made false or misleading by omitting information about NatureWise incentivizing reviews or voting on the helpfulness of reviews.

Even under this more narrow interpretation of Section 43(a) of the Lanham Act, which the court does not believe is warranted by the statutory language, the court still concludes that Vitamins Online has identified sufficient issues of material fact to withstand summary judgment on its Amazon Review Claims. Amazon posts statements on its product pages about the number

of individuals who have voted on the helpfulness of customer reviews. The information is found on a section of the product page that is labeled such that visitors to the page expect to find information there from actual or potential customers. Considering the statement in its entirety, the audience would consider the statement to mean that a certain number of customers found the review to be helpful. Because Vitamins Online has demonstrated that the reality, that some customers *and* a block of employees of the manufacturer voted on the helpfulness of some of the review, may be different than the implied representation, that a certain number of *customers* voted on the helpfulness of some of the reviews, the court concludes that genuine issues of material fact exist as to whether the statements are false by necessary implication. *See Interlink Prods. Int'l, Inc. v. F&W Trading*, 2016 WL 1267013, at *9 (D.N.J. Mar. 31, 2016) ("As alleged, Defendants purposefully drive up Amazon product ratings by enlisting inherently biased professional reviewers intending for consumers to rely on the misleading heightened reviews when selecting a product for purchase.").

Based on the existing caselaw surrounding false advertising claims under the Lanham Act, the court believes that, once again, "the judiciary has yet to reach the limits of the coverage of [Section 43(a) of the Lanham Act]." *Skil Corp. v. Rockwell Int'l Corp.*, 375 F. Supp. 777, 786 (N.D. Ill. 1974). Although it is unlikely that Congress was contemplating the type of false advertising described in this case when it wrote and amended Section 43(a) of the Lanham Act, the broad language in the Act is sufficient to cover novel methods of false advertising such as this. The broad language of Section 43(a) of the Lanham Act should serve as a warning to online retailers that they should leave customer reviews to customers.

The court is aware of the concern that interpreting Section 43(a) of the Lanham Act too broadly could allow Section 43(a) to become a "federal codification of the overall law of unfair

competition," which is not the purpose of the Act. *Wellnx Life Scis. Inc. v. Iovate Health Scis. Research Inc.*, 516 F. Supp. 2d 270, 284 (S.D.N.Y. 2007) ("While the traditional core of liability created under subsection (a)(1)(B) is false advertising, the provision is broadly worded and covers more than traditional commercial advertising and promotional activities. However, courts must be mindful that '[section] 43(a) can never be a federal codification of the overall law of unfair competition.'" (citation omitted)). However, the court notes that, even under the interpretation of Section 43(a) of the Lanham Act in this Order, several "causes of action related to unfair competition" would still not be covered by the Act, including "trade secret violations," "[c]ontractual disputes," and "false claims of trademark rights." Ethan Horwitz and Benjamin Levi, *Fifty Years of the Lanham Act: A Retrospective of Section 43(a)*, 7 Fordham Intell. Prop., Media and Ent. L.J., 59, 72 (1996).

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that NatureWise's Motion for Partial Summary Judgment is GRANTED in part and DENIED in part. Summary judgment is granted with respect to Vitamins Online's claim for false advertising based on the offering of free products in exchange for the posting of positive reviews, but summary judgment is denied with respect to Vitamins Online's claims for false advertising based on NatureWise's practice of block voting on the helpfulness of customer reviews.

DATED this 19th day of September, 2016.

BY THE COURT:

DALE A. KIMBALL
United States District Judge