**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| **VITAMINS ONLINE, INC., a Delaware corporation,**<br><br>                          **Plaintiff,**<br>**v.**<br><br>**HEARTWISE, INC., an Oregon corporation d/b/a NATUREWISE,**<br><br>                          **Defendant.** | **\*SEALED\***<br><br>**MEMORANDUM DECISION AND ORDER**<br><br>**Case No. 2:13-cv-00982-DAK**<br><br>**Judge Dale A. Kimball** |

This matter is before the court on Plaintiff Vitamins Online's, Inc.'s Motion for Summary Judgment on Review Claims [ECF No. 299], Motion for Summary Judgment on Product Claims[1] [ECF No. 302], Motion for Summary Judgment Dismissing Counterclaims [ECF No. 308], Motion to Exclude Testimony of HeartWise, Inc's Expert Witness Richard S. Hoffman [ECF No. 304], Motion to Exclude Expert Testimony of Dr. You [ECF No. 305], Motion to Exclude Testimony of Mollie Kober [ECF No. 306], and Motion to Exclude testimony of Thomas Barman [ECF No. 307], and Defendant HeartWise, Inc.'s  Renewed Motion for Summary Judgment on Review Claims [ECF No. 274], Motion for Partial Summary Judgment on Ingredients Claims [ECF No. 298], Motion for Summary Judgment to Preclude Disgorgement Remedy [ECF No. 300], Motion to Exclude Testimony of Julian McAuley [ECF No. 288], Motion to Exclude testimony of Michael A. Belch [ECF No. 289], Motion to Exclude Product

---

[1] Although Vitamins Online titles its motion as being based on its "Product Claims," it is primarily on the same subject matter as NatureWise's Motion for Partial Summary Judgment on Ingredients Claims.  Vitamins Online argues that calling the claims "Ingredients Claims" does not adequately represent their assertions, even though the court has used this phrase throughout the case.  For simplicity and consistency purposes, the court will use the phrase "Ingredients Claims" for both motions throughout this Order.

Testing Testimony of Norman Howe [ECF No. 290], Motion to Exclude GMP Testimony of

Norman Howe [ECF No. 291], Motion to Exclude Testimony of Tommy Noonan [ECF No.

292], Motion to Exclude Testimony of Stan V. Smith [ECF No. 293], Motion to Strike Plaintiff's

Jury Demand [ECF No. 376], Objection and Motion to Strike [ECF No. 406], and Omnibus

Objections to Evidence Cited in and Submitted in Support of Vitamins Online's Reply

Memoranda [ECF No. 407].  The court held a hearing on the Motions for Summary Judgment on

September 4, 2019.  At the hearing, Plaintiff was represented by James E. Magleby, David F.

Mull, and Edgar R. Cataxinos, and Defendant was represented by Joseph R. Trojan and E. Scott

Savage.  The court took the matters under advisement.  The court considered carefully the

memoranda and other materials submitted by the parties, as well as the law and facts relating to

the motions.  Now being fully advised, the court issues the following Memorandum Decision and

Order.

## BACKGROUND

Vitamins Online, Inc. ("Vitamins Online") is a Utah-based company that manufactures

and sells a variety of dietary supplements online, including on Amazon.com ("Amazon"), under

the brand name NutriGold.  Osman Khan ("Khan") is the Chief Financial Officer ("CFO") of

Vitamins Online.  HeartWise, Inc. d/b/a NatureWise's ("NatureWise") also sells dietary

supplements, including on Amazon.  DavidPaul Doyle ("Doyle") is NatureWise's Chief

Executive Officer ("CEO").  For purposes of this suit, Vitamins Online and NatureWise sell two

competing dietary supplements: one that contains an extract of garcinia cambogia and one that

contains an extract of green coffee.

Vitamins Online began selling its NutriGold Garcinia Cambogia and NutriGold Green Coffee products on Amazon before 2010.  Before 2010, there was little demand and competition on Amazon for these products because they were not well known to consumers.

After Dr. Mehmet Oz, the famous television personality known as "Dr. Oz," showcased dietary supplements containing garcinia cambogia and green coffee extract for weight loss purposes on his television show, "The Dr. Oz Show," in 2011 and 2012, the demand for those dietary supplements increased.  With the increase in demand, other companies, including NatureWise, began to offer competing products to Vitamins Online's products.  NatureWise advertised its products as having the qualities and characteristics that Dr. Oz recommended.

After entering the green coffee and garcinia cambogia markets on Amazon, NatureWise began a practice of having its employees vote on the helpfulness of some of the reviews on its product pages.  Amazon lists the reviews on its product pages using a complex algorithm that takes into account the helpfulness of the review based on the voting.  By having its employees vote that positive reviews were helpful and negative reviews were unhelpful, NatureWise increased the likelihood that potential customers would see positive reviews of its products first and negative reviews last.  NatureWise also encouraged customers to post or repost their positive reviews on Amazon by offering them free products or gifts cards.  NatureWise would review and, in some cases, make minor edits to the reviews before asking the customers to post them on Amazon.  The number of positive reviews a product receives on Amazon affects that product's position in results for product searches.

On October 28, 2013, Vitamins Online filed a complaint against NatureWise and Doyle in this court alleging unfair competition under the Lanham Act and common law for false advertising and demanded a jury trial.  The Complaint alleged false advertising based on two

types of conduct: (1) manipulating Amazon's customer review system ("Review Claims"); and (2) falsely advertising and misrepresenting the content and characteristics of its green coffee and garcinia cambogia products ("Ingredients Claims").  On November 20, 2013, NatureWise filed its Answer and moved to dismiss Doyle from the case for lack of personal jurisdiction.  Vitamins Online consented to his dismissal, and the court dismissed him from the case without prejudice in February 2014.  The Answer included counterclaims against Vitamins Online and a third-party complaint against NutriGold and Khan.  The counterclaims and third-party complaint alleged six causes of action: (1) violation of section 43(a)(1)(A) of the Lanham Act (28 U.S.C. § 1125(a)(1)(A)); (2) violation of section 43(a)(1)(B) of the Lanham Act (28 U.S.C. § 1125(a)(1)(B)); (3) common law unfair competition; (4) defamation per se; (5) defamation; and (6) intentional interference with economic relations.  The counterclaims alleged that Vitamins Online had interfered with NatureWise's suppliers and consumers and made various false accusations about NatureWise's products.  NatureWise alleged that Kahn purchased over one thousand bottles of one of its garcinia cambogia products and then resold those bottles with an insert that was entitled "AS IS."  The insert cautioned purchasers to read it before opening the bottle or else the purchaser would unable to return it for a refund.  The insert then explained that the product did "not contain inside the bottle what is claimed on the outside label," that a third-party laboratory had tested and concluded that the label did not entirely match the content of the bottle, and that NatureWise's online product reviews were not genuine.  The insert also claimed that the manufacturer was being sued for its scams and purported fraudulent practices.  Lastly, Vitamins Online and Nutrigold posted comments on negative reviews that consumers left on NatureWise's Amazon page in which they allegedly further disparaged NatureWise.

Eventually, both Vitamins Online and NatureWise filed motions for summary judgment. Specifically, Vitamins Online argued that the undisputed material facts established the validity of its Ingredients Claims. NatureWise responded by arguing that Vitamins Online had failed to demonstrate that the representations regarding its Ingredients Claims were material or had caused Vitamins Online actual injury. NatureWise further moved for summary judgment on the Review Claims arguing that Vitamins Online had failed to demonstrate that NatureWise's alleged conduct amounted to either literally false or impliedly false representations. The court denied both the motions (the "First Order") but denied the Review Claims portion of NatureWise's motion without prejudice. Instead of granting the Review Claims portion of the summary judgment motion, the court granted Vitamins Online's 56(d) motion to conduct additional discovery.

After the additional discovery was complete, NatureWise filed a new motion for summary judgment to dismiss the Review Claims. The court granted in part and denied in part NatureWise's motion (the "Second Order"). Specifically, the court granted summary judgment with respect to Vitamins Online's claim for false advertising based on the offering of free products in exchange for the posting of positive reviews but denied summary judgment with respect to Vitamin's Online claims for false advertising based on NatureWise's practice of block voting on the helpfulness of customer reviews. Then, on May 11, 2017, the court vacated the Second Order because the court had granted it based on various assumptions, including that expert discovery was complete, but at that point, it was not. Thus, the court vacated the part of the Second Order granting NatureWise summary judgment and allowed Vitamins Online to continue its expert discovery.

Then, in January 2019, when Vitamins Online again moved for summary judgment, it clarified which remedies it would continue pursuing in this case: disgorgement and injunctive relief.  It therefore elected to limit its monetary recovery to "defendant's profits."

On March 29, 2019, after both parties had moved for summary judgment again, NatureWise moved to dismiss all its claims with a right to a jury.  More specifically, it moved to dismiss its Fourth, Fifth, and Sixth Causes of Action.  It also clarified that the only remedies it now seeks are an injunction and disgorgement of Vitamins Online's profits, and it withdrew its demand for a jury trial.  The court granted NatureWise's Motion on August 19, 2019.

## DISCUSSION

Both parties now move for summary judgment on the Review Claims and Ingredients Claims, NatureWise seeks summary judgment to preclude disgorgement, and Vitamins Online seeks summary judgment to dismiss the counterclaims.  In addition, each party seeks to exclude the testimony of the other's expert witnesses and raises evidentiary objections, and NatureWise moves to strike Vitamins Online's jury trial demand.  Given the number of motions pending before the court, the court will proceed with its analysis in the following manner: first, the court will address the motions to exclude expert testimony and evidentiary objections as the motions for summary judgment depend on that testimony and evidence; the court will then address the motions for summary judgment by addressing the Review Claims motions together and the Ingredients Claims motions together, and then resolve the remaining motions regarding disgorgement and the counterclaims; lastly, the court will conclude by addressing NatureWise's motion to strike Vitamins Online's jury trial demand.

I.        **Motions to Exclude Expert Testimony**

The standard for the admissibility of expert testimony is governed by Federal Rule of

Evidence 702.  Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training,
> or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the
> trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the
> case.

Fed. R. Evid. 702.  When applying Rule 702 to analyze whether an expert will be allowed to

testify, it is important to remember that the exclusion of expert testimony is generally treated as

"the exception, not the rule."  *Randolph v. QuikTrip Corp.*, No. 16-1063-JPO, 2017 WL

2181120, at *2 (D. Kan. May 18, 2017).  Still, a district court must play a "gatekeeping role" to

ensure that only proper expert evidence under Rule 702 is introduced to the fact finder at trial.

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).  That gatekeeping role,

however, "is not intended to serve as a replacement for the adversary system."  *Bimbo Bakeries*

*USA, Inc. v. Sycamore*, No. 2:13-CV-00749, 2017 WL 1377991, at *2 (D. Utah Mar. 2, 2017).

Rather, "the appropriate means of attacking shaky but admissible evidence is through vigorous

cross-examination, and the presentation of contrary evidence."  *Id.*

"In assessing whether testimony will assist the trier of fact, district courts consider

several factors, including whether the testimony 'is within the juror's common knowledge and

experience,' and 'whether it will usurp the juror's role of evaluating a witness's credibility.'"

*United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1136 (10th Cir. 2014) (quoting *United States*

*v. Garcia*, 635 F.3d 472, 476–77 (10th Cir. 2011)).  In making this assessment, courts are to

7

"conduct a common-sense inquiry into whether a juror would be able to understand certain evidence without specialized knowledge." *Id.* (quotation marks omitted).  Significantly, if there are any doubts as to whether an expert's testimony will be useful, such doubts "should generally be resolved in favor of admissibility." *Id.*  Therefore, Rule 702 permits an expert's testimony "if it will simply help the trier of fact to understand the facts already in the record, even if all it does is put those facts in context." *Id.* (quoting 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 702.03 [1] (Joseph M. McLaughlin, ed., Matthew Bender, 2d ed. 2014)).

Lastly, a district court has "'wide discretion' in determining whether a witness's experience is sufficient to qualify him [or her] as an expert." *Ronwin v. Bayer Corp.*, 332 F. App'x 508, 513 (10th Cir. 2009) (quoting *United States v. Arney*, 248 F.3d 984, 991 (10th Cir. 2001)).  "[A]s long as an expert stays within the reasonable confines of his [or her] subject area," Tenth Circuit case law dictates that "a lack of specialization does not affect the admissibility of [the expert] opinion, but only its weight." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001).  Put differently, if "there is a logical basis for an expert's opinion, the weaknesses in the underpinnings of the opinion go to the weight and not the admissibility of the testimony." *McDonald v. N. Am. Specialty Ins. Co.*, 224 F. App'x 761, 767 (10th Cir. 2007) (citing *Compton v. Subaru of Am., Inc.*, 82 F.3d 1513, 1518 (10th Cir. 1996)).

