SAVAGE, YEATES & WALDRON, P.C.
E. Scott Savage (2865)
Stephen R. Waldron (6810)
170 South Main Street, Suite 1075
Salt Lake City, Utah 84101
Phone: (801) 328-2200
Email: ssavage@sywlaw.com

R. Joseph Trojan (pro hac vice)
trojan@trojanlawoffices.com
Dylan C. Dang (pro hac vice)
dang@trojanlawoffices.com
Francis Wong (pro hac vice)
wong@trojanlawoffices.com
TROJAN LAW OFFICES
9250 Wilshire Blvd., Suite 325
Beverly Hills, CA  90212
Telephone:   310-777-8399
Facsimile:    310-777-8348
*Attorneys for Defendant,*
*HEARTWISE, INC.*
*d/b/a NATUREWISE*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| VITAMINS ONLINE, INC. a Delaware corporation,<br><br>        Plaintiff,<br>    v.<br><br>HEARTWISE, INC., an Oregon Corporation d/b/a NATUREWISE,<br><br>        Defendant. | CASE NO. 2:13-cv-00982-DAK<br><br>**DEFENDANT'S MOTION IN LIMINE NO. 1 TO PRECLUDE MR. STAN SMITH FROM OFFERING TESTIMONY OUTSIDE THE SCOPE OF HIS EXPERT REPORT PER FRCP 26(a)(2)**<br><br>**Judge Dale A. Kimball**<br><br>**Magistrate Paul M. Warner**<br><br>**Hearing Date: March 25, 2020**<br>**Time: 10:00 AM**<br>**Place: Courtroom 3.400** |

**Table of Contents**

PAGE

I. INTRODUCTION ................................................................................................. 1

II. STATEMENT OF FACTS.................................................................................... 2

    A. Overview of Mr. Smith's Report.............................................................. 2

    B. Mr. Smith's Reliance on Vitamins Online's Counsel's Instruction to Presume Injury ................................................................................... 3

III. ARGUMENTS ...................................................................................................... 4

    A. This Court's Previous Findings on Causation.......................................... 4

    B. Smith's Report Does Not Address Causation .......................................... 5

        1. Summary of Specific Causation Factors that Mr. Smith Did <u>Not</u> Analyze ................................................................................. 6

        2. Mr. Smith Did Not Analyze the Oz Effect.................................. 7

        3. Mr. Smith Did Not Analyze Effect of Third-Party Competitors ................................................................................. 7

        4. Mr. Smith Did Not Analyze the Effect of Pricing ...................... 8

        5. Mr. Smith Did Not Analyze the Effect of Amazon's Poor Reviews ........................................................................................ 9

IV. CONCLUSION.................................................................................................... 10

## Table of Authorities

***Cases***   P<small>AGE</small>(<small>S</small>)

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ................................................................................................ 4

***Codes, Rules, & Statutes***   P<small>AGE</small>

Federal Rule of Civil Procedure 26(a)(2) ............................................................... 1, 2, 6

Lanham Act ................................................................................................................ 4, 5

## **RELIEF SOUGHT AND SPECIFIC GROUNDS FOR THE MOTION**

Pursuant to the Court's February 27, 2020 Scheduling Order (Dkt. #478), Defendant HeartWise, Inc. d/b/a NatureWise ("NatureWise") moves to preclude Plaintiff Vitamins Online, Inc.'s ("Vitamins Online") economics expert, Mr. Stan Smith, from offering testimony at trial beyond the scope of his expert report. Specifically, NatureWise moves to preclude Mr. Smith from testifying on alleged damages that are not presented in his report as required by Federal Rule of Civil Procedure 26(a)(2).

NatureWise has reason for apprehension that Vitamins Online intends to offer expert testimony beyond the scope of the expert's report because Vitamins Online declined to meet and confer or otherwise confirm that its expert would stay within the bounds of his report such that this motion would be unnecessary. (*See* Ex. 1)

### I.   INTRODUCTION

Rule 26(a)(2) requires an expert to provide a report setting forth "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them…" Fed.R.Civ.P. 26(a)(2). Pursuant to Rule 26(a)(2), Mr. Stan Smith purported to offer a report on Vitamins Online's alleged damages for its asserted false advertising claims. (Dkt. #287: Expert Report of Stan Smith.)