In this case, both parties seek to exclude the other side's experts from testifying. Specifically, NatureWise moves to exclude the testimony of Julian McAuley, Michael A. Belch ("Dr. Belch"), Norman Howe, Tommy Noonan, and Stan V. Smith.  On the other hand, Vitamins Online moves to exclude the testimony of Richard S. Hoffman ("Hoffman"), Hong You, Mollie Kober, and Thomas Barman.  Despite the numerous attacks that both parties launch on the

admissibility of the other's experts, the majority of these motions can be resolved by simply applying the standard above.  In particular, much of the argumentation the parties employ in their briefing goes to the weight of the experts' testimony, not the admissibility.  As discussed above, the court must keep in mind that its gatekeeping role is not meant to replace the judicial system's adversary system.  Because the parties' arguments go mostly to the weight of the experts' testimony and not the admissibility, the court concludes that the proper place to attack the challenged testimony is through cross-examination at trial.  There, the parties will have ample opportunity to challenge the experts' testimony and present contrary evidence that undermines the experts' claims.

The court does, however, find some potential issues with the proposed testimony of Hoffman.  There are several purposes for which an expert may offer his or her testimony, but those purposes do not include opining on what constitutes the law; that purpose is within the sole discretion of the court.  Thus, while the court will permit Hoffman to opine on some subject matters, the court will preclude him from offering testimony that interprets the law.  More specifically, Hoffman will not be allowed to testify regarding the burden-shifting framework under the Lanham Act; whether there are legal presumptions of injury in this case; or his interpretation of (1) relevant case law or (2) any secondary source's explanation of relevant case law.  These are strictly legal questions that are to be left to and explained by the court.

Therefore, the court denies each of the parties' motions to exclude expert testimony, with the exception of Vitamins Online's motion to exclude Hoffman's testimony, which the court grants in part and denies in part.  The court will thus consider all the evidence from the parties' experts in deciding the motions for summary judgment, except as clarified regarding Hoffman's testimony.

## II.      Evidentiary Objections

When determining whether evidence should be considered to decide a motion for summary judgment, the general rule is that evidence submitted at the summary judgment stage may be in a "form of evidence that is usually inadmissible at trial" so long as "the content or substance of the evidence [is] admissible." *Johnson v. Weld County*, 594 F.3d 1202, 1210 (10th Cir. 2010); *see also* Fed. R. Civ. Proc. 56(c)(2) ("A party may object that the material cited to support or dispute a fact *cannot be presented in a form that would be admissible at trial*." (emphasis added)).  But this general rule does not give the court "a license to relax the content or substance of the Federal Rules of Evidence when viewing" summary judgment evidence. *Id.* For example, the court should not consider hearsay evidence on summary judgment, *see id.*, and the court should only consider evidence that has been properly authenticated, *see Law Co. v. Mohawk Const. & Supply Co.*, 577 F.3d 1164, 1170 (10th Cir. 2009).

Throughout the motions for summary judgment and motions to exclude expert witnesses, the parties, but almost exclusively NatureWise[2], raise a litany of objections to evidence submitted with those motions.  The objections that NatureWise raises pertain to relevance (Federal Rule of Evidence 402), expert testimony (Federal Rule of Evidence 702), hearsay (Federal Rule of Evidence 802), and foundation (Federal Rule of Evidence 901).  Regarding the objections NatureWises raises under Rule 702 (which are essentially reiterations of its arguments in its motions to exclude experts), the court need not entertain them given its decision to deny NatureWise's motions to exclude Vitamins Online's experts.  As for NatureWise's objections under Rules 402, 802, and 901, the court, just as it did in the First Order, finds that NatureWise

---

[2] NatureWise also raised a multitude of evidentiary objections during the first round of summary judgment motions. The vast majority of those objections were based on the same Federal Rules of Evidence under which NatureWise brings its current objections.  Nevertheless, the court concluded that each objection was without merit and considered all the evidence in analyzing the parties' motions.

has incorrectly applied the principles of the Federal Rules of Evidence.  The court further

concludes that NatureWise's objections are without merit.

NatureWise also objects to Vitamins Online's reliance on evidence that it claims was

untimely produced.  On January 9, 2019, two days before summary judgment motions were due,

Vitamins Online's counsel sent to NatureWise's counsel an additional 10,000 pages of

documents.  NatureWise therefore asks the court to strike these documents for being untimely

and prohibit Vitamins Online from relying on any evidence contained in those documents.

Federal Rule of Civil Procedure 37(c)(1) governs situations where a party fails timely to

disclose information.  It provides, in relevant part:

> *Failure to Disclose or Supplement*. If a party fails to provide information or identify
> a witness as required by Rule 26(a) or (e), the party is not allowed to use that
> information or witness to supply evidence on a motion, at a hearing, or at a trial,
> unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1).  When considering whether a violation of Rule 26(a) is justified or

harmless, courts analyze the following four factors: "(1) the prejudice or surprise to the party

against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the

extent to which introducing such testimony would disrupt the trial; and (4) the moving party's

bad faith or willfulness."  *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002)

(quoting *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir.

1999)).

Here, in response to NatureWise's objection, Vitamins Online provided the court with

important context: of the 10,729 documents that it produced, 10,658 were comprised of printouts

from Amazon reviews and comments on NatureWise's product pages.  Further, the remaining

documents consisted of Amazon's online policies, a screen capture of NatureWise's website, an

Amazing Selling Machine Training Guide produced by NatureWise in 2016, screen captures

from the Amazing Selling Machine website, a testimonial video of Doyle, and slides from an

FTC presentation.  Importantly, most of this information is publicly available, and NatureWise

was already aware of it.  Given this added context, the court concludes that the four factors

weigh in favor of finding that Vitamins Online's conduct was harmless.  Thus, the court rejects

NatureWise's objection.

 Lastly, Vitamins Online objects to a graph that NatureWise included in its Reply in

supports of its Motion to Preclude Disgorgement Remedy.  Vitamins Online argues that the

graph lacks any citation to any evidence that supposedly supports it.  NatureWise contends that

the objection should be overruled because the graph simply takes information and evidence from

the underlying motion and places it in visual form.  The court agrees with NatureWise.  The

court therefore rejects Vitamins Online objection because the graph is a visual representation of

evidence submitted in the underlying motion, and Vitamins Online makes no objection to that

evidence in its other form.

 Because the court rejects each of the parties' evidentiary objections, it will consider all

the evidence to resolve the issues raised in the motions for summary judgment.

**III.** **Motions for Summary Judgment**

 Summary judgment is appropriate "when there exists no genuine issue of material fact,

such that the moving party is entitled to judgment as a matter of law."  *Lindsey v. Hyler*, 918

F.3d 1109, 1113 (10th Cir. 2019).  "An issue is 'genuine' if there is sufficient evidence on each

side so that a rational trier of fact could resolve the issue either way. . . . An issue of fact is

'material' if under the substantive law it is essential to the proper disposition of the claim."  *Sidlo*

*v. Millercoors*, LLC, 718 F. App'x 718, 725 (10th Cir. 2018) (quoting *Adler v. Wal-Mart Stores*,

*Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).  Importantly, when analyzing a party's motion for

summary judgment, the court must view the evidence "in the light most favorable to the non-moving party," *Donner v. Nicklaus*, 700 F. App'x 877, 878 (10th Cir. 2017), and refrain from "judg[ing] witness credibility or weigh[ing] evidence," *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 627 (10th Cir. 2012).

### a. Review Claims

Both parties move for summary judgment on the Review Claims.[3] Vitamins Online contends that there exist no genuine issues of material fact that it has established its claim for false advertising under the Lanham Act. Conversely, NatureWise avers that, based on the undisputed evidence, Vitamins Online's false advertising claim must fail as a matter of law.

The Lanham Act provides that:

(1) [a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

---

[3] After the motions were fully briefed, NatureWise filed an Objection and Motion to Strike Appendices 1, 2, and 3 [ECF Nos. 380–382] to Vitamins Online's Reply in Support of Motion for Summary Judgment on Review Claims. In short, NatureWise argues that Vitamins Online failed to obtain leave of the court to (1) file the overlength Appendices and (2) include legally substantive material in the Appendices. NatureWise points to the fact that it, on the other hand, did ask the court for leave to file excess pages for its combined opposition/reply and appendix. The court is unpersuaded by NatureWise's arguments. Because NatureWise filed its combined opposition/reply in an unconventional manner, Vitamins Online's tried to mirror that structure in its reply and appendices. And, in any event, Vitamins Online moved for and the court granted its motion to file overlength pages in its reply. While it did not specifically ask for leave to file overlength appendices, NatureWise does not contend that it was prejudiced by Vitamins Online having done so. Accordingly, NatureWise's Objection and Motion to Strike [ECF No. 406] is denied.

15 U.S.C. § 1125(a) (2012).  The Tenth Circuit has interpreted this statute to require a plaintiff to

produce evidence of four elements to establish a false advertising claim:

> (1) that defendant made material false or misleading representations of fact in connection with the commercial advertising or promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the goods or services; and (4) injure the plaintiff.[4]

*Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1252 (10th Cir. 1999) (citations omitted).

Under this test, courts have concluded that "a failure to disclose facts is not actionable [for false

advertising], unless the failure is relevant to an affirmative statement that is made false or

misleading by its omission."  *Wellnx Life Scis. Inc. v. Iovate Health Scis. Research Inc.*, 516 F.

Supp. 2d 270, 285–86 (S.D.N.Y. 2007) (quotation marks omitted) (citing *Register.com, Inc. v.

Domain Registry of Am., Inc.*, 2002 U.S. Dist. 24795, at *50 (S.D.N.Y. Dec. 27, 2002).  In other

words, whether the plaintiff is alleging that the defendant made a statement or omitted

information, the test still requires the existence of an affirmative statement that is false or

misleading.

     In conjunction with the traditional test for false advertising, in the Second Order, the

court performed a detailed analysis of the statutory text of the Lanham Act.  *Vitamins Online,

Inc. v. HeartWise, Inc.*, 207 F. Supp. 3d 1233, 1237–44 (D. Utah 2016), *order vacated in part on

reconsideration*, No. 2:13-CV-982-DAK, 2017 WL 2733867 (D. Utah May 11, 2017) [*Vitamins

Online II*].  After analyzing the structure of the statute, the court concluded that

---

[4] Some courts list materiality as an additional element of a Lanham Act false advertising claim, *see Novell, Inc. v. Network Trade Center, Inc.*, 25 F. Supp. 2d 1218, 1227–28 (D. Utah 1997) (listing as an additional element that "the deception is material in that it is likely to influence purchasing decisions"), but the Tenth Circuit has yet to decide "whether the Lanham Act imposes a materiality inquiry," *Gen. Steel Domestic Sales, LLC v. Chumley*, 627 F. App'x 682, 685 (10th Cir. 2015).  Because the court, as shown below, can decide the instant motions based on the four elements enumerated above, the court need not address whether the materiality element is required.

the prohibited conduct of both product infringement/false associations and false advertising . . . found in Section 43(a)(1) . . . applies to both subsection (A), which lists the unlawful effects of product infringement/false associations causes of action, and subsection (B), which lists the unlawful effects of false advertising causes of action. This new structure opens the door to a wider range of false advertising causes of action that do not necessarily require a false or misleading description or representation of fact.

*Id.* at 1240. Further, the court determined that although most false advertising claims are based on the "false or misleading description of fact, or false or misleading representation of fact" language, the statute unambiguously allows for a false advertising claim to be based on the "any word, term, name, symbol, or device" language as long as the use of that conduct "in commercial advertising or promotion" results in the unlawful effect of "misrepresent[ing] the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." *Id.* (quoting 15 U.S.C. § 1125(a)(1)). In sum, the court concluded that if an individual uses a device in commercial advertising to misrepresent the nature, characteristics, or qualities of his or her goods, that constitutes actionable conduct for a false advertising claim under the Lanham Act. *Id.* at 1240–44.

In light of its decision in the Second Order, the court finds it necessary to outline the test required for a false advertising claim by combining the traditional test utilized by the Tenth Circuit with the statutory analysis detailed in the Second Order. This way, the court will be able to address the parties' arguments collectively and succinctly. Thus, for a plaintiff to establish a false advertising claim under the Lanham Act, the plaintiff must show (1) that the defendant used a device or made material false or misleading representations of fact in connection with the commercial advertising or promotion of its product; (2) in commerce; (3) that misrepresents or is/are likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the goods or services; and (4) injure the

15

plaintiff.[5]   In this case, the court has already concluded that NatureWise's conduct related to the Review Claims constitutes commercial advertising or promotion under the falsity element, *Vitamins Online II*, 207 F. Supp. 3d at 1242, and that the parties do not dispute that NatureWise's representations were made in commerce, *Vitamins Online, Inc. v. Heartwise*, Inc., No. 2:13-CV-982-DAK, 2016 WL 538458, at *6 (D. Utah Feb. 9, 2016) [*Vitamins Online I*].   As such, the court will neither address the commercial advertising or promotion portion of the falsity element nor the commerce element in this Order.