However, Mr. Smith's calculation of damages was predicated on various theories of presumptive injury, all of which the Court has thoroughly rejected. As set forth in the Court's Summary Judgment Order (Dkt. #444 at pp. 25-33), the Court rejected Vitamins Online's "presumption of injury" arguments, noting that "in cases like this, where it is not a two-player market nor does it involve comparative advertising, … a sale for the defendant is not necessarily a lost sale for the plaintiff." (*Id.* at p. 33). Since Mr. Smith's determination of damages was

entirely based on assumptions of injury that have been expressly rejected by the Court, his opinion on damages is wrong, unreliable, and irrelevant.

More particularly, Mr. Smith did not analyze or state an opinion on how NatureWise could have caused economic injury to Vitamins Online given the Court's finding that this case does not involve a two-player market or comparative advertising. **Indeed, the words "cause" or "causation" do not appear anywhere in Mr. Smith's report.** (*Id.*) In particular, he did not make any finding that a sale made by NatureWise was necessarily a sale lost by Vitamins Online given the Court's findings that there are numerous other competitors in the market. Therefore, as Mr. Smith is bound by his report, he must be precluded under Rule 26(a)(2) from testifying about Vitamins Online's alleged injury at trial.

## II.    STATEMENT OF FACTS

### A.    Overview of Mr. Smith's Report

Mr. Smith presented a short 21-page report on Vitamins Online's alleged damages for its asserted false advertising claims. (Dkt. #287: Expert Report of Stan Smith.) As stated in his report, the narrow purpose of his assignment was only "to value the sales revenues by Heartwise subsequent to the unfair competition and false advertising by defendant..." (*Id.* at p. 1.) Mr. Smith was not tasked with determining causation. This is why he did not perform any analysis of the relevant market that would be necessary to determine the proximate cause of Vitamins Online's alleged injuries.

In particular, Mr. Smith offered no opinion on causation in his report. (*Id.*) He did not state an opinion on *whether* or *how* NatureWise's accused conduct proximately caused injury to Vitamins Online. (*Id.*) He made no attempt to demonstrate how each individual instance of alleged false advertising (whether Review claims or Ingredient claims) caused Vitamins Online to lose

2

sales of NutriGold. (Ex. 2: Smith Depo. Tr. at 64:7-14.) Hence, Mr. Smith could not and did not determine what caused Vitamins Online's alleged injuries.

Mr. Smith did not analyze causation because that was not the purpose of his report. Instead, he based his valuation of damages an assumption of injury—which the Court rejected.

### B. Mr. Smith's Reliance on Vitamins Online's Counsel's Instruction to Presume Injury

In deposition, Mr. Smith declined to answer questions regarding the presumption in injury that underlies his report:

> Q   Do you understand that in order to recover damages in this case Vitamins Online would be required to prove causation?
> ***
> THE WITNESS: Right. You would have to ask Mr. Nydegger whether he understands that because I don't need any legal understanding of what the plaintiff needs to establish in order to assert this claim, and I'm not going to answer legal questions on –

(Ex. 2: Smith Depo. Tr. at 24:23 – 25:8.) Mr. Smith further explained that he did not perform any analysis of causation because his valuation of damages was predicated on the assumption that it is a two-player market:

> Q   For your analysis I think you said you're assuming that the products in this case represent only a two-player market?
> A   It's my understanding that is a claim, yes.
> Q   Okay. And who are you relying upon for that understanding?
> A   So if I have an understanding, it's not that I rely on it, but I understand that that's what Plaintiffs will be presenting evidence at trial….

(*Id.* at 42:8-17.) Mr. Smith's assumption that the relevant market is a two-player market was based on Mr. Nydegger's instruction:

> Q   Who are you relying upon for that assumption that they're the only other consumer in the marketplace?
> A   It's my understanding that that evidence will be presented at trial. It's my understanding that that's a claim we are making. So I'm not relying on it, I'm simply informed by Mr. Nydegger.