### i.  Falsity and Deception

A plaintiff can establish falsity by either showing that the defendant used a device, *id.*, or made false or misleading representations of fact in connection with the commercial advertising or promotion of its product, *Cottrell*, 191 F.3d at 1252 (10th Cir. 1999).  If proceeding based on a false or misleading representation of fact, a plaintiff "can either show that the representations are literally false or impliedly false."  *Vitamins Online I*, 2016 WL 538458, at *6.  A representation is literally false when it states that a product "has certain qualities that it in fact does not actually have" and is impliedly false when the "statements . . . , while literally true or ambiguous, convey a false impression or are misleading in context, as demonstrated by actual consumer confusion." *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 13–14 (7th Cir. 1992). For literally false statements, "the message may be either explicit or conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." *Interlink Products Int'l Inc. v. F & W Trading*, No. 15–1340 (MAS) (DEA), 2016 WL 1260713, at *9 (D.N.J. Mar. 31, 2016) (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharm. Co.*, 290 F.3d

---

[5] For brevity purposes, the court will refer to the four elements as the (1) "falsity"; (2) "commerce"; (3) "deception"; and (4) "injury" elements.

578, 586–87 (3d Cir. 2002)).  Either way, "[t]he standard for proving literal falsity is rigorous" because "[o]nly an *unambiguous* message can be literally false."  *Buetow v. A.L.S. Enterprises, Inc.*, 650 F.3d 1178, 1185 (8th Cir. 2011) (emphasis in original) (quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007)).  Ambiguity, in turn, is assessed from the perspective of a reasonable consumer.  *See, e.g.*, *Wysong Corp. v. APN, Inc. (17-1975)*, 889 F.3d 267, 271 (6th Cir. 2018).  Importantly, when a statement or advertisement "can reasonably be understood as conveying different messages, [a] literal falsity argument must fail."  *Buetow*, 650 F.3d at 1185 (quoting *Scotts Co. v. United Ind. Corp.*, 315 F.3d 264, 275 (4th Cir. 2002)).  Finally, for a false statement to be actionable under the Lanham Act, it must be a false statement of *fact*; statements purely of opinion or mere puffery[6] are not actionable for false advertising under the Lanham Act.  *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495–96 (5th Cir. 2000); *Groden v. Random House, Inc.*, 61 F.3d 1045, 1051 (2d Cir. 1995); *see JIVE Commerce, LLC v. Wine Racks Am., Inc.*, No. 1:18-CV-49 TS-BCW, 2018 WL 3873675, at *2 (D. Utah Aug. 15, 2018).  And for a statement of fact to be actionable, it "must be a 'specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact.'"  *Am. Italian Pasta Co.*, 371 F.3d at 391 (quoting *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir.1999)).  Nevertheless, there is a "well-established exception that an opinion by a speaker who lacks a good faith belief in the truth of the statement is actionable."  *ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*, 648 F. App'x 609, 614–15 (9th Cir. 2016).

---

[6] "Puffery exists in two general forms: (1) exaggerated statements of bluster or boast upon which no reasonable consumer would rely; and (2) vague or highly subjective claims of product superiority, including bald assertions of superiority."  *Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 390–91 (8th Cir. 2004).

When a statement or representation is deemed to be literally false, the deception element is presumed. *Procter & Gamble Co. v. Haugen*, 627 F. Supp. 2d 1287, 1290 (D. Utah 2008) ("[W]here . . . it is undisputed that the [representation] is literally false, there is a presumption of actual consumer confusion and, where the presumption is unrebutted, Plaintiff need not present evidence on actual consumer confusion."); *see Zoller Labs., LLC. v. NBTY, Inc.*, 111 F. App'x 978, 982 (10th Cir. 2004) ("Where the advertisement is literally false, a violation may be established without evidence of consumer deception."); *see also PBM Prod., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 120 (4th Cir. 2011). Conversely, when the statement at issue is impliedly false, a plaintiff must demonstrate actual consumer deception. *Vincent v. Utah Plastic Surgery Soc.*, 621 Fed. App'x. 546, 550 (10th Cir. 2015) ("To prevail on their implied falsity claims, however, Plaintiffs must show 'actual consumer deception.'"). Actual consumer deception must be shown by extrinsic evidence that demonstrates that the challenged statements "tend to mislead or confuse consumers." *Nunes v. Rushton*, 299 F. Supp. 3d 1216, 1239 (D. Utah 2018) (quoting *Zoller Labs.*, 111 F. App'x at 982). Yet, even under a theory of implied falsity, a plaintiff's failure to demonstrate that consumers were actually deceived is not fatal to his or her claim. Indeed, a plaintiff can still benefit from a presumption of consumer deception for statements that are impliedly false if the plaintiff can show that the defendant acted with the intent to deceive consumers. *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 316 (1st Cir. 2002) ("It is well established that if there is proof that a defendant intentionally set out to deceive or mislead consumers, a presumption arises that customers in fact have been deceived."); *see also Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 256 (2d Cir. 2014) ("[E]ven in cases of *implied falsity*, where a plaintiff adequately demonstrates that a defendant has intentionally set out to deceive the public, and the defendant's deliberate conduct in this

regard is of an egregious nature, a presumption arises that consumers are, in fact, being deceived.") (emphasis in original) (quotation marks omitted); *William H. Morris Co. v. Grp. W, Inc.*, 66 F.3d 255, 258 (9th Cir. 1995), *supplemented sub nom. William H. Morris Co. v. Grp. W. Inc.*, 67 F.3d 310 (9th Cir. 1995) ("If [the defendant] intentionally misled consumers, we would presume consumers were in fact deceived and [the defendant] would have the burden of demonstrating otherwise.").

As a preliminary matter, in its motion, Vitamins Online contends that it is entitled to summary judgment on either a device, literal falsity, implied falsity, or omission theory of the falsity element. NatureWise counters that the law of this case establishes that the Review Claims have always been based on a theory of implied falsity, not literal falsity. To support this assertion, NatureWise cites a statement in the First Order in which the court noted that Vitamins Online was not arguing that the Review Claims constituted literal falsity. *Vitamins Online I*, 2016 WL 538458, at *6. In essence, NatureWise argues that Vitamins Online is now precluded from raising a literal falsity argument. The court, however, rejects NatureWise's argument. While Vitamins Online did not advance its false advertising claim under a literal falsity theory in the first round of summary judgment motions, there is nothing preventing it from doing so now. Nevertheless, the court need not come to a decision regarding Vitamins Online's literal falsity, device, or omission arguments at this time because, as described below, the court finds that there exist genuine issues of material fact regarding the injury element that preclude the court from granting Vitamins Online's motion. The court will thus focus its analysis on Vitamins Online's implied falsity theory of the case, which is where NatureWise places its emphasis in its motion.

Vitamins Online alleges that NatureWise engaged in several distinct categories of actionable conduct. Vitamins Online contends that NatureWise (1) created fake product reviews;

(2) employees voted on the helpfulness of reviews; (3) used the Amazing Selling Machine—a service that explains to people how to create fake accounts to post positive reviews and engage in helpfulness voting—as a means to vote on the helpfulness of reviews; (4) contracted with third parties in the Philippines to vote on the helpfulness of reviews; (5) gave free product in exchange for positive reviews; (6) gave gift cards to solicit reviews; (7) suggested what customers' reviews should include and then edited those reviews; (8) had customers submit reviews to it before posting them, and then it facilitated the posting of positive reviews while suppressing negative reviews; and (9) falsely denied that it gave secret incentives for customer reviews. Vitamins Online contends that each category of conduct, at the very least, resulted in or constituted impliedly false statements—that is, "convey[ed] a false impression" or was "misleading in context." *Abbott Labs.*, 971 F.2d at 13–14. Further, Vitamins Online claims that NatureWise's conduct clearly demonstrated an intent to deceive and so gives rise to a presumption of deception. But, even without the presumption, Vitamins Online argues that the survey conducted by Dr. Belch establishes that NatureWise's conduct deceived actual consumers.

NatureWise responds by arguing that since the beginning of this case, the record clearly establishes that all the challenged conduct regarding the Review Claims falls into no more than two categories: benefitting from the posting of reviews and helpfulness voting. NatureWise argues that splitting the Review Claims into ten categories is not only improper, but disingenuous in light of the record that exists in this case. Regardless, NatureWise contends that there is no evidence that NatureWise acted with an intent to deceive consumers, and Vitamins Online failed to produce sufficient evidence of actual consumer confusion. More specifically, NatureWise asserts that Dr. Belch's report fails to produce relevant evidence of consumer deception because it never asked whether a single respondent had purchased or considered

purchasing a NatureWise product.  Notably, though, NatureWise does not dispute that its conduct "convey[ed] a false impression" or was "misleading in context." *Abbott Labs.*, 971 F.2d at 13–14.  Instead, NatureWise focuses its implied falsity argument exclusively on Vitamins Online's burden of producing evidence of consumer confusion.  Lastly, NatureWise argues that the case *Nunes v. Rushton* is analogous and therefore dispositive of this case.

Viewing the evidence in the light most favorable to Vitamins Online for purposes of NatureWise's motion, the court concludes that Vitamins Online has produced sufficient evidence to create genuine issues of material fact regarding its claim for false advertising under an implied falsity theory.  The court reaches this conclusion for two distinct reasons.  First, Vitamins Online has produced sufficient evidence that NatureWise may have acted with the intent to deceive consumers and is therefore entitled to a presumption of deception.  For example, in an internal email exchange involving Doyle, NatureWise employees discussed contracting with individuals in the Philippines "to use a rotating IP service and multiple accounts to reduce the effect" of their competitor's attempts to lower their market share.  The email also stated that this was a practice that NatureWise was already engaged in.  The email suggested that this could be an effective means of countering NatureWise's competitors because the conduct was "not connected to NatureWise."  Further, in that same email, a NatureWise employee expressed that he was "wary of tipping our hand to our customers that we have anything to do with interfering with reviews." In response to that email, Doyle stated that his "only concern" was that Amazon would investigate the positive changes in NatureWise's product reviews and realize that the accounts voting up NatureWise's products may not belong to real people.  Doyle also expressed the importance of having more third-party sellers so that it would be impossible for Amazon to know which company was behind the up and down voting of reviews.

21

Second, even without the presumption of deception, Vitamins Online has produced sufficient evidence of consumer deception to survive NatureWise's request for summary judgment based on Dr. Belch's survey.  For example, Dr. Belch's survey demonstrates, among other things, that a majority of consumers read reviews when shopping for weight loss products; a majority of consumers rely upon those reviews in making their purchase decision; a majority of consumers believe that product reviews are genuine and done by real customers; and a review's number of stars and its helpfulness rating play influential roles in a consumer's purchasing decision.  In the light most favorable to Vitamins Online, this evidence suggests that consumers who read the reviews on NatureWise's garcinia cambogia and green coffee products may have actually been deceived.  The court therefore finds this evidence sufficient at the summary stage to defeat NatureWise's motion.

Finally, NatureWise relies on *Nunes v. Rushton* in support of its motion.  In *Nunes*, an author created multiple pseudonymous online accounts (called "sock puppet" accounts) and then used those accounts on Amazon to post positive reviews about her books and negative reviews about another author's books.  *Nunes*, 299 F. Supp. 3d at 1222–23.  The court determined that the defendant author was not liable for false advertising under the Lanham Act because the plaintiff had failed to present any extrinsic evidence—including consumer surveys— demonstrating actual consumer deception.  *Id.* at 1239.  Consequently, the plaintiff's claim could only proceed on a theory of literal falsity.  *Id.*  The court then compared its facts to a case from the Southern District of New York that involved a hair removing business posting online reviews about a competitor.  *Id.* (discussing *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08CV0442(DLC), 2016 WL 815205 (S.D.N.Y. Feb. 29, 2016)).  In *Romeo & Juliette*, the hair removal business had posted two types of online reviews: (1) reviews that involved fake bad

experiences of customers that did not exist and (2) reviews that were posted under pseudonyms by an owner of a competing business. *Romeo & Juliette*, 2016 WL 815205, at *7–8. Because the reviews in *Nunes* were more similar to the second category of reviews in *Romeo & Juliette*, the court concluded that they were unactionable statements of opinion. *Nunes*, 299 F. Supp 3d at 1239.