3

(*Id.* at 33:1-7.)

Since Mr. Smith was instructed to assume that every sale made by NatureWise injured Vitamins Online, he did not conduct any analysis of whether there are other possible causes for Vitamins Online's alleged damages:

> Q      In your estimation have you considered all relevant factors in giving an opinion that NatureWise's alleged false advertising is the cause of decreased sales in Nutrigold products in appendix B?
> \*\*\*
> THE WITNESS:  I didn't measure what the lost sales were to Nutrigold and therefore haven't needed to establish all the possible causes…

(*Id.* at 27:16-24.)

As Mr. Smith himself pointed noted in deposition:

> Q      Did you make any comparisons of customer service between Nutrigold products and other sellers of Garcinia and green coffee products?
> A      No.  If it will help, **I didn't do anything that's outside the four corners of my report**….

(*Id.* at 62:12-16.)

Hence, by his own admission, Mr. Smith's entire analysis is contained in his report. Therefore, Mr. Smith must be precluded from offering any testimony that is outside the four corners of his report, including testimony regarding causation.

### III.   ARGUMENTS

#### A.   This Court's Previous Findings on Causation

The Supreme Court teaches that to establish the injury element of a false advertising claim under the Lanham Act, a plaintiff "must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising…." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014).  This Court's previous findings on causation is relevant to this motion *in limine* because the findings show that Mr. Smith did not analyze the

4

element of causation at all, let alone based on the framework provided by the Court. In the September 24, 2019 Summary Judgment Order (Dkt. #444), the Court rejected each of Vitamins Online's "presumption of injury" arguments, beginning with its "comparative advertising" argument:

> First, the court already determined that this case does not involve comparative advertising.…Therefore, the court again concludes that Vitamins Online cannot avail itself of a presumption of injury based on comparative advertising.

(Dkt. #444 at pp. 26-27.)

The Court also rejected Vitamins Online's argument that the market is a two-player market:

> Next, Vitamins Online avers that it is entitled to a presumption of injury because Vitamins Online and NatureWise are obvious competitors as well as direct competitors in a sparsely populated market….
>
> The court finds these arguments to be equally unpersuasive.…The court therefore rejects Vitamins Online's competition-based arguments for a presumption of injury.

(*Id.* at pp. 27-28.)

Not least, the Court rejected Vitamins Online's argument for a presumption of injury based on willfulness. (*Id.* at p. 30, fn. 7.) The Court explained that, "[i]f … a plaintiff could establish the injury element without showing that it has been or is likely to be injured. **… such a result defies logic and proves unsustainable.**" (*Id*. at p. 30 (emphasis added).)

Accordingly, the Court held, "[t]herefore, …Vitamins Online must still show 'that [NatureWise's] conduct has proximately injured an interest of [Vitamins Online's] that the [Lanham Act] protects.'" (*Id.* at p. 30 (emphasis added).)

### B. Smith's Report Does Not Address Causation

Mr. Smith must be precluded from offering any opinion at trial that NatureWise's alleged conduct proximately injured Vitamins Online because he failed to state any opinion on causation

5

in his report as required by Rule 26(a)(2). More particularly, Mr. Smith did not analyze causation based on the market conditions that the Court found:

> … in cases like this, where it is **not a two-player market nor does it involve comparative advertising,** causation and injury tend to be more difficult to establish. This is so because **in such cases, a sale for the defendant is not necessarily a lost sale for the plaintiff. Instead, a sale for the defendant could be a lost sale for any other competitor in the relevant market.**

(Dkt. #444 at p. 33 (emphasis added).) Mr. Smith did not provide any "basis and reasons" or "facts or data" to show how a sale for NatureWise is necessarily a lost sale for Vitamins Online, "where it is not a two-player market nor does it involve comparative advertising." (*Id.*)

### 1. Summary of Specific Causation Factors that Mr. Smith Did <u>Not</u> Analyze

Mr. Smith did not consider any factors that could have caused Vitamins Online to lose sales, such as:

1) The effect of the Dr. Oz Show on demand, particularly how overall market demand diminished as the "Oz Effect" waned over time;
2) Entry of numerous third-party competitors[1];
3) Vitamins Online's pricing, particularly the fact that its pricing was significantly higher than that of competing products (*e.g.*, Vitamins Online *doubled*[2] its pricing for Garcinia Cambogia before NatureWise entered the market in 2012, and in 2016 Vitamins Online's NutriGold was the highest[3] priced product in the market);
4) Vitamins Online's NutriGold suffered from consistently poor reviews[4];
5) Vitamins Online's sales dropped *prior to* NatureWise entering the market.[5]

---

[1] Dkt. #304: Expert Report of Richard Hoffman at pp. 7-8.
[2] Dkt. #304: Expert Report of Richard Hoffman at p. 11.
[3] Dkt. #304: Expert Report of Richard Hoffman at p. 12.
[4] From September 27, 2012 to November 25, 2012, NutriGold's Green Coffee dropped from a 193 rating of 5.0 to 3.3, and was 3.3, 17 days before NatureWise first began selling Green Coffee products on Amazon.com. (Dkt. #304: Expert Report of Richard Hoffman at p. 9.)
[5] Dkt. #304: Expert Report of Richard Hoffman at pp. 6-7.

(Dkt. #304: Expert Report of Richard Hoffman at p. 6.) As discussed below, Mr. Smith did not consider any of these factors.

### 2. Mr. Smith Did Not Analyze the Oz Effect

NatureWise moves to preclude Mr. Smith from testifying about the effect of the Dr. Oz show on the market ("Oz Effect") because he did not consider the Oz Effect in his report. Vitamins Online's own consumer survey expert, Michael Belch, described the importance of the Oz Effect:

> Dr. Oz has been known as one of the most powerful social influencers to such a degree that his endorsements have created a phenomenon referred to as the "Oz Effect". Specifically, numerous products have seen sales grow almost instantly as a result of a mere mention on Dr. Oz's television show.

(Dkt. #323: Expert Report of Michael A. Belch Rpt. at ¶ 71.)

According to Mr. Smith's own tabulations, both Vitamins Online's sales and NatureWise's sales of Green Coffee spiked following Dr. Oz's promotion of Green Coffee extracts. (Dkt. #287: Expert Report of Stan Smith at pp. 4-5.) As Vitamins Online itself has admitted, it was the Oz Effect that drove up demand and, therefore, sales. (Dkt. #302 at p. 12/66: "[T]he demand for dietary supplements … that met Dr. Oz's recommendations, exploded.")

Consequently, as the Oz Effect waned over time, the demand for Green Coffee supplements naturally decreased. Mr. Smith's chart shows that both Vitamins Online's sales and NatureWise's sales of Green Coffee decreased over the same period of time as the Oz Effect waned. This indicates that Vitamins Online's sales dropped because of the Oz Effect, not because of any alleged misconduct by NatureWise.

Yet, Mr. Smith did not perform any analysis of the Oz Effect as a factor of causation. Hence, Mr. Smith must be precluded from testifying about the Oz Effect on Vitamins Online's alleged injuries.

### 3. Mr. Smith Did Not Analyze Effect of Third-Party Competitors

7

On the heel of Dr. Oz's promotion of Green Coffee and Garcinia Cambogia extracts, Vitamins Online's CFO, Mr. Osman Khan, admitted that the market was flooded with "hundreds" of competitors. (Dkt. #274: Osman Khan Depo. Tr. at 151:24 – 152:21.) As Mr. Smith himself noted:

> Mr. Khan states that due to the dynamic demand for Garcinia and Green Coffee Extract supplements, competitors attempted to enter the market, and in particular offering competing products Amazon.com.

(Dkt. #287: Expert Report of Stan Smith at p. 5.)

With the inundation of competitors, supply was inflated, yet Mr. Smith did not consider the effect that other competitors in the market had on Vitamins Online's sales:

> Q … In your analysis did you consider the number of other sellers who also sold Garcinia and green coffee products from 2012 through 2017 on Amazon?
> A …Regarding my opinion on lost revenues or loss of prospective sales, **did not need to**.
> ***
> Q Did you quantify the number of online sellers who also sold Garcinia and green coffee products from 2012 through 2017 on Amazon?
> A **No. Did not need to.**

(Ex. 2: Smith Depo. Tr. at 37:10 – 39:7 (emphasis added).)