The court finds that *Nunes* is distinguishable from the instant case for two reasons. First, the plaintiff in *Nunes* failed to present any consumer surveys or other extrinsic evidence to show actual consumer deception. Here, Vitamins Online has Dr. Belch's survey evidence. In addition, the court in *Nunes* did not consider applying a presumption of deception based on intent to deceive as is the case here. Second, the *Nunes* court determined that the reviews in that case aligned with the second category of reviews in *Romeo & Juliette*. The reviews at issue here, however, are not so clear cut. In the internal NatureWise email discussed above, Doyle expressed that he was concerned that Amazon would investigate and close down accounts voting positively on NatureWise products because Amazon could determine that such accounts may not be "real people." While he thought that it was a "slim chance" that such an investigation would ensue, it contributed, in part, to his "motivation to have a group of real people voting." Although this does not establish that NatureWise was causing non-human voters to cast votes on reviews, it implies that non-existent customers may have voted on NatureWise reviews. As such, the conduct would be more akin to the first category of reviews in *Romeo & Juliette*, which the court found to be literally false. Needless to say, this goes to show that there still remains issues of material fact in this case on the falsity element that the court cannot resolve on a motion for summary judgment.

Accordingly, the court finds that Vitamins Online has produced sufficient evidence regarding implied falsity and deception to survive NatureWise's motion for summary judgment.

### ii. Injury

The standard for determining whether a plaintiff has provided sufficient evidence of injury is dependent on the relief that the plaintiff is seeking. *See Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1335 (8th Cir. 1997) ("[C]ases involving injunctive relief and those seeking monetary damages under the Lanham Act have different standards of proof."). When a plaintiff is seeking injunctive relief, the "plaintiff does not need to establish actual damages, and is instead held to a lesser standard of proving that it is likely that the defendant's advertising has caused or will cause plaintiff injury." *Berken v. Jude*, No. 12-CV-02555-RPM, 2013 WL 6152347, at *2 (D. Colo. Nov. 22, 2013). In other words, when the plaintiff is seeking an injunction, "[t]he statute demands only proof providing a reasonable basis for the belief that the plaintiff is likely to be damaged as a result of the false advertising" and not "proof of actual loss and specific evidence of causation." *Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 190 (2d Cir. 1980). In contrast, a "heightened level of . . . proof of causation and specific injury" is required when the plaintiff is seeking money damages, *Porous Media Corp.*, 110 F.3d at 1335–36, in order to "prevent the plaintiffs from receiving a windfall unrelated to their own damages," *Berken*, 2013 WL 6152347, at *2.

To establish the injury element of a false advertising claim under the Lanham Act, a plaintiff "must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014). Put differently, a plaintiff must provide evidence

of "an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Id.* at 140.

In the First Order, the court specifically denied the parties' motions for summary judgment based on the injury element. The court concluded that Vitamins Online had produced enough evidence of injury and causation to survive NatureWise's motion, but not enough to entitle it to judgment as a matter of law. *Vitamins Online I*, 2016 WL 538458, at *7–8. Vitamins Online now argues that since it is no longer seeking money damages and has limited the remedies it seeks to disgorgement and injunctive relief, its burden of demonstrating injury is substantially lower. Moreover, Vitamins Online avers that there is now more evidence of injury that the court did not consider in the First Order that entitles it to judgment as a matter of law. Vitamins Online advances the following arguments to support its claim: (1) there exists a presumption of injury due to comparative advertising; (2) there exists a presumption of injury due to competition; (3) even without the presumptions, Vitamins Online can satisfy the injury element by demonstrating either actual damages or willful action; and (4) there is additional evidence of actual injury.

### 1.   Presumptions of Injury

In cases where a defendant compares its product to a competing product (known as "comparative advertising"), courts will generally apply a presumption of injury. *E.g.*, *Munchkin, Inc. v. Playtex Prod., LLC*, 600 F. App'x 537 (9th Cir. 2015), *as amended* (July 31, 2015). Similarly, courts will apply a presumption of injury in cases involving "direct competitors in a two-player market," *e.g.*, *Merck Eprova*, 760 F.3d at 262, or "direct competitors in a sparsely populated market," *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 72 n.12 (2d Cir. 2016). In one case, the Tenth Circuit has even suggested that the

presumption of likely injury may extend beyond comparative advertising cases to cases involving an "obvious competitor," but that statement was not a necessary part of the resolution or determination of that case. *Hutchinson v. Pfeil*, 211 F.3d 515, 522 (10th Cir. 2000). Since *Hutchinson*, one court concluded that the plaintiff was entitled to the presumption for obvious competitors, but the court still required the plaintiff "to support that presumption with . . . evidence of injury." *Berken*, 2013 WL 6152347, at *3.

Vitamins Online argues that this case involves comparative advertising. In addition to arguing for the traditional type of comparative advertising described above, Vitamins Online also claims that presumption can apply where products are in head-to-head competition and the defendant targets the plaintiff's competing product. *W. Sugar Coop. v. Archer-Daniels-Midland Co.*, No. CV113473CBMAJWX, 2015 WL 12683192, at *4 (C.D. Cal. Aug. 21, 2015). To support this argument, Vitamins Online cites a video in which Doyle discussed appropriating parts of Vitamins Online's label and an email where Doyle discussed his desire to "seed" NatureWise's garcinia cambogia directly against Vitamins Online's. Vitamins Online also argues that this case involves comparative advertising based on various features of Amazon's product pages. On Amazon's website, when a consumer views a product, images of other products also appear on that same product page with the captions "Customers Who Viewed This Item Also Viewed," "Frequently Bought Together," and "Customers Who Bought This Item Also Bought." Vitamins Online claims that, although not necessarily at the behest of NatureWise, this results in their products being comparatively advertised directly against each other on Amazon.

The court finds each of these arguments to be unpersuasive. First, the court already determined that this case does not involve comparative advertising. *Vitamins Online I*, 2016 WL

26

538458, at *8.  Second, *W. Sugar* is distinguishable because in that case, the defendant specifically "targeted and drew comparisons between its product and [the plaintiffs'] competing product."  2015 WL 12683192, at *4.  That type of conduct is not present in this case.  Although Vitamins Online and NatureWise products compete on Amazon, NatureWise did not draw comparisons between its products and Vitamins Online's, whether by a name-brand comparison or a general-product comparison.  Consequently, without the type of comparative advertising described in *W. Sugar*, NatureWise's targeting argument cannot withstand muster.  Lastly, it would be unjust and improper for the court to apply a presumption of injury based on a third party's conduct instead of the defendant's.  The comparison captions found on Vitamins Online's and NatureWise's Amazon product pages are a function of Amazon's website—not a result of NatureWise's conduct.  NatureWise does not decide which third-party products are compared with NatureWise products through Amazon's comparison function.  Therefore, the court again concludes that Vitamins Online cannot avail itself of a presumption of injury based on comparative advertising.

Next, Vitamins Online avers that it is entitled to a presumption of injury because Vitamins Online and NatureWise are obvious competitors as well as direct competitors in a sparsely populated market.  Further, Vitamins Online argues that some courts have applied the two-player market presumption in cases involving more than two competitors, but where two of the competitors dominate the market.  Vitamins Online points to evidence provided by Dr. Belch and Hoffman to support these assertions.  Specifically, Hoffman found there to be seventeen market participants on Amazon for the products at issue in this case, but of those seventeen competitors, approximately 92% of the reviews appear on Vitamins Online's and NatureWise's product pages.

The court finds these arguments to be equally unpersuasive.  First, as the court noted in the First Order, "the presumption of injury for obvious competitors on a Lanham Act claim has, at best, a thin legal foundation."  *Vitamins Online I*, 2016 WL 538458, at *8.  Accordingly, as it did in the First Order, the court declines to extend the presumption in this case.  Second, the court is unconvinced that the parties are involved in a sparsely populated market.  Indeed, NatureWise's expert identified seventeen competitors.  And although a majority of the reviews appear on Vitmains Online's and NatureWise's product pages, that fact does not establish that the two parties dominate the market; review count totals do not equal market dominance. Finally, Dr. Belch's survey does not establish that this case involves direct competitors in a sparsely populated market.  The court therefore rejects Vitamins Online's competition-based arguments for a presumption of injury.

### 2.   Willful Action and Additional Evidence of Injury

The Tenth Circuit has held that "[u]nder the Lanham Act, plaintiffs must show either actual damages or willful action on the part of the defendant as a prerequisite to recover disgorgement of profits."  *Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1161 (10th Cir. 2013).  As such, Vitamins Online argues that it need not show evidence of actual damages to establish the injury element of its false advertising claim.  Instead, it claims that it need only demonstrate that NatureWise's conduct constituted willful action.  The issue with Vitamins Online's argument, however, is that it conflates the injury element of its false advertising claim with the elements required to show it is entitled to disgorgement.  Vitamins Online, though, is not alone in having improperly blended the two inquiries.  Indeed, multiple courts have addressed this very issue.  *Gravelle v. Kaba Ilco Corp.*, 684 F. App'x 974, 981 (Fed. Cir. 2017) ("[T]he district court correctly held that injury and damages are separate inquiries under the

28

Lanham Act and that, without the former, there can be no entitlement to the latter.") (quotation marks omitted); *Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 462 (5th Cir. 2001) ("[The defendant] points to the jury's finding that [the plaintiff] failed to establish his losses as an indication that he also failed to establish the injury element of his false advertising claim. However, this argument conflates the injury requirement for the false advertising claim with the requirement that he prove his actual damages in order to obtain relief."); *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 689 (6th Cir. 2000) ("[T]his case underscores the importance of clearly distinguishing the elements necessary to prove a breach of the Lanham Act from the elements necessary to justify a certain remedy for that breach: the inquiries should be kept separate because a violation of the Lanham Act can be remedied in more ways than one.") (quotation marks omitted); *Infinity Headwear & Apparel, LLC v. Jay Franco & Sons, Inc.*, No. 15-CV-1259 (JPO), 2017 WL 3309724, at *6 (S.D.N.Y. Aug. 2, 2017) ("[The plaintiff] is conflating injury and damages, which are separate inquiries under the Lanham Act."). Although conflating the two elements may appear harmless, the distinction is imperative given "a plaintiff could prove that a defendant is liable for false advertising, but not satisfactorily demonstrate tangible harm . . . as a result of that false advertising." *Retractable Techs., Inc. v. Becton Dickinson & Co.*, 919 F.3d 869, 877 (5th Cir. 2019).

Upon reviewing *Klein-Becker*, it seems clear that the court is referring to the standard of recovery required *after* liability has been established—that is, after the plaintiff has already met the injury element. In *Klein-Becker*, the district court had sanctioned the defendant in the form of granting a default judgment against him. 711 F.3d at 1158. The default judgment was then followed by a bench trial to determine damages. *Id.* Following the trial, the defendant appealed, among other things, the entry of the default judgment and the award of damages. *Id.* In

conducting its analysis, the Tenth Circuit first reviewed the district court's entry of default

judgment, which it affirmed. *Id.* at 1150–60. Only then—after liability was no longer an issue

in the case—did the court move forward in analyzing the prerequisites of the plaintiff's claim for

damages. *Id.* at 1161–62. This conclusion is only further supported by applying *Klein-Becker*'s

disgorgement analysis in the context of the injury element. If the analysis applied in that context,

then a plaintiff could establish the injury element without showing that it has been or is likely to

be injured. Undoubtedly, such a result defies logic and proves unsustainable.[7]

Therefore, like the plaintiff in *Gravelle*, who argued "that he need not show an actual

injury . . . for disgorgement . . . under 15 U.S.C. § 1117(a)," Vitamins Online must still show

"that [NatureWise's] conduct has proximately injured an interest of [Vitamins Online's] that the

[Lanham Act] protects." 684 F. App'x at 981. Nevertheless, the question remains as to what

standard should apply in determining whether Vitamins Online has provided sufficient evidence

of injury given the remedy it seeks is disgorgement. Neither of the parties have cited to nor is

the court aware of any case that delineates the standard of proof for injury when a plaintiff is

seeking disgorgement. Bearing in mind that there is a higher burden for seeking money damages

and a lower burden for seeking injunctive relief, the court concludes that the standard for

disgorgement is somewhere between the two. The court reaches this determination because

although disgorgement is equitable in nature (and therefore of the same genus as an injunction),

---

[7] Although Vitamins Online does not advance this argument, perhaps its reliance on the disgorgement language in *Klein-Becker* can be best interpreted as making a claim for a presumption of injury. In other words, if NatureWise acted willfully, then it is presumed that Vitamins Online was in fact injured. While some Circuits have addressed a similar argument, they have only done so in the context of two-player markets and comparative advertising. *See Merck Eprova*, 760 F.3d at 262 (allowing a presumption of injury where the parties were direct competitors in a two-player market and where the plaintiff had proved literal falsity and willful, deliberate deception); *Innovation Ventures, LLC v. Bhelliom Enterprises Corp.*, 529 F. App'x 560, 566 (6th Cir. 2013) (presuming damages "in instances of willful deception" but only in cases of comparative advertising). Because neither context applies in this case and because Vitamins Online has not argued why the presumption should be extended to other contexts, the court need not explore the argument any further.

it too bears some relation to traditional money damages.[8]  Although this creates an admittedly amorphous standard, in light of the facts of this case, the court concludes that the standard is sufficient to resolve the pending motions.