Accordingly, Mr. Smith must be precluded from testifying about the effect of third-party competitors on Vitamins Online's alleged injuries.

### 4. Mr. Smith Did Not Analyze the Effect of Pricing

NatureWise also moves to preclude Mr. Smith from testifying about pricing. Vitamins Online's pricing was significantly higher than that of competing products. (Dkt. #304: Expert Report of Richard Hoffman at pp. 11-13.) Yet, Mr. Smith did not analyze or state an opinion on the effect of pricing in his report:

> Q Did you make any price comparisons between Vitamins Online and other sellers of Garcinia and green coffee products?

8

| | | |
|---|---|---|
| A | | I had the information but **I didn't do any analysis. Outside the scope of my assignment.** Did not need to. |
| Q | | Do you know the pricing that other sellers of green coffee and Garcinia products sold between 2012 and 2017? |
| \*\*\* | | |

THE WITNESS: I had the information but it was outside the scope of what I needed to do.

(Ex. 2: Smith Depo. Tr. at 61:5-16 (emphasis added).)

Hence, Mr. Smith must be precluded from testifying about the effect of pricing on Vitamins Online's alleged injuries.

### 5. Mr. Smith Did Not Analyze the Effect of Amazon's Poor Reviews

Mr. Smith did not analyze or state an opinion on the effect of poor reviews of Vitamins Online's products on Amazon had on Vitamins Online's sales. Vitamins Online's NutriGold suffered from consistently poor reviews. (Dkt. #304: Expert Report of Richard Hoffman at pp. 8-10.)

The evidence in the record shows that, from September 27, 2012 to November 25, 2012, the Amazon rating for Vitamins Online's NutriGold's Green Coffee dropped from a 193 rating of 5.0 to 3.3, and was at 3.3. (*Id.* at p. 9.) This drop occurred 17 days *before* NatureWise first began selling Green Coffee products on Amazon.com. (*Id.*) Notably, Vitamins Online's average rating was well below NatureWise's rating and also well below most other competitors. (*Id.*) From late 2015, Vitamins Online appears to have the *lowest* rating in this market. (*Id.*)

Not surprisingly, Mr. Smith did not analyze the effect of Vitamins Online's low rating in his report:

| | | |
|---|---|---|
| Q | | Did you make any comparison of Amazon ratings between Nutrigold products and other sellers of the Garcinia and green coffee products? |
| A | | No. |

> Q    Did you ever quantify the ratings of other sellers of Garcinia and green coffee products?
> A    No.

(Ex. 2: Smith Depo. Tr. at 62:1-11.)

Hence, Mr. Smith must be precluded from testifying about the effect of Vitamins Online's poor reviews on its sales.

## IV.   CONCLUSION

For the foregoing reasons, the Court must grant this motion *in limine*.


DATED this 4th day of March, 2020.

        Respectfully submitted,

        TROJAN LAW OFFICES
        By

        /s/ R. Joseph Trojan
        R. Joseph Trojan
        Attorneys for NatureWise

10

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of March, 2020, a copy of the foregoing was served on the following by the method respectively indicated below:

| | |
|---|---|
| James E. Magleby | ( ) U.S. Mail, Postage Prepaid |
| Edgar Cataxinos | ( ) Hand-Delivered |
| Geoffrey Biehn | ( ) Overnight Mail |
| MAGLEBY CATAXINOS & GREENWOOD | ( ) Facsimile |
| 170 South Main Street, Suite 1100 | (X) CM/ECF Filing |
| Salt Lake City, Utah 84101-3605 | ( ) E-mail |
| magleby@mcgiplaw.com | |
| cataxinos@mcgiplaw.com | |
| mull@mcgiplaw.com | |
| bien@mcgiplaw.com | |
| *Attorneys for Vitamins Online, Inc.* | |

/s/ Michiko Speier
Michiko Speier

11