In its remaining injury arguments, Vitamins Online first suggests that, because it is seeking disgorgement, it must only show the *fact* of injury and causation but need not quantify the amount of actual damages.  To support this proposition, Vitamins Online cites *Bimbo Bakeries USA, Inc. v. Sycamore*, No. 2:13-CV-00749-DN-DBP, 2018 WL 1578115, at \*2–3, \*3 n.14 (D. Utah Mar. 29, 2018).  Next, Vitamins Online claims that, in any event, it has already met its minimal burden of injury and causation as demonstrated in the First Order.  In the First Order, Vitamins Online produced evidence, based on Kahn's testimony, that its sales plummeted after NatureWise entered the Amazon market.  Vitamins Online finds it significant that the actual data demonstrating the drop in sales is now available.  Lastly, Vitamins Online argues that Dr. Belch's survey confirms actual injury.

Despite each of Vitamins Online's arguments, the court concludes—just as it did when the parties first moved for summary judgment—that there are genuine issues of material fact regarding the injury element, even under the injury standard of proof for disgorgement.  Preliminarily, Vitamins Online's reliance on *Bimbo Bakeries* is misplaced based on two important distinctions.  First, the court in *Bimbo Bakeries* was addressing *post-trial* motions.  2018 WL 1578115, at \*1–2.  This, in turn, leads to the second important distinction: a jury had already resolved the issue of liability.  *Id.* at \*1.  Unlike the present case, *Bimbo Bakeries* was no longer addressing the issue of injury; it was simply analyzing the amount of damages.  Perhaps

---

[8] The resemblance between the two remedies, however, is not such that they may become interchangeable or "surrogates" for one another as Vitamins Online suggests.  Indeed, the two remedies are distinct in nature.  *See* discussion *infra* Section III.

unknowingly, Vitamins Online's reliance on *Bimbo Bakeries* functions as yet another attempt to blend together the injury and remedy inquiries.  As discussed in detail above, such an attempt is impermissible.

The court must also reject Vitamins Online's contention that it has already met its burden of injury and causation based on the First Order.  In that decision, the court found that Vitamins Online had produced some evidence of injury and causation.  *Vitamins Online I*, 2016 WL 538458, at *8.  The court further opined:

> Because the products compete on Amazon.com, a logical causal connection exists between NatureWise's false representations and Vitamins Online's sales position. Each consumer that purchases a NatureWise product due to NatureWise's false representations results in one less consumer in the relevant market willing to purchase a competing Vitamins Online product. Vitamins Online has also offered evidence that its decline in sales corresponds in time to an increase in NatureWise's sales for competing products.

*Id.*  Importantly, the court determined that "Vitamins Online ha[d] offered some evidence of injury that *may* have been caused by NatureWise's false representations," but, ultimately, that evidence was insufficient to warrant judgment as a matter of law although it was enough to survive NatureWise's motion.  *Id.* (emphasis added).  Contrary to Vitamins Online's assertion, the court did not conclude that NatureWise's actions had proximately caused Vitamins Online's alleged injury.  Rather, the court recognized that Vitamins Online had produced some evidence of its injury but there still remained questions of fact regarding whether that injury was caused by NatureWise.  Those issues of fact persist in the present motions.  The additional evidence Vitamins Online has presented to the court—the data tracking the decline in Vitamins Online's sales and to Dr. Belch's survey analyzing review manipulation—does not cure that defect.  Once again, Vitamins Online has produced enough evidence of injury to withstand NatureWise's motion but not enough for the court to grant its motion.  There still exists a logical causal

32

connection between Vitamins Online's drop in sales and NatureWise's emergence in the market. Dr. Belch's survey adds to that causal connection, but not to the point that granting summary judgment is warranted. As such, the court concludes that there are still issues of material fact surrounding injury and causation.

As a final matter, the court recognizes that in cases like this, where it is not a two-player market nor does it involve comparative advertising, causation and injury tend to be more difficult to establish. This is so because in such cases, a sale for the defendant is not necessarily a lost sale for the plaintiff. Instead, a sale for the defendant could be a lost sale for any other competitor in the relevant market. The court is persuaded that in such circumstances—at least based on the evidence in this case—the resolution of injury and causation should be left for the finder of fact at trial.

Because there remain genuine issues of material fact regarding the falsity, deception, and injury[9] elements of Vitamins Online's Review Claims, the court denies both parties' motions for summary judgment.

### b. Ingredients Claims

Similar to the Review Claims, Vitamins Online moves for summary judgment and NatureWise moves for partial summary judgment on the Ingredients Claims. As mentioned above, Vitamins Online argues that NatureWise falsely advertised and misrepresented its

---

[9] The court reaches this conclusion for both disgorgement and injunctive relief. Although Vitamins Online has come closer to meeting the injury element under the standard for injunctive relief, there are still genuine issues of material fact as to Vitamins Online's injury. Futher, there remain issues of fact on whether Vitamins Online has suffered an irreparable injury that would entitle it to an injunction *after* establishing the injury element of its false advertising claim. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) ("A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."). For both these reasons, the court is persuaded to deny to Vitamins Online's motion.

garcinia cambogia and green coffee products.[10]   More specifically, Vitamins Online contends

that NatureWise made false statements regarding (i) ingredient amounts and ratios; (ii) empirical

support; (iii) the absence of excipients or "fillers"; (iv) the manufacturing of its products; (v) the

nature of its products being vegetarian; and (vi) the efficacy and purity of its products.

NatureWise, however, for purposes of these motions, does not challenge each category of

allegedly false statement.   Instead, it only challenges the latter four categories.   More

specifically, NatureWise seeks summary judgment on the following statements: (1) that

NatureWise's products were "100% Pure"; (2) that all of NatureWise's "ingredient suppliers are

required to provide a Certificate of Analysis for each raw material they supply"; (3) that

NatureWise's garcinia cambogia was "[m]anufactured under strict laboratory-controlled

procedures"; (4) that NatureWise's products were "made in the U.S.A."; (5) that NatureWise

manufactured its products in conformity with Good Manufacturing Practices ("GMP")

promulgated by the United States Food and Drug Administration ("FDA"); (6) that "each

ingredient" in NatureWise's products was "verified for purity through in-house or independent

laboratory testing"; (7) that NatureWise's products were "vegetarian" or had "vegetarian

capsules"; (8) that NatureWise's green coffee was "double strength"; (9) that NatureWise's

green coffee "contain[ed] optimum levels of chlorogenic acid"; and (10) that NatureWise's

garcinia cambogia had "ZERO Fillers, ZERO Binders, and ZERO Artificial Ingredients" and

---

[10] In this case, NatureWise's garcinia cambogia and green coffee products have been placed into three categories. "Category 1 Products" are those products for which there are no existing samples to test; "Category 2 Products" are those products for which there are only two bottles remaining; and "Category 3 Products" are those products for which NatureWise has three or four bottles.   NatureWise produced Category 2 Products and Category 3 Products for testing.   As to the Category 1 Products, the court previously imposed a spoliation sanction against NatureWise and concluded that NatureWise had destroyed those products; Vitamins Online was prejudiced by that destruction; and NatureWise acted in bad faith.   *See* ECF No. 155, at 4–7.   As a result, the court held that Vitamins Online was entitled to an adverse inference instruction that the Category 1 Products bore all of the allegedly false ingredient claims alleged in the Complaint and that they failed to meet those label claims.   *Id.*

was "Sourced, Formulated, Meticulously Tested, and Guaranteed to be the Highest Quality
Available."

Preliminarily, the court concludes, for precisely the same reasons discussed in the Review
Claims section, that there exist genuine issues of material fact regarding the injury element of the
Ingredients Claims.  The court's discussion of causation and injury under the Review Claims
applies with equal weight to the Ingredients Claims.  Like the court decided above, Vitamins
Online has produced enough evidence of injury and causation for the Ingredients Claims to
survive summary judgment but not enough to warrant judgment as a matter of law.  The court,
therefore, denies Vitamins Online's motion based on the injury element.  Thus, because there are
issues of fact that preclude Vitamins Online's motion, the court will focus its analysis in this
section on NatureWise's motion and the particular statements that it challenges.  And because
the Ingredients Claims are also based on false advertising under the Lanham Act, the court will
apply the law from the preceding section to the facts underlying the Ingredients Claims.

First, NatureWise contends that the "100% Pure" claim and "Sourced, Formulated, . . .
and Guaranteed to be the Highest Quality Available" claim are statements of opinion.
NatureWise argues that the statements are qualitative and can neither be proven objectively false
nor interpreted as statements of fact.  Second, whether under a theory of literal or implied falsity,
NatureWise avers that there is no evidence that the "Certificate of Analysis", "[m]anufactured
under strict" lab procedures, and "made in the U.S.A." claims are false because NatureWise has
produced a multitude of certificates of analysis to prove that ingredient suppliers were required
to provide such certificates, and there is no evidence regarding any of the procedures followed by
NatureWise's manufacturers.  Third, NatureWise contends that each of the alleged false
statements listed above is ambiguous in the minds of reasonable consumers.  Moreover,

Vitamins Online has failed to produce any evidence that such statements are not ambiguous. Because each statement is ambiguous, NatureWise avers that Vitamins Online's claims can only proceed on an implied falsity theory. And under an implied falsity theory, NatureWise argues that Vitamins Online's claims fail because Vitamins Online has produced zero evidence of actual consumer confusion.

NatureWise also contends that Vitamins Online lacks the requisite evidence to prove that any of the following lots of NatureWise products were ever sold in commerce: 4302, 4517, 4614, 9152[11], 10129, 10570, 10684, 17906, 64453, 65660, 66885, 66887, 67929, 68843, 652300, 1432403, GC5870, and GCB4676. Thus, NatureWise claims it is entitled to summary judgment on any claims associated with the above lots. Similarly, NatureWise has produced a list of all the lots in this case. NatureWise argues that many of the lots are not at issue or not disputed in this case and therefore NatureWise is entitled to summary judgment on them.

In response, Vitamins Online argues that the above statements are not ambiguous and that NatureWise has the burden of proving that they are ambiguous. Vitamins Online claims that, when viewed in the context of Dr. Oz's recommendations, it is clear that the above statements are not ambiguous. As for NatureWise's claim that Vitamins Online cannot provide sufficient evidence to prove that the "Certificate of Analysis", "[m]anufactured under strict" lab procedures, and "made in the U.S.A." claims are false, Vitamins Online produced evidence from one of its experts, Dr. Norman Howe, that it was not NatureWise's regular practice to collect certificates of analysis; NatureWise did not manufacture its products under strict lab procedures because if it did, there would not have been so many problems with NatureWise's products; four

---

[11] Apparently, this specific lot was accidentally included with NatureWise's motion. Vitamins Online responded to its inclusion by showing that NatureWise's economist had included lot 9152 when calculating NatureWise's revenues and profits. NatureWise responded by acknowledging that lot should not have been included in its motion.

of NatureWise's contract manufacturers were issued warning letters by the FDA for multiple violations; and garcinia cambogia and green coffee are not native to the United States.

For the deception element, Vitamins Online argues that it is entitled to a presumption of deception because the above statements are literally false, but even under a theory of implied falsity, Vitamins Online claims there is evidence of actual consumer deception based on online reviews in which costumers stated that they purchased NatureWise products because of their contents and manufacture. Lastly, in response to NatureWise's argument to limit the claims to certain lots, Vitamins Online argues that NatureWise failed to properly maintain records of the production, distribution, disposition, and destruction of its products. Although NatureWise claims that none of the enumerated lots were sold in commerce, there is no evidence to suggest that they were not sold in commerce. Vitamins Online argues that it is logical to assume that the products were sold in commerce especially because NatureWise genuinely does not know what happened to some of its products.

The court concludes that there are genuine issues of material fact on the falsity and deception elements that preclude NatureWise's motion from being granted. First, the court rejects NatureWise argument that its "100% Pure" claim is a statement of opinion. Particularly in the context of health supplements, a claim that something is "100% Pure" is a measurable statement of fact. Were the court to conclude otherwise, any supplement producer could simply include the phrase "100% Pure" without actually verifying the purity of the product. Indeed, if purity was regarded as an opinion to be decided by each individual supplement producer, consumers would be more susceptible to experiencing confusion when making a purchase. In addition, the court is unconvinced that the phrase "100% Pure" is ambiguous. It seems likely that a reasonable consumer viewing such a phrase would expect exactly what the phrase

suggests—an unadulterated product consisting purely of the listed ingredients.  Nevertheless, there are still questions of fact that continue as to the composition of NatureWise's products.

The "Sourced, Formulated, Meticulously Tested, and Guaranteed to be the Highest Quality Available" claim, on the other hand, is a closer call.  At first blush, the statement may appear to be one of opinion.  However, when viewed in its position on NatureWise's garcinia cambogia label, it becomes less certain.   The statement immediately follows NatureWise's label claim that its garcinia cambogia consisted of "Vegetarian Capsules and Absolutely Nothing Else! ZERO Fillers, ZERO Binders, and ZERO Artificial Ingredients."  Thus, in its proper context, a reasonable consumer would likely understand that "Sourced, Formulated, Meticulously Tested, and Guaranteed to be the Highest Quality Available" would result in "ZERO Fillers, ZERO Binders, and ZERO Artificial Ingredients."  And in light of the facts before the court, there remain issues of material fact regarding whether NatureWise's products had fillers, binders, and artificial ingredients.

The court is similarly unpersuaded that each of the remaining Ingredients Claims above is ambiguous.  For each remaining statement, NatureWise employs an exercise of identifying specific words within each statement that it claims can be interpreted or defined, by dictionary or otherwise, in multiple ways thus rendering the entire statement ambiguous.  As a practical matter, the court disagrees with this ambiguity exercise for two reasons.  First, this practice fails to consider the context of the statements.  As courts have long held, "text must yield to context." *Avis Rent A Car Sys., Inc. v. Hertz Corp.*, 782 F.2d 381, 385 (2d Cir. 1986).  And although this case does not come before the court in the context of a Federal Trade Commission ("FTC") action, the court finds the reasoning from such cases to be illustrative on this point[12]:

---

[12] Courts have continuously held that a "plaintiff may and should rely on FTC guidelines as a basis for asserting false advertising under the Lanham Act."  *Casper Sleep, Inc. v. Mitcham*, 204 F. Supp. 3d 632, 638 (S.D.N.Y. 2016)

> [T]he cardinal factor is the probable effect which the advertiser's handiwork will
> have upon the eye and mind of the reader. It is therefore necessary in these cases to
> consider the advertisement in its entirety and not to engage in disputatious
> dissection. The entire mosaic should be viewed rather than each tile separately.
> 'The buying public does not ordinarily carefully study or weigh each word in an
> advertisement. The ultimate impression upon the mind of the reader arises from the
> sum total of not only what is said but also of all that is reasonably implied.'

*F. T. C. v. Sterling Drug, Inc.*, 317 F.2d 669, 674 (2d Cir. 1963) (quoting *Aronberg v. Federal Trade Commission*, 132 F.2d 165, 167 (7th Cir. 1942)).  Under this principle, when viewing the above statements in the appropriate context—that is, combined with every other statement on the label or Amazon product page and in light of Dr. Oz's specific recommendations regarding garcinia cambogia and green coffee products—the alleged ambiguities dissipate.  Put differently, given the statements' context, they no longer appear ambiguous to the extent NatureWise so alleges.  This is especially true given the backdrop of Dr. Oz's garcinia cambogia and green coffee recommendations in that NatureWise's statements essentially mirrored his guidelines.  Second, NatureWise's exercise of suggesting that several of its own statements are ambiguous seemingly cuts against what a corporation would want when promoting and advertising its health supplement products.  That a company deliberately markets its products in an ambiguous and difficult-to-understand manner is anomalous to say the least, especially in the context of this case with the particular statements that are at issue here.

There also remain uncertainties surrounding NatureWise's claim that Vitamins Online cannot provide sufficient evidence to prove that the "Certificate of Analysis," "[m]anufactured under strict" lab procedures, and "made in the U.S.A." claims are false.  As described above,

---

(quoting *Manning Int'l Inc. v. Home Shopping Network, Inc.*, 152 F. Supp. 2d 432, 437 (S.D.N.Y. 2001)); *accord Grasshopper House, LLC v. Clean & Sober Media, LLC*, No. 218CV00923SVWRAO, 2018 WL 6118440, at *6 (C.D. Cal. July 18, 2018); *see also B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 973 (7th Cir. 1999) ("[A]s the administrative agency charged with preventing unfair trade practices, the [FTC's] assessment of what constitutes deceptive advertising commands deference from the judiciary.").  Thus, the court's reliance on FTC-related caselaw is well-founded.

Vitamins Online did produce some evidence to call these claims into question.  For example, when viewing the "made in the U.S.A" claim with NatureWise's claim that its garcinia cambogia and green coffee were "100% Pure," a trier of fact could determine that such a statement was false because neither garcinia cambogia nor green coffee are native to the United States. Moreover, the court finds that Vitamins Online's evidence on these claims is sufficient at this juncture to preclude NatureWise's motion.

The court also finds that there are issues of fact regarding the lot claims that NatureWise avers were never sold in commerce.  Vitamins Online has produced evidence that NatureWise failed to keep adequate records regarding all the lots that it sold.  Although NatureWise contends that Vitamins Online has produced no evidence that those lots were sold in commerce, the reverse is also true: NatureWise has produced no evidence that the lots at issue were *not* sold in commerce.  In addition, there are facts precluding NatureWise's request for summary judgment on the list of lot claims that it argues are not at issue or not disputed.  Given the number of lots and the uncertainty surrounding some of those lots, the court concludes that it is most appropriate for the trier of fact to decide which lots are at issue or disputed after all the evidence as been produced at trial.

Despite the court's critique of NatureWise's ambiguity and opinion arguments above, the court concludes that they have enough merit to warrant submission to the finder of fact at trial. Indeed, the court recognizes that a reasonable finder of fact could conclude that at least some of the above statements are ambiguous.  This also necessarily creates issues of fact for the deception element.  If the finder of fact determines that the statements are literally false, then Vitamins Online would be entitled to a presumption of deception.  Alternatively, if the finder of fact determines that the statements are impliedly false, Vitamins Online would have to produce

evidence of actual consumer confusion.  Thus, given the questions of fact regarding falsity and deception that persist at this stage of the case, the court is restrained from granting NatureWise's motion.

Because there are genuine issues of material fact surrounding the falsity, deception, and injury elements of Vitamins Online's Ingredients Claims, the court denies both parties' motions.

### c.  Disgorgement

Now that Vitamins Online has elected to limit the remedies it seeks to injunctive relief and disgorgement, NatureWise moves for summary judgment to preclude disgorgement entirely. NatureWise argues that (1) Vitamins Online has failed to meet its initial burden of establishing which of NatureWise's sales were attributable to its alleged false advertising and not from otherwise legitimate conduct; (2) it is inappropriate to apply the burden-shifting framework for lost profits from trademark infringement cases to false advertising cases; (3) allowing Vitamins Online the disgorgement remedy would violate the Lanham Act's mandate that any award of profits must not constitute a penalty; and (4) Vitamins Online was required but failed to at least apportion its sales among the various categories and subsets of the Review and Ingredients Claims.  In the event the court rejects NatureWise's arguments to completely preclude disgorgement, NatureWise asks the court to limit any award of NatureWise's profits to sales made before the dates on which NatureWise ceased its allegedly unlawful activities.  It contends that it ceased voting on the helpfulness of Amazon reviews on April 8, 2015 and that no bottles of any lots of NatureWise products were sold after the expiration date for each particular lot.

Section 35 of the Lanham Act describes the monetary remedies that are available for a plaintiff when a defendant has violated the Act.  Section 35 provides:

> When a violation . . . shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, . . . subject to the principles of equity, to

> recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. . . . In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.

15 U.S.C. § 1117.  Additionally, the Tenth Circuit has held that "[u]nder the Lanham Act, plaintiffs must show either actual damages or willful action on the part of the defendant as a prerequisite to recover disgorgement of profits." *Klein-Becker*, 711 F.3d at 1161.  The Tenth Circuit has further defined the type of willfulness that is typically required for disgorgement as the "intent to benefit from the goodwill or reputation of the trademark holder." *Id.* at 1162 (quoting *W. Diversified Servs., Inc. v. Hyundai Motor Am., Inc.*, 427 F.3d 1269, 1274 (10th Cir. 2005)).  Nevertheless, "there may be other situations that constitute willful infringement even though the defendant does not intend to derive any benefit from the plaintiff's goodwill or reputation." *W. Diversified*, 427 F.3d at 1274.  Either way, courts "must be guided by familiar principles of equity" when deciding whether a case involves willful action because "an award of profits under the Lanham Act is truly an extraordinary remedy." *Id.*  Although this standard is most clearly applicable to trademark infringement cases, given the discretion left with district courts, the court finds that it can also be equally applicable in Lanham Act false advertising cases.

Under the plain language of the Lanham Act and the standard for willfulness articulated by the Tenth Circuit, the court concludes that Vitamins Online has met its required burden at the summary judgment stage to survive NatureWise's motion.  The language of the Lanham Act is clear: "In assessing profits the plaintiff shall be required to prove defendant's sales *only*; defendant must prove *all* elements of cost or deduction claimed."  15 U.S.C. § 1117 (emphasis added).  The use of the term "only" establishes that a plaintiff need demonstrate no more than the defendant's sales at which point the burden of deduction is shifted to the defendant.  Here,

Vitamins Online has produced evidence indicating the amount of NatureWise's garcinia cambogia and green coffee sales on Amazon. To require Vitamins Online to not only distinguish all sales based on false advertising from all sales based on legitimate conduct, but also require it to apportion its sales among all the various categories and subsets of its claims, would be to violate the plain terms of the statute. Furthermore, NatureWise bears the burden of "all" elements in reducing Vitamins Online's claim for profits. 15 U.S.C. § 1117. With the terms "only" and "all," the court is persuaded that Vitamins Online has met its requisite burden.

In addition, the court's conclusion aligns with that of other courts that have confronted this precise argument. For example, in *Rexall Sundown, Inc. v. Perrigo Co.*, 707 F. Supp. 2d 357 (E.D.N.Y. 2010), the defendant argued that the plaintiff "bore the burden of establishing what portion of [the defendant's] profits were due" to the allegedly false advertising. *Id.* at 359. The court concluded that by its plain terms, the Lanham Act "requires the plaintiff to prove 'sales only.' It does not say that it is [the] plaintiff's burden to prove, for example, 'sales due to the false advertising' or 'sales due to the violative conduct.'" *Id.* Accordingly, the court held that "the defendant bears the burden of showing all costs and deductions, including any portion of sales that was not due to the allegedly false advertising." *Id.*; *see Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 829 F. Supp. 2d 802, 819 (D. Minn. 2011) ("To be entitled to recover profits, [the plaintiff] must only prove [the defendant's] sales of the allegedly falsely advertised products. If [the defendant] fails to prove the sales not due to the allegedly violative conduct, [the plaintiff] may be entitled to all of [the defendant's] profits from the allegedly falsely advertised products—subject only to the principles of equity."); *see also Ameritox, Ltd. v. Millennium Labs., Inc.*, No. 8:11-CV-775-T-24-TBM, 2014 WL 1456347, at *10 (M.D. Fla. Apr. 14, 2014) (applying the reasoning from *Rexall* and *Aviva Sports*).

43

Beyond the fact that Vitamins Online has met its initial burden for disgorgement, it has also produced evidence that gives rise to genuine issues of fact regarding willfulness. As discussed above, Vitamins Online has produced some evidence that NatureWise may have acted willfully in attempting to deceive consumers. Vitamins Online also produced evidence that Doyle discussed stealing the design of Vitamins Online's labels for use on his NatureWise products. Based on this evidence and in light of the principles of equity, the court finds that Vitamins Online has produced enough evidence of willfulness for NatureWise's motion to be denied.

Case law cited by NatureWise further supports the court's conclusion. In particular, NatureWise cites the case *Retractable Techs., Inc. v. Becton Dickinson & Co.*, 842 F.3d 883, 901 (5th Cir. 2016) [*Retractable Techs. I*] throughout its motion to support its argument that Vitamins Online must apportion NatureWise's sales between proper and improper conduct. *Id.* ("Even if disgorgement is appropriate, however, a plaintiff is only entitled to those profits attributable to the false advertising. Accordingly, if a plaintiff fails to present evidence that the defendant benefitted from the false advertising, the plaintiff may not recover any of the defendant's profits.") (citation and quotation marks omitted). However, NatureWise's reliance is based on a misreading of the case. At the district court level, before the defendant appealed to the Fifth Circuit, the defendant, like NatureWise, argued that the plaintiff "must prove that its profits were attributable to the false advertising." *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, No. 2:08-CV-16, 2014 WL 12596469, at *3 (E.D. Tex. Nov. 10, 2014), *vacated and remanded*, 842 F.3d 883 (5th Cir. 2016). The district court concluded that the defendant was "misstat[ing]" the plaintiff's burden and that the plaintiff only needed to provide "some proof that plaintiff lost sales or profits, or that defendant gained them." *Id.* The district court held that

44

the plaintiff had met its burden for disgorgement.  *See id.* *3–5.  On appeal, the defendant raised the same apportionment argument.  *Retractable Techs. I*, 842 F.3d at 901.  Although the Fifth Circuit vacated and remanded the district court's decision on other grounds, it specifically stated that it found no clear error with the district court's finding that some of the defendant's profits were attributable to its false advertising.  *Id.*  Importantly, the court noted that the *defendant's* expert—not the plaintiff's—had conducted a cost-and-deduction analysis that limited the amount of the defendant's recoverable profits from $7.2 million to $560,000.  *Id.*  Thus, when taken in its proper context, the language cited by NatureWise takes its true form: a plaintiff need only demonstrate that the defendant has benefitted from the alleged false advertising (which Vitamins Online has done), then the defendant has the burden to reduce its profits by the elements of cost and deduction, which will result in the plaintiff recovering only those profits attributable to the false advertising.

The court also finds NatureWise's claim that to allow Vitamins Online to disgorge NatureWise's profits would result in a penalty instead of compensation to be unavailing.  It is true that the Lanham Act prohibits an award of profits to result in a penalty against the defendant as opposed to compensation for the plaintiff.  *See* 15 U.S.C. § 1117.  But under the facts of this case, allowing Vitamins Online to disgorge NatureWise's profits would not result in a penalty. NatureWise's concern is that if Vitamins Online has not apportioned profits between proper and improper conduct, then Vitamins Online would obviously be able to recover profits from proper conduct, which, in effect, would be a penalty against NatureWise.  This concern, however, simply highlights the importance of the defendant's burden of proving cost and deduction. Because the defendant bears this burden, he or she has the power to ensure that the plaintiff does not recover any profits that are not attributable to the false advertising.  This obviously leaves

open the door that if the defendant fails to distinguish ill-gotten profits from legitimate profits, it could result in a windfall for the plaintiff. "But to hold otherwise would give the windfall to the wrongdoer." *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 207 (1942). Furthermore, a court has discretion when deciding whether to disgorge a defendant's profits that further protects the defendant from being penalized. For "[e]ven with a finding of willfulness, a court may still exercise its discretion to reduce or even eliminate a profit award in the name of fashioning an equitable remedy to meet the needs of each case." *W. Diversified Servs.*, 427 F.3d at 1273.

As for NatureWise's claim that false advertising cases should be treated differently than trademark infringement cases for purposes of disgorgement, the court gives it little credence. Other courts have already faced and dismissed this argument. *E.g., Rexall*, 707 F. Supp. 2d at 361–62 ("[N]either the statutory text, Second Circuit case law, nor the [Lanham Act's] prior history provide any basis for applying in false advertising cases a different rule than the one used in other Lanham Act cases: that defendant bears the burden of apportionment.").

Finally, the court rejects NatureWise's request for alternative relief. First, there are genuine issues of material fact as to whether NatureWise actually ceased its conduct regarding Amazon reviews in April 2015. Simply because Doyle sent an email directing employees to cease the conduct of voting on Amazon reviews does not mean that conduct actually stopped on that very day. Likewise, there are still issues of fact regarding which lots were sold and whether they were sold after their expiration date. Given the uncertainty that exists regarding whether some lots were ever sold in commerce or not, the court must refrain from granting NatureWise judgment as a matter of law based on the argument that some products were not sold past their expiration date.

Therefore, the court concludes that Vitamins Online has met its burden of proving NatureWise's sales and that there are genuine issues of material fact as to NatureWise's willfulness. Consequently, the court denies NatureWise's Motion for Summary Judgment to Preclude Disgorgement Remedy.

### d. Counterclaims

As mentioned above, on August 19, 2019, the court granted NatureWise's request to dismiss its Fourth, Fifth, and Sixth Causes of Action. Consequently, the court need not address the parties' arguments related to those causes of action. The court will therefore limit its analysis to NatureWise's First (violation of section 43(a)(1)(A) of the Lanham Act), Second (violation of section 43(a)(1)(B) of the Lanham Act), and Third (common law unfair competition) Counterclaims. More specifically, because the court concludes that Vitamins Online's motion can be resolved based on the remedies that NatureWise seeks, the court will further refine its analysis to those remedies sought.

### i. Disgorgement

As the court has already described above, when assessing a plaintiff's claim to disgorge a defendant's profits, "the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117. Here, NatureWise produced evidence through its former Chief Operating Officer that it suffered actual damages from Vitamins Online's conduct. Then, in its Motion to Dismiss All Claims With a Right to Jury, NatureWise clarified that the only remedies it would seek for its counterclaims are injunctive relief and disgorgement. In limiting its remedies in this manner, however, NatureWise failed to account for a fatal flaw in its claim for disgorgement: it has produced no evidence of Vitamins Online's sales. And without any such evidence, NatureWise's claim for disgorgement

47

must necessarily fail because it has failed to meet its initial burden for disgorgement under the Lanham Act.[13]

### ii. Injunctive Relief

Under the Lanham Act, a court has the power to grant an injunction "according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a) (2012).  In order to qualify for injunctive relief, "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay*, 547 U.S. at 391.  In this case, NatureWise has failed to demonstrate the first two elements.  First, it has failed to produce evidence that it suffered an irreparable injury because of Vitamins Online's conduct.  For example, although its sales of garcinia cambogia fell after Vitamins Online sent out the "AS IS" flyer, NatureWise returned to the top sales ranking on Amazon for garcinia cambogia within only a few months.  Second, NatureWise has failed to produce sufficient evidence that remedies at law would be inadequate to compensate it for its losses.  Indeed, monetary compensation may well have been sufficient to redress NatureWise's alleged losses in this case had it not elected to withdraw its claim for actual damages.  Accordingly, NatureWise has failed to produce sufficient evidence that it is entitled to injunctive relief, and therefore its claim for such relief must be dismissed.

---

[13] In its Motion to Dismiss All Claims With a Right to Jury, NatureWise preserved its right to treble damages and costs of suit, including attorneys' fees, as permitted by the Lanham Act.  There are certain circumstances under the Lanham Act that allow a plaintiff to treble its damages, i.e., receive a "judgment for three times such profits or damages."  15 U.S.C. § 1117.  Here, NatureWise elected to dismiss its claims to a jury and forgo seeking actual damages.  Consequently, NatureWise cannot seek treble damages based on actual damages, but instead must rely on trebling Vitamins Online's profits.  But because NatureWise has failed to produce evidence of Vitamins Online's and so is not entitled to disgorge Vitamins Online's profits, neither is NatureWise entitled to recover trebled profits.

Because NatureWise has failed to produce evidence that it is entitled to the only remaining remedies it seeks, its counterclaims must be dismissed.  As such, the court grants Vitamins Online's Motion for Summary Judgment Dismissing Counterclaims.

**IV.    Motion to Strike Vitamins Online's Jury Demand**

As mentioned above, both parties have elected to limit the remedies they seek in this case to injunctive relief and disgorgement.  Based on this development, NatureWise moves to strike Vitamins Online's jury demand arguing that Vitamins Online no longer enjoys a right to a jury trial given the equitable nature of the remaining remedies that it now seeks.  For the reasons outlined below, the court agrees with NatureWise.

Federal Rule of Civil Procedure 38(a) provides that "[t]he right of trial by jury as declared by the Seventh Amendment to the Constitution--or as provided by a federal statute--is preserved to the parties inviolate."  In other words, a party's right to a jury trial must stem from one of two sources: (1) the underlying statute upon which its claim is based; or (2) the Seventh Amendment to the Constitution.  *See City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Important for purposes of this case, courts have already concluded that the "statutory text of the Lanham Act does not, by itself, provide for the right to a jury trial."  *JL Beverage Co., LLC v. Beam Inc.*, No. 211CV00417MMDCWH, 2017 WL 5158661, at *1 (D. Nev. Nov. 7, 2017); *see also Visible Sys. Corp. v. Unisys Corp.*, 551 F.3d 65, 78 (1st Cir. 2008) ("[I]t seems clear that the Lanham Act itself does not create a right to a jury trial whenever the remedy of an accounting of defendant's profits is sought.").  To overcome this, Vitamins Online cites to a single case from the Northern District of Illinois.  In that case, the court noted that the plain language of the Lanham Act "at least suggests the possibility of a jury determination in the first

49

instance, even if a court may adjust the jury award as it 'shall find to be just.'" *Black & Decker Corp. v. Positec USA Inc.*, 118 F. Supp. 3d 1056, 1059 (N.D. Ill. 2015) (quoting 15 U.S.C. § 1117(a)). However, the court concluded that it was "hesitant to find a statutory right to a jury trial" in the Lanham Act and instead decided the case based on the Seventh Amendment.[14] *Id.* at 1059–68. Given the hesitation of the court in the single case that Vitamins Online cites and the weight of authority against Vitamins Online's proposition, the court concludes that the Lanham Act does not provide Vitamins Online with a statutory right to a jury trial.

Because the Lanham Act provides no right to a jury trial, the court must necessarily turn to the Seventh Amendment. The Seventh Amendment right has "long been understood to extend only to 'suits in which *legal* rights were to be ascertained and determined.'" *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1354 (11th Cir. 2019) (quoting *Parsons v. Bedford*, 28 U.S. (3 Pet.) 433, 447 (1830) (Story, J.)) (emphasis in original). To determine whether a right is legal and so guaranteed the right to a jury trial, the Supreme Court has articulated a two-part test: courts must (1) "compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity"; and (2) "examine the remedy sought and determine whether it is legal or equitable in nature." *Tull v. United States*, 481 U.S. 412, 418 (1987). In applying this test, the second inquiry is the more important part of the analysis. *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 565 (1990). Here, the first part of the test is unhelpful and undecisive "since trademark actions were cognizable at both law and equity." *Hard Candy*, 921 F.3d at 1359. Thus, the court

---

[14] The *Black & Decker* court attributed its hesitation to the Supreme Court's decision in *Dairy Queen, Inc. v. Wood*, 369 U.S. 469 (1962). In *Dairy Queen*, the court held that the plaintiffs enjoyed a Seventh Amendment right to a jury trial because their demand for an accounting of profits was "wholly legal in its nature." 369 U.S. at 477. While the Supreme Court did not address whether a statutory right existed, the *Black & Decker* court concluded that "[g]iven the well-settled constitutional avoidance doctrine . . ., the fact that the Court resolved *Dairy Queen* on constitutional grounds at least suggests that it did not believe a statutory right to a jury trial existed." *Black & Decker*, 118 F. Supp. 3d at 1059 (citation omitted).

will turn its analysis to the second inquiry.  More specifically, the court will focus its analysis on the disgorgement remedy since the parties obviously do not contest the equitable nature of injunctive relief.

Although Vitamins Online urges the court to recognize its claim for disgorgement as a remedy that is legal in nature, the court finds this argument untenable.  As the Sixth, Ninth, and Eleventh Circuits have decided, a claim for disgorgement under the Lanham Act is an equitable remedy and therefore does not carry with it a right to a jury trial under the Seventh Amendment. *Id.* at 1358 ("[A] claim for an accounting and disgorgement of profits under the Lanham Act is equitable in nature and, therefore, . . . the Seventh Amendment's guarantee of a jury trial does not apply."); *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1075 (9th Cir. 2015) ("A claim for disgorgement of profits under § 1117(a) is equitable, not legal."); *Ferrari S.P.A. v. Roberts*, 944 F.2d 1235, 1248 (6th Cir. 1991) ("[Plaintiff's] complaint requested only equitable relief; an injunction and disgorgement of profits.").

In an attempt to circumvent this result, Vitamins Online argues that the Supreme Court's decision in *Dairy Queen* and its progeny entitle it to a jury trial based on its claim for disgorgement.  Vitamins Online advances this argument in two ways: first, it contends that various district courts interpreting *Dairy Queen* have applied a presumption that a claim for the disgorgement of a defendant's profits under Section 1117(a) is a "surrogate for damages" and thereby a legal remedy; and second, the "proxy rationale" of disgorgement renders Vitamins Online's claim for NatureWise's profits legal instead of equitable in nature.

As a preliminary matter, the plaintiff in *Hard Candy* also argued that *Dairy Queen* allowed for courts to treat disgorgement as a legal remedy.  *Hard Candy*, 921 F.3d at 1357–59. The Eleventh Circuit, however, determined that the plaintiff's reliance on *Dairy Queen* was

51

misplaced. *Id.* Contrary to the plaintiff's arguments, the court concluded that *Dairy Queen* did not hold "that the accounting and disgorgement of profits was a legal remedy." *Id.* at 1358. The Eleventh Circuit further opined:

> Indeed, it would have been strange for the Court to have implicitly held, without any historical analysis, that it deemed accounting and disgorgement of profits to be a legal remedy requiring a jury trial. We presume that the Supreme Court does not hide elephants in such well-disguised mouseholes. And we cannot ignore the clear lessons of history, most notably the Supreme Court's designation of profits as an "equitable measure of compensation" provided "on the theory of a trust *ex maleficio*," when our task is to explain the "nature of the remedy" sought by the plaintiff.

*Id.* (quoting *Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.*, 240 U.S. 251, 259 (1916)) (citation omitted) (emphasis in original). The court finds the Eleventh Circuit's analysis to be persuasive and adopts its interpretation of the *Dairy Queen* holding. *See also Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 132–33 (2d Cir. 2014) ("*Dairy Queen* does not abrogate the longstanding treatment of an accounting of *profits* as an equitable remedy, nor could it change how the remedy was treated at the time of the Court of Chancery.") (emphasis in original). Therefore, the court rejects Vitamins Online's reliance on *Dairy Queen* as the basis for its disgorgement claim to be legal in nature.

Notwithstanding the court's conclusion that *Dairy Queen* does not stand for the proposition that Vitamins Online's suggests, the court will still address the specifics of Vitamins Online's "surrogate for damages" and "proxy rationale" arguments. Vitamins Online argues that there exists a presumption that a claim for disgorgement under the Lanham Act is "a surrogate for damages" and thus should be decided by a jury. *Oxford Indus., Inc. v. Hartmarx Corp.*, No. 88 C 0322, 1990 WL 65792, at *7 (N.D. Ill. May 2, 1990). This argument is based on the premise that "a claim for a trademark infringer's profits is more analogous to a suit for damages than one for restitution." *Id.* Even if a suit for damages most resembles a suit for lost profits, to

stretch that similarity to the point of making the two interchangeable (i.e., making one a "surrogate" for the other) is inappropriate and disregards the distinct purpose and nature of the two remedies.  *See, e.g.*, *Fancaster, Inc. v. Comcast Corp.*, No. CIV.A. 08-2922 GEB E, 2010 WL 4320422, at *5 (D.N.J. Oct. 26, 2010) ("'Profits and damages are categorically distinct' since 'disgorgement of profits focuses on the prevention of unjust enrichment and the deterrence of willful infringement,' while 'compensatory damages . . . redress an injury.'") (quoting *Castrol, Inc. v. Penzoil Quaker State Co.*, 169 F. Supp. 2d 332, 344 (D.N.J. 2001)). Accordingly, the court rejects Vitamins Online's "surrogate" argument.

The court finds Vitamins Online's "proxy" argument to be equally unpersuasive.  Some courts have held that "an accounting of profits can act as a proxy for a legal claim in some circumstances."  *Ferring Pharm., Inc. v. Braintree Labs., Inc.*, 220 F. Supp. 3d 149, 151 (D. Mass. 2016).  The "proxy rationale" is based on the theory that "because proving actual damages is difficult, trademark law creates an alternative form of relief—profits as a proxy for damages— which is governed by a less challenging evidentiary regime."  *Black & Decker*, 118 F. Supp. 3d at 1066.  Under the proxy rationale, a plaintiff may be entitled to a jury trial if "1) the case involves similar products, 2) there is no adequate remedy at law and 3) the products compete directly."[15]  *Ferring*, 220 F. Supp. 3d at 151.

At the outset, the proxy rationale was also raised before the Eleventh Circuit in *Hard Candy*.  There, the plaintiff argued that "a jury should have decided its claims because it was

---

[15] In its Opposition to NatureWise's Motion to Strike Plaintiff's Jury Demand, Vitamins Online fails to address the three-part test discussed in *Ferring*.  Instead, Vitamins Online avers that the primary consideration in determining whether a defendant's profits may serve as a proxy for legal damages is whether the defendant's conduct caused the plaintiff to lose sales.  *Black & Decker*, 118 F. Supp. 3d at 1067 ("[A]ctual loss supports a theory of profits as a proxy for damages.").  As explained above, there still exist genuine issues of material fact regarding injury in this case.  Although Vitamins Online claims that it has experienced actual loss at the hands of NatureWise's actions, the court cannot make such a finding as a matter of law.  Accordingly, whether under the *Ferring* test or "loss of sales" inquiry described in *Black & Decker*, the court finds Vitamins Online's proxy rationale to be unavailing in this case.

seeking to recover [the defendant's] profits as a 'proxy' for the damages it suffered due to infringement." *Hard Candy*, 921 F.3d at 1348.  The plaintiff claimed such a "basis for seeking profits . . . mean[t] that the remedy [was] legal, not equitable in nature and carrie[d] with it the right to a jury trial." *Id.*  The Eleventh Circuit, however, disagreed with the plaintiff's contentions and held, as discussed above, that because disgorgement is an equitable remedy, "a plaintiff seeking the defendant's profits in lieu of actual damages is not entitled to a jury trial." *Id.*  Again, the court finds the Eleventh Circuit's analysis persuasive, and so concludes that under the proposed "proxy rationale" Vitamins Online's claim for disgorgement is not accompanied by a right to a jury trial.  Even if the proxy rationale was a viable route for Vitamins Online's jury trial claim, Vitamins Online's claim would nevertheless fail under the three-part test enumerated in *Ferring*.  Pursuant to the third prong, a plaintiff must establish that "the products compete directly."  *Ferring*, 220 F. Supp. 3d at 151.  In other words, the parties must be "direct competitors," which, in this context, means that the defendant's "profits reflect almost automatically a lost sale by the plaintiff."  *SharkNinja Operating LLC v. Dyson Inc.*, No. 14-CV-13720-ADB, 2016 WL 6134101, at *3 (D. Mass. Oct. 19, 2016) (quotation marks omitted); *see also Fishman Transducers, Inc. v. Paul*, 684 F.3d 187, 196 (1st Cir. 2012) ("Under this direct competition theory, the plaintiff and defendant products may be such complete substitutes that a sale by the infringer under the infringed party's mark is almost automatically a lost sale by the plaintiff, so the issue of causation almost vanishes from the case.").  This type of "direct competition" is not present in the current case; a sale for NatureWise does not automatically result in a lost sale for Vitamins Online.  Because the market here is not a two-player market, but a multi-player market, the issue of causation does not "almost vanish[]."  *Fishman*, 684 F.3d at 196.  Thus, Vitamins Online cannot establish a claim to a jury trial under the proxy rationale.

Lastly, Vitamins Online asserts that NatureWise's request to strike Vitamins Online's jury demand should be denied because the request (1) is premature; (2) ignores that NatureWise has not yet abandoned its legal counterclaims and defenses; and (3) ignores the courts ability to impanel a jury in an advisory capacity.  The court will address each argument in turn.

First, Vitamins Online contends that courts should not determine whether a party bringing a false advertising claim and relying upon the proxy rationale of damages is entitled to a jury trial under the Seventh Amendment until after the parties have presented all of the evidence at trial.  Vitamins Online cites two decisions from the District of Massachusetts in 2016 to supports its claim.  *See Ferring*, 220 F. Supp. 3d at 152 ("[B]ecause it is unclear whether the requirements for a proxy theory of damages are met, the Court will deny [the defendant's] motion to strike the jury demand and reserve[e] [sic] the question until after the case has been completed.") (quotation marks omitted); *SharkNinja*, No. 14-CV-13720-ADB, 2016 WL 6134101, at *4 ("Given the uncertainty as to whether [the plaintiff's] request for an accounting of [the defendant's] profits can be a proxy for its legal damages, the Court will delay making a constitutional ruling at this time.").  Here, the court finds that NatureWise's motion is not premature for three reasons.  First, the court has already concluded that disgorgement is an equitable remedy that guarantees no right to a jury trial under the Seventh Amendment.  Second, the court is unpersuaded that the proxy rationale transforms Vitamins Online's disgorgement claim into a legal one.  Third, there is sufficient evidence in this case that Vitamins Online and NatureWise are not "direct competitors" in the context required to support the proxy rationale. Therefore, the court finds no reason to delay its determination on the proxy rationale. Consequently, Vitamins Online's claim that NatureWise's motion is premature is without merit.

Second, Vitamins Online avers that NatureWise's motion fails because NatureWise did not expressly waive its legal counterclaims and defenses. Lest there be any doubt, in its Reply, NatureWise acknowledges that it has waived all its claims for lost profits—even as asserted as defenses to Vitamins Online's claims. As such, this argument is likewise unavailing.

Third, Vitamins Online argues that even if the court determined after a trial that Vitamins Online's remedy is purely equitable, the court "is permitted to submit any equitable issues to the jury for an advisory verdict." *Angelopoulos v. Keystone Orthopedic Specialists, S.C.*, No. 12-CV-5836, 2017 WL 2215038, at *3 (N.D. Ill. May 19, 2017); *Ferring*, 220 F. Supp. 3d at 152 (concluding that if, at trial, the plaintiff failed to show that it was entitled to a jury trial, the court would treat the jury's verdict as advisory pursuant to Fed. R. Civ. P. 39(c)). This argument, however, is now inapposite and fails given the court's determination that Vitamins Online's remaining remedies are equitable and do not carry a Seventh Amendment right to a jury trial.

The court therefore concludes that, under the Lanham Act, the disgorgement remedy is equitable in nature and does not provide Vitamins Online with a right to a jury trial under the Seventh Amendment.[16] Accordingly, the court grants NatureWise's Motion to Strike Plaintiff's Jury Demand.

## CONCLUSION

Based on the foregoing reasoning, each of the following Vitamins Online motions are hereby **DENIED**: Motion for Summary Judgment on Review Claims [ECF No. 299]; Motion for Summary Judgment on Product Claims [ECF No. 302]; Motion to Exclude Expert Testimony of Dr. You [ECF No. 305]; Motion to Exclude Testimony of Mollie Kober [ECF No. 306]; and

---

[16] It is worth reiterating that Vitamins Online expressly chose to limit its remedies to injunctive relief and disgorgement. Indeed, the record is replete with instances in which Vitamins Online clarifies that it is no longer seeking actual damages. Thus, by limiting its remedies to those that are equitable, Vitamins Online disclaimed itself of a right to a jury trial.

Motion to Exclude testimony of Thomas Barman [ECF No. 307].  Vitamins Online's Motion to Exclude Testimony of NatureWise's Expert Witness Richard S. Hoffman [ECF No. 304] is **GRANTED in part and DENIED in part**, and Vitamins Online's Motion for Summary Judgment Dismissing Counterclaims [ECF No. 308] is **GRANTED** in its entirety.  Accordingly, Third-Party Defendants NutriGold and Osman Khan are dismissed from the case.

Further, each of following NatureWise motions are hereby **DENIED**: Renewed Motion for Summary Judgment on Review Claims [ECF No. 274]; Motion for Partial Summary Judgment on Ingredients Claims [ECF No. 298]; Motion for Summary Judgment to Preclude Disgorgement Remedy [ECF No. 300]; Motion to Exclude Testimony of Julian McAuley [ECF No. 288]; Motion to Exclude testimony of Michael A. Belch [ECF No. 289]; Motion to Exclude Product Testing Testimony of Norman Howe [ECF No. 290]; Motion to Exclude GMP Testimony of Norman Howe [ECF No. 291]; Motion to Exclude Testimony of Tommy Noonan [ECF No. 292]; Motion to Exclude Testimony of Stan V. Smith [ECF No. 293]; Objection and Motion to Strike [ECF No. 406]; and Omnibus Objections to Evidence Cited in and Submitted in Support of Vitamins Online's Reply Memoranda [ECF No. 407].  NatureWise's Motion to Strike Plaintiff's Jury Demand [ECF No. 376] is **GRANTED**.

The court directs the parties to notify the court within ten days of the date of this decision as to the amount of time they will need to prepare for the bench trial and how long they anticipate the bench trial should last.  After the court receives the parties' notifications, the court will set a date for the bench trial.  In addition, because the court issues this decision under seal, the parties must also notify the court within ten days whether the decision can be issued publicly in its current state.  In the event that either party objects, that party must also notify the court

within those ten days of what portions should be redacted.  Otherwise, the court will publicly

issue this decision in its current form.

   Dated this 24th day of September, 2019.

           BY THE COURT:

           DALE A. KIMBALL,
           United States District Judge