Chad E. Nydegger, (#9964)
Email: cnydegger@wnlaw.com
WORKMAN NYDEGGER
60 East South Temple, Suite 1000
Salt Lake City, UT 84111
Telephone: (801) 533-9800
Facsimile: (801) 328-1707

*Counsel for Vitamins Online, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| VITAMINS ONLINE, INC., a Delaware corporation,<br><br>    *Plaintiff*,<br><br>v.<br><br>HEARTWISE, INC., an Oregon corporation,<br><br>    *Defendant*. | **MEMORANDUM DECISION AND ORDER GRANTING VITAMINS ONLINE, INC.'S MOTION TO COLLECT THE JUDGMENT AND DENYING INTERVENOR MAGLEBY CATAXINOS & GREENWOOD P.C.'S CROSS-MOTION TO CONFIRM ENTITLEMENT TO RECEIVE SETTLEMENT FUNDS FROM THE BANKRUPTCY COURT**<br><br>Civil Action No.: 2:13-cv-00982-DAK<br><br>Judge: The Honorable Dale A. Kimball |

BACKGROUND ....................................................................................................... 3

JURISDICTION ...................................................................................................... 8

DISCUSSION ........................................................................................................ 13

I.    VO's Motion to Collect the Judgment........................................................ 13

    A.    VO's exclusive right to collect the Judgment under FRCP 69 .......................... 13

        1.    Heartwise's Opposition ................................................... 14

        2.    MCG's Opposition ......................................................... 14

    B.    Allowance and Payment of VO's Claim 3 ........................................ 15

        1.    Heartwise's Opposition ................................................... 17

        2.    MCG's Opposition ......................................................... 19

II.    MCG's Cross-motion To Confirm Entitlement to Receive Settlement Funds from the Bankruptcy Court........................................................................... 20

    A.    MCG's rights under the Letter .................................................. 21

        1.   Malpractice and Rules of Professional Conduct ............................ 24

    B.    MCG's rights under the Pravati agreements ...................................... 25

    C.    MCG's rights under its attorney's lien............................................ 26

    D.    MCG's Claim 5 under bankruptcy law .......................................... 28

CONCLUSION........................................................................................................ 29

This matter is before the Court on plaintiff and judgment creditor Vitamins Online, Inc.'s ("**VO**") *Motion to Collect the Judgment* [Dkt. No. 656] ("**Motion**") and intervenor Magleby Cataxinos & Greenwood, PC, k/n/a Magleby Cataxinos, PC.'s ("**MCG**") *Cross-motion To Confirm Entitlement to Receive Settlement Funds from the Bankruptcy Court* [Dkt. No. 671] ("**Cross-motion**").[1] Defendant Heartwise, Inc. ("**Heartwise**") and MCG oppose the Motion, and VO opposes the Cross-motion. During an Emergency Zoom Status Conference held August 29, 2024, the parties agreed that the Court should decide the Motion and Cross-motion on the briefs without oral argument. The Court has considered carefully the memoranda and other materials submitted by the parties, as well as the law and facts relating to the motions. Now being fully advised, the Court issues the following memorandum and order.

## BACKGROUND

On October 28, 2013, VO filed a complaint against Heartwise in this Court alleging Heartwise engaged in false advertising and unfair competition against VO in violation of the Lanham Act and Utah common law. [Dkt. No 1.] After years of litigation and a 3-week long bench trial, the Court entered its Findings of Fact and Conclusions of Law holding Heartwise liable to VO under both federal and state law. [Dkt. No. 585.] The Court entered a money judgment ("Judgment") in favor of VO and against Heartwise on November 10, 2020. [Dkt. No. 586.]

On December 3, 2020, Heartwise filed a Notice of Appeal of the Judgment to the U.S. Court of Appeals for the Tenth Circuit. [Dkt. No. 588.] Pertaining to enforcement and execution of the Judgment, Heartwise neither moved this Court nor the Tenth Circuit for a stay pending appeal.

---

[1] MCG concurrently filed an *Expedited Motion to Intervene.* [Dkt. No. 665.] Heartwise did not oppose MCG's motion and VO filed its *Notice of Limited No Opposition.* [Dkt. No. 674.] The Court granted the motion to intervene. [Dkt. No 675.]

On December 4, 2020, Heartwise filed a bankruptcy petition in the U.S. Bankruptcy Court for the Central District of California ("Bankruptcy Court"), commencing the bankruptcy case *In re Heartwise*, No. 8:20-bk-13335-SC ("Bankruptcy Case"). [Dkt. No. 595.] The filing of the bankruptcy petition vested all property of Heartwise into the bankruptcy estate ("Estate") and stayed enforcement of the Judgment against the Estate by imposing an "automatic stay." 11 U.S.C. §§ 541(a) and 362(a).

On April 28, 2021, VO filed Proof of Claim 3-2 ("Claim 3") for $14,426,972 in the Bankruptcy Case, which it supported by attaching a copy of the Judgment as an exhibit. [Dkt. 656-2.] VO attached to its proof of claim a statement summarizing its calculations of the amount of the debt Heartwise owed to VO, and that VO intended to "seek attorneys' fees spent in th[e] bankruptcy case to enforce its judgment, plus will seek postjudgment interest…." [*Id.* at PageID.35737, 35739.]

On May 28, 2021, MCG filed a competing Proof of Claim 5-2 ("Claim 5") for $14,500,000 in the Bankruptcy Case to collect the Judgment, which it supported by attaching a copy of the Judgment and a heavily-redacted copy of its Engagement Letter ("Letter") with VO. [Dkt. 656-3.] Importantly, Heartwise was **not** a party to the Letter. MCG argued that based on the Letter, "all payments that would otherwise be paid to [VO] on account of its Proof of Claim [3] should be paid to MCG." [*Id.* at PageID.35749.] Concurrently, MCG filed a *Limited Objection to Amended Claim of Vitamins Online, Inc. [Claim No. 3-2]* ("MCG Objection") making the same arguments based on the Letter asserted in MCG's Claim 5. [Dkt. 656-4; Bk-Dkt.[2] No. 277.]

---

[2] Docket entries in the Bankruptcy Case, 8:20-bk-13335-SC, are referenced herein as "Bk-Dkt."

As the trustee of the bankruptcy Estate, Heartwise proposed a chapter 11 reorganization plan to pay its prepetition creditors. MCG supported confirmation of Heartwise's plan, but VO opposed confirmation of that plan. The Bankruptcy Court held trial on confirmation of the proposed plan between November 10 and 16, 2021. [*See* Dkt. 656-11, p. 1:17-20.] Heartwise described its plan at the outset of the trial as follows:

> Your Honor, it's important to the debtor that today's hearing be framed for what it is. The debtor is seeking confirmation of a plan of reorganization which pays creditors in full; and now with interest and now on its effective date. To be clear, more than $16.3 million will be paid out in cash in as little as 15 days from today, absent an appeal. This isn't an earn-out plan[]; it's not a 10 percent plan. It's a plan that makes creditors whole immediately.

[Dkt. 656-35 at 19:24–20:8.]

On December 17, 2021, the Bankruptcy Court entered the *Order Confirming Heartwise, Inc.'s First Amended Chapter 11 Plan of Reorganization and Denying with Prejudice Certain Confirmation Order-Related Motions* ("Order on Confirmation"). [Dkt. 656-10.] The order states that "Heartwise, Inc's First Amended Chapter 11 Plan"[3] was being confirmed "as modified on the record," [Dkt. 656-11 at 1:18, 2:3-7], expressly integrating the Court's *Findings of Fact and Conclusions of Law* and Order on Confirmation with the plan as "non-severable" and "indivisible" from the plan proposed by Heartwise. [Dkt. 656-10, 7:5-9.] The order addresses the claims and issues in the matter before this Court, and it provides for payments to all creditors of the bankruptcy Estate as follows:

> Heartwise's First Amended Chapter 11 Plan of Reorganization (the "Plan") provides for payment of all creditors holding allowed claims 100 cents on the dollar plus postpetition interest. Because MCG disputes VOL's Claim 3-2, the Plan provides for Heartwise to interplead approximately $14.5 million in moneys ear-

---

[3] Heartwise filed two documents in the Bankruptcy Case titled "First Amended Plan" at Bk-Dkts. 201 and 460. Heartwise asserts that Bk-Dkt. 460 is the operative plan, an assertion VO appears to dispute. However, this Court need not resolve this dispute to decide the matters before it, and, consequently, expresses no opinion on that issue.

marked to pay the Claim 3-2 or Claim 5-2 (depending upon how the interpleader is ultimately resolved).

[*Id.* at 4:8-14.] As to Claim 3, the order states as follows:

> There would seem to be a powerful incentive for VOL <u>not</u> to appeal an order confirming the Plan because by declining to appeal (and assuming VOL can overcome an objection to its [sic] one of its claims by its former attorneys), VOL would stand to get paid approximately $14.5 million in cash in relatively short order <u>and</u> to continue to litigate its claimed entitlement to an additional $54 million.

[*Id.* at 19:27-20:3 (underline by the Bankruptcy Court).]

Heartwise's reorganization plan went effective on January 3, 2022 ("Effective Date"), on which date Heartwise paid $14.5 million into the Bankruptcy Court's registry and mailed checks to pay the rest of Class 1 creditors, which, according to Heartwise, "pays all Class 1 claimants' claims in full, with interest." [Bk-Dkt. 679, 1:26-2:3.]

On January 18, 2022, Heartwise filed an objection to Claims 3 and 5 ("Heartwise Objection"). [Dkt. 656-13.] Heartwise objected to Claims 3 and 5 on grounds that under "the Plan and the Confirmation Order, no monies are to be released from the [Bankruptcy] Court's registry until the appeal [of the Judgment to the Tenth Circuit], and cross-appeal, and any subsequent proceedings have concluded[,]" and because "the Judgment should be overturned, and no amounts paid to Vitamins Online. Ergo, both Claim Nos. 3 and 5 should be disallowed in their entirety." [*Id.* at 3:1-8.]

On January 24, 2022, the Bankruptcy Court held a hearing to determine the allowance of competing Claims 3 and 5. [Dkt. 656-14.] At the outset of the hearing, VO proposed that MCG stipulate to its maximum claimed contingency fee of $3.375 million being disbursed directly to MCG from the Bankruptcy Court's registry, and the rest to VO, each party reserving their rights to contest the amount of the fee. [*Id.* at 16:1-15.] MCG declined, insisting on collecting the entire $14.5 million. [*Id.* at 16:19-21.] After oral argument the Bankruptcy Court ruled that Claim 3 was

disallowed, VO lacked standing to bring Claim 3 to enforce the Judgment, and that MCG—not VO—was entitled to payment of the entire $14.5 million to pay Claim 5. [*Id.* at 45:1-49:5.] It ruled: "the Court has determined the entirety of it [$14.5 million in the court's registry] should be paid to MCG." [*Id.* at 52:1-22.]

VO moved for the Bankruptcy Court to reconsider its order disallowing Claim 3 and denying standing to VO in the Bankruptcy Case to assert that claim and its finding that MCG is entitled to collect payment of the Judgment via its Claim 5 on the terms MCG negotiated with Heartwise in the Reorganized Plan. [Dkt. 656-15.] With a new judge presiding due to the former judge retiring, on April 26, 2022, the Bankruptcy Court entered an order ("Abstention Order") granting VO's motion for reconsideration and vacating its prior order pertaining to Claims 3 and 5 as clearly erroneous and manifestly unjust. [Dkt. 656-20 at 5:23-25 and 7:27-8:1.] However, it stopped short of deciding which of Claims 3 or 5 should be allowed. Instead, the Bankruptcy Court permissively abstained, under 28 U.S.C. § 1334(c)(1), from hearing the proceedings to determine the allowance of Claims 3 and 5, stating its view that this Court is "the best court" and "the most appropriate" venue to resolve the issues related to the Judgment. [*Id.* at 10:7-20.]

VO appealed the Bankruptcy Court's abstention decision to the Bankruptcy Appellate Panel of the Ninth Circuit ("BAP"). The BAP affirmed the Bankruptcy Court's abstention. [Dkt. 656-33, PageID.36587.] VO then appealed to the Court of Appeals for the Ninth Circuit, arguing that the Bankruptcy Court lacked jurisdiction, a necessary predicate to abstain from hearing the MCG Objection in favor of another court, which abstention served as a *defacto* stay of releasing the funds from the Bankruptcy Court's registry. The Ninth Circuit also affirmed, holding, "The bankruptcy court had jurisdiction because adjudicating VOL's and MCG's competing claims are

'core proceedings arising under ... or arising in a case under title 11.'" [Dkt. 656-21, p. 3 (quoting 28 U.S.C. § 157(b)(1)).]

On August 20, 2022, the Bankruptcy Court closed the Bankruptcy Case on a preliminary basis. [Dkt. 656-24, 2:4-17.]

After the Effective Date of Heartwise's reorganization plan, Heartwise pursued its appeal of the Judgment to the Tenth Circuit, and VO pursued a cross-appeal. The Tenth Circuit affirmed the Judgment, including the monetary award and award of attorneys' fees, but remanded to this Court to consider the issues of entering a permanent injunction and awarding punitive damages under Utah common law. *Vitamins Online, Inc. v. Heartwise, Inc.*, 71 F.4th 1222, 1247 (10th Cir. 2023). The remanded issues remain pending before this Court.

On June 13, 2024, after the Tenth Circuit affirmed the Judgment, VO moved the Bankruptcy Court to reopen the case to allow Claim 3 and overrule the MCG Objection on procedural grounds that did not require the Bankruptcy Court to decide issues of Utah contract law. [Dkt. 656-25.] The Bankruptcy Court denied that motion. [Dkt. 656-28, 1:1-8.]

VO filed the present Motion on July 22, 2024. MCG filed is opposition and the Cross-motion incorporating its opposition by reference on August 1, 2024. Heartwise also filed an opposition to the Motion on August 1, 2024.

## JURISDICTION

The first issue this Court must address is this Court's jurisdiction to decide the abstained issues raised in the Motion and Cross-motion, which requires the Court to determine the scope of the Bankruptcy Court's abstention. VO requests this Court to determine that VO has the exclusive right to collect the Judgment directly from Heartwise, that its Claim 3 is allowed under the Bankruptcy Code, and that, as of the Effective Date, VO had the exclusive right to payment of the

$14.5 million from Heartwise's bankruptcy estate. [Dkt. 656, PageID.35704.]  Heartwise opposes, arguing that this Court cannot "make rulings on bankruptcy matters over which the bankruptcy court has exclusive jurisdiction, such as the allowance or disallowance of claims in the bankruptcy case and distribution of funds in its registry." [Dkt. 661, PageID.37413.] The Court notes that Heartwise contradicts its own representation to the Bankruptcy Court when seeking to have its bankruptcy case closed that "all motions and contested matters that are to be decided in [the Bankruptcy] Court have been resolved." [Dkt. 656-23, 2:5-6]. MCG similarly opposes, without citing any authority, asserting that "[a]rguing bankruptcy law in this forum…is improper." [Dkt. 670, p. 25.]  MCG also argues that the Bankruptcy Court "rejected all of Vitamins Online's bankruptcy arguments in support of its Claim 3," but in the same sentence, asserts that the Bankruptcy Court "issu[ed] not one, but two, orders abstaining from deciding these issues." [*Id.*] Thus, the Court first addresses the scope of the Bankruptcy Court's abstention and this Court's jurisdiction to decide Motion and Cross-motion on the abstained issues.

It is clear from the Bankruptcy Court's Abstention Order, Retraction Order, the decisions of the appellate courts in the Ninth Circuit, and subsequent proceedings  in the Bankruptcy Case that the Bankruptcy Court abstained from deciding all issues pertaining to the allowance and disallowance of the competing Claims 3 and 5. In the Abstention Order the Bankruptcy Court first vacated its prior erroneous order disallowing Claim 3 and holding that MCG is entitled to collect the $14.5 million payment on the Judgment via its Claim 5 on the terms it negotiated with Heartwise. [Dkt. 656-20, 5:11-8:1.] Having vacated those holdings, the Bankruptcy Court then turned to the issue of abstention:

> A dispute remains between VOL and MCG regarding which entity has a claim and right to payment from Debtor. It is this Court's view that this dispute should be adjudicated in an alternate venue (i.e., the Utah District Court), where Debtor's

appeal on the Judgment remains pending…. Accordingly, this Court permissibly ABSTAINS from adjudicating the issue.

[Dkt. 656-20, 8:5-10.] The Bankruptcy Court's reference to "which entity has a claim and right to payment from Debtor" is clearly a reference to the vacated decision concerning the allowance and disallowance of Claims 3 and 5. Additionally, the Bankruptcy Court cites 28 U.S.C. § 1334(c)(1) as granting it the authority to "abstain[] from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." [*Id.* at 8:14-18 (quoting 28 U.S.C. § 1334(c)(1)).] The only "proceedings" concerning whether VO or MCG "has a claim and right to payment from Debtor" are the allowance and disallowance of Claims 3 and 5. Additionally, when VO questioned whether the scope of the Bankruptcy Court's abstention was limited solely to disputes "between VOL and MCG," the Bankruptcy Court entered an order ("Retraction Order") retracting some of its erroneous findings and clarifying: "The Court did not intend for such statements of fact to be limiting on the Court that will ultimately decide the issue of whether MCG or VOL are entitled to right to payment from Debtor." [Dkt. 656-29, 3:17-19.] It also made it clear that its abstention decision is not merely from a dispute just between VO and MCG, but from whether each party has a "valid claim" against and "right to payment" from Heartwise: "While VOL attempts to characterize this Court's abstention as being related only to 'any dispute between VOL and MCG' [Bk-Dkt. 789, Pg. 8:13-14], VOL's Motion appears to wholly ignore the actual text of the [Abstention] Order, which clearly identifies the abstained issue as being the dispute regarding whether VOL or MCG have a claim and right to payment from Debtor[.]" [Dkt. 656-29, 3:1-11; *see also id.* at 2:23-25 ("The Reconsideration Order is clear insofar as it vacates the prior Court's orders disallowing VOL's Claim 3-2 and abstains from rendering a determination of whether VOL or MCG have a valid claim against Debtor.").]

More than two years later, VO moved the Bankruptcy Court to reopen the case to allow Claim 3 and overrule the MCG Objection on procedural grounds that did not require the Bankruptcy Court to decide issues of Utah contract law. [Dkt. 656-25.] The Bankruptcy Court's denial of that motion further confirms that it abstained from all issues pertaining to the allowance and disallowance of Claims 3 and 5, and not solely the Utah contractual issues raised by the Letter, as Heartwise and MCG argue in their oppositions. [*See* Dkt. 656-28, 1:1-8.]

Lastly, on July 26, 2024, two days after VO filed the present Motion, Heartwise filed an emergency motion with the Bankruptcy Court seeking an order for VO and its counsel to show cause why they should not be held in contempt and sanctioned for filing the Motion with this Court, and to require VO to withdraw the Motion. [Dkt. 679-1.] Heartwise argued that VO should be sanctioned because the Motion "asks the Utah District Court to enter an order that would (i) rule upon claims allowance and disallowance and claims objections pending before [the Bankruptcy] Court…, and (ii) purportedly allow VOL to enforce and collect the Judgment from the Funds in the [Bankruptcy] Court's registry *immediately* in clear violation of the express terms of the Plan and Confirmation Order." [*Id.* at 6:11-21 (emphasis by Heartwise).]

On July 30, 2024, the Bankruptcy Court held an emergency hearing on Heartwise's motion. [Dkt. 679-2.] In denying the motion for an order to show cause, the Bankruptcy Court again articulated that it had abstained from deciding the allowance and disallowance of Claims 3 and 5. [Dkt. 679-2, 23:9–24:11.]

It is clear from the foregoing discussion that Bankruptcy Court permissibly abstained from the proceedings to determine the allowance and disallowance of Claims 3 and 5 under 28 U.S.C. § 1334(c)(1). In abstaining from those proceedings, the Bankruptcy Court identified this Court as the appropriate court to decide those proceedings. [Dkt. 656-20, 10:7-20.]

The Court now addresses whether it has jurisdiction to decide the allowance and disallowance of Claims 3 and 5. This Court has jurisdiction over this civil action under 28 U.S.C. §§ 1331 (federal question), 1332 (diversity), 1338 (trademark and unfair competition), and 1367 (supplemental jurisdiction). The Court also has enforcement jurisdiction under Fed. R. Civ. P. 69 to aid a judgment creditor execute any judgment this Court enters in its favor. *Atlas Biologicals, Inc. v. Kutrubes*, 50 F.4th 1307, 1321 (10th Cir. 2022) ("Process subsequent to judgment is as essential to jurisdiction as process antecedent to judgment, else the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution.") (quoting *Riggs v. Johnson Cnty.*, 73 U.S. (6 Wall.) 166, 187, 18 L.Ed. 768 (1867)). The Bankruptcy Court has "exclusive" jurisdiction over Heartwise's bankruptcy "case" under 28 U.S.C § 1334(a), but its jurisdiction to hear "proceedings" in that case is "not exclusive" pursuant to 28 U.S.C. § 1334(b). Having non-exclusive jurisdiction over civil proceedings permits a bankruptcy court to abstain under 28 U.S.C § 1334(c) "from hearing a particular proceeding," including "core" proceedings, in favor of other courts deciding the abstained proceedings. *See McIntyre v. Active Energies Solar, LLC (In re McIntyre)*, No. 23-1052 at *5-6 (10th Cir. Aug. 2, 2024)*. Whereas the Bankruptcy Court abstained from the proceedings for the allowance and disallowance of Claims 3 and 5 and identified this Court as the appropriate court to decide those issues, this Court has jurisdiction to decide the merits of competing Claims 3 and 5 against Heartwise to determine the allowance and disallowance of Claims 3 and 5. *Id.* In the case at bar, the Bankruptcy Court's decisions were appealed to the BAP and further to the Court of Appeals for the Ninth Circuit. The BAP ruled that "[t]he bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B)," and affirmed abstention. [Dkt. 656-33, p. 8.] On further appeal, the Ninth Circuit also affirmed, accepting arguments of appellees—Heartwise and MCG—and ruling

that the proceeding to determine Claims 3 and 5 was a "core" proceeding under § 157(b)(2)(B) concerning the "allowance or disallowance" of claims. [Dkt. 656-21, p. 3.] The Court, therefore, has jurisdiction to decide the Motion and the Cross-motion.

## DISCUSSION

Pending before the Court is the Motion of VO, the plaintiff and judgment creditor in this case, and the Cross-motion of MCG, which represented VO in this case for approximately two years including at trial, but is now an intervenor party since August 5, 2024, when this Court granted its *Motion to Intervene.* [Dkt. No. 675.] Because the cross motions are based on different grounds and request different relief, the Court will address each motion separately, determining on a case-by-case whether the movant has met its burden for each relief it seeks.

### I.   VO's Motion to Collect the Judgment

VO's Motion requests the Court to enter an order ruling: (i) "VO has the exclusive right to collect the Judgment directly from Heartwise"; and (ii) "VO's Claim 3 is allowed under bankruptcy law, and VO has been entitled to payment of Claim 3 in the amount of $14.5 million since January 3, 2022." The Court will address each relief in turn.

### A.   VO's exclusive right to collect the Judgment under FRCP 69

Federal Rule of Civil Procedure (FRCP) 69 states, "A money judgment is enforced by a writ of execution, unless the court directs otherwise" and, according to the Restatement (Second) of Judgments § 18 cmt. c (1982), "A judgment for the plaintiff awarding him a sum of money creates a debt in that amount in his favor. He may maintain proceedings by way of execution for enforcement of the judgment." *See also Salazar v. Buono*, 559 U.S. 700, 712, 130 S.Ct. 1803, 176 L.Ed.2d 634 (2010) (holding that a non-party to a judgment has no standing to enforce the judgment or seek its vindication).

VO contends, because this Court found Heartwise liable "solely" to VO and entered the Judgment "solely" in VO's name, it has had the exclusive right to enforce and collect the Judgment against Heartwise. It further supports its contention based on the Tenth Circuit's decision affirming the Judgment and entering another judgment solely in VO's name against Heartwise. *Vitamins Online, Inc. v. Heartwise, Inc.*, 71 F.4th 1222 (10th Cir. 2023) ("We affirm the award of profits, attorney fees, and costs, and find no reversible error in the amount awarded."). It also argues that no party has sought, let alone successfully obtained, a stay of this Court's Judgment or of the judgment entered by the Tenth Circuit, and therefore are effective.

The Court concludes that VO has met its burden to show it has the exclusive right to collect the Judgment as affirmed by the Tenth Circuit and is entitled to the relief it seeks unless Heartwise or MCG can successfully rebut that conclusion.

### 1.    Heartwise's Opposition

The Court notes that Heartwise's opposition to VO's Motion does not challenge VO's exclusive right to enforce and collect the Judgment. Heartwise's opposition is limited to the timing of payment of the proof of claim related to the Judgment, which the Court addresses below.

### 2.    MCG's Opposition

MCG concedes VO has the exclusive right to enforce and collect the Judgment under FRCP 69, but states in a footnote that VO's contention that "it, and only it, is entitled to collect the judgment because it is 'solely in VO's name' is a 'simplistic approach [that] obviously ignores that a right to collect a judgment can be varied by assignment, contract, a lien, and so forth.'" [Dkt. 668, PageID.37640 n.7.] MCG does not cite any case law or statute addressing how VO "varied" its right to enforce and collect the Judgment. MCG also neither argues nor explains why as a party with the alleged right to collect the Judgment against Heartwise it did not move to intervene in this case or in the Tenth Circuit appeals prior to the entry of the Judgment. MCG does not dispute that

VO has the exclusive right to enforce the Judgment, but argues that upon VO's enforcement of the Judgment MCG, not VO, has the right to collect payment of the Judgment. In other words, MCG requests that payment of the Judgment be redirected to MCG upon VO's enforcement of the Judgment. MCG cites no legal support for this novel proposition. The Court finds that MCG has failed to rebut VO's showing that it is entitled to enforce and collect the Judgment under Fed. R. Civ. P. 69.

The Court notes that MCG's opposition does not request the Court to deny VO's Motion, but instead seeks the affirmative relief of an order stating that "MCG is entitled to receive the Escrow Funds, if and when the Bankruptcy Court determines that release is proper under the Plan and its orders." [Dkt. 668, PageID.37656.] That request is the same affirmative relief MCG seeks via its Cross-motion. [Dkt. 671, PageID.38097.] The Court will, therefore, address MCG's arguments and whether it has carried its burden to obtain the affirmative relief it seeks in the section below addressing the Cross-motion.

### B.  Allowance and Payment of VO's Claim 3

According to 11 U.S.C. §101(10)(A), a creditor is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." Under § 101(5)(A) a "claim" is a "right to payment," which the courts have interpreted to "mean[] an enforceable obligation under applicable state law." *In re Hummer Transportation, Inc.*, Nos. 11-60663, DCN: RHT-2, 2013 Bankr. LEXIS 5587, at *8 (B.A.P. 9th Cir. Sep. 12, 2013) (citing *Travelers Cas. & Sur. Co. v. P. Gas & Elec. Co.*, 549 U.S. 443, 450-51 (2007)). Under 11 U.S.C. §502(a), a claim is "deemed allowed" as of its filing date and, under bankruptcy law, the *prima facie* validity of a claim can only be overcome by an objection to its allowance sustained under 11 U.S.C. §502(b).

The Supreme Court has explained that "…even where a party in interest objects, the court 'shall allow' a creditor's claim 'except to the extent that' the claim implicates any of the nine exceptions" enumerated in §502(b). *Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co.*, 549 U.S. 443, 449 (2007) (quoting §502(b)). "Section 502(b) sets forth the <u>sole</u> grounds for objecting to a claim and directs the court to allow the claim unless one of the exceptions applies…." *In re Heath*, 331 B.R. 424, 435 (B.A.P. 9th Cir. 2005) (underline original, internal quotations and alterations omitted) (quoting *Dove-Nation v. eCast Settlement Corp.,* 318 B.R. 147, 150-51 (8th Cir. BAP 2004) (citing 28 U.S.C. § 2075)); *accord In re Castillo*, 488 B.R. 441, 446 (Bankr. C.D. Cal. 2013). The "express enumeration [in §502(b)] indicates that other exceptions should not be implied." *In re Gerwer*, 898 F.2d 730, 732 (9th Cir. 1990); *SNTL Holdings Corp. v. Centre Ins. Co.*, 571 F.3d 826, 838-39 (9th Cir. 2009) ("[W]e 'must find a basis in section 502 to disallow a claim, and absent such basis, we must allow it.'" (quoting *Wells Fargo Fin. Acceptance v. Rodriguez (In re Rodriguez)*, 375 B.R. 535, 545 (9th Cir. BAP 2007), citing *Travelers*, 549 U.S. at 443)).

VO filed Claim 3 for $14,426,972 as a creditor of Heartwise's Estate. [Dkt. 656-2.] The Court concludes that, under bankruptcy law, Claim 3 was "deemed allowed." 11 U.S.C. § 502(a). Because the amount of VO's Claim 3, as filed, was $14,426,972, and the proof of claim stated that VO would seek attorneys' fees incurred in the Bankruptcy Case and post-petition interest, Heartwise set the amount of Claim 3 at $14.5 million in its plan and disclosure statement to include post-petition attorneys' fees, costs, and interest. [Dkt. 656-31, 20:14-17 ("The Plan provides for a payment to Vitamins Online of $14.5 million."); Dkt. 656-41, p. 44 of 45; Dkt. 656-42, p. 45 of 50; Dkt. 656-43, p. 54 of 62 (listing Claim 3 or 5 to collect the Judgment as an unimpaired claim in the amount of "$14,500,000.00"); Dkt. 656-35, 22:9-14.] *See also In re Holm*, 931 F.2d 620,

623-24 (9th Cir. 1991) (concluding that a plan proponent files an "informal proof of claim" and a "demand against the estate" by seeking bankruptcy court's approval of its disclosure statement).

Under 11 U.S.C. § 1124(a)(4)(1), a class of claims or interests is unimpaired under a plan if "the plan leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest." VO contends that the Bankruptcy Court's order on confirmation and every iteration of Heartwise's reorganization plan left Claim 3 "unimpaired" under §1124(1) and entitled to the "same treatment" as other creditors in Class 1 under §1123(a)(4). [Dkt. 656, PageID.35709-710; Dkt. 656-11, 21:24-25 ("The Court concludes that Vitamins Online's claims are unimpaired under the Plan, as well as the balance of claim in Class 1."); *see also* Dkt. 656-41, p. 44 of 45 (listing Claim 3 as unimpaired); Dkt. 656-42, 45 of 50 (same); Dkt. 656-43, p. 54 of 62 (omitting Claim 3, but listing Claim 5 to collect the Judgment as unimpaired).]

Thus, VO argues that it is the only "creditor" with a "claim" and "right to payment" on the Judgment from Heartwise, that its Claim 3 is allowed under bankruptcy law, the amount of Claim 3, as set by Heartwise, is $14.5 million, and that, as the holder of an unimpaired claim, it has been entitled to payment for Claim 3 since January 3, 2022, when all of the other creditors in its Class 1 got paid.

### 1.    Heartwise's Opposition

Heartwise makes two arguments in its opposition to VO' Motion to Collect. *First*, Heartwise argues that "this Court should not enter any order that purports to decide the allowance or disallowance of claims in the bankruptcy case" and that "the [f]unds cannot be disbursed from the bankruptcy court's registry until further order of the bankruptcy court." [Dkt. 661, PageID.37413.] This Court has addressed its jurisdiction to decide the issues raised in the Motion

above and rejects Heartwise's arguments. Additionally, the Court does not interpret VO's Motion as an end run around the Bankruptcy Court's authority to make a final determination on the allowance or disallowance of claims against the Heartwise Bankruptcy Estate or an improper attempt to "seize" funds from the Bankruptcy Court. [*Id.* at PageID.37411.] Rather, the Motion seeks a determination on the issues the Bankruptcy Court abstained from, to wit, that its Claim 3 is deemed allowed as a matter of bankruptcy law absent a valid objection sustained under §502(b). Once the Court makes that determination, VO indicates that it will move the Bankruptcy Court for an order allowing Claim 3 and authorizing distribution of the funds in its registry for payment of Claim 3, relying on this Court's order in support.

*Second*, Heartwise argues that "[u]nder the Reorganization Plan, the Funds do not get paid out 'until all appeals of the Judgment, and any subsequent proceedings have been completed'" and that this would be the case even if Claim 3 is allowed because doing so would violate "several bankruptcy orders." [Dk. 661, PageID.37416.] However, Heartwise does not point to any orders of the Bankruptcy Court to support this argument. [*See id.*] Instead, Heartwise quotes a section of the Reorganization Plan that addresses only payment of MCG's Claim 5, not VO's Claim 3. [*See* Dkt. 661-2, 5:2-11 ("The amount asserted in Claim No. 5 of [MCG], $14.5 million, which amount is related to the…Judgment…shall be deposited with the [Bankruptcy] Court's registry as interpleaded funds on the Effective Date, and will be released to [MCG] only upon further order of [the Bankruptcy] Court. … [T]he $14.5 million to pay the Judgment in full…will be funded on the Effective Date as set forth above, but not released to [MCG] until all appeals of the Judgment, and any subsequent proceedings have been completed.").] Thus, the provision Heartwise cites does not support Heartwise's argument that the Reorganization Plan delays payment of VO's Claim 3.

Heartwise does not dispute that Claim 3 is unimpaired. Under § 1126(f), the Bankruptcy Court confirmed Heartwise's reorganization plan over VO's objections by finding that Claim 3 was unimpaired. [Dkt. 656-11, 21:24-25 ("The Court concludes that Vitamins Online's claims are unimpaired under the Plan, as well as the balance of claims in Class 1. … Class 1 is unimpaired, and therefore, pursuant to Section 1126(f) of the Bankruptcy Code has accepted the Plan."). Yet, Heartwise urges this Court to impair Claim 3 by delaying payment even after it is allowed. Moreover, Heartwise requests this relief without moving to stay execution on the Judgment and meeting the "heavy burden" to obtain such a stay established by the Supreme Court in *Nken v. Holder*, 556 U.S. 418, 425 (2009).

Heartwise's decision to not seek a stay of execution and to not address VO's contention that Claim 3 was left unimpaired by the reorganization plan is fatal to its argument against immediate distribution of the monies in the Bankruptcy Court's registry to VO for Claim 3. In fact, by urging this Court to impair Claim 3 after its allowance by indefinitely delaying payment of Claim 3 until "all subsequent proceedings" on remand from the Tenth Circuit to this Court have concluded, Heartwise asks the Court to violate the terms of the very Reorganization Plan that it seeks to enforce.

### 2.      MCG's Opposition

Like Heartwise, MCG argues that funds cannot be distributed from the registry to pay Claim 3 until "the Bankruptcy Court determines that release is proper under the Plan and its orders." [Dkt. 670, p. 41.] MCG's argument against immediate payment of Claim 3 fails for the same reasons as Heartwise's arguments. MCG does not provide any legal support for its argument that the timing of the payment of Claim 5—not Claim 3—that MCG agreed to in Plan-460 is binding on VO or otherwise can be imputed to delay the timing of the payment of Claim 3. Like

Heartwise, MCG also does not dispute that Claim 3 is unimpaired and entitled to the same treatment as all the other claims in Class 1 under bankruptcy law. Thus, for the reasons articulated above, MCG's arguments seeking to delay payment of Claim 3 fail.

With regard to MCG's objection filed against Claim 3, VO challenges the MCG Objection as improper under the Bankruptcy Code. [Dkt. 656, PageID.35724-725.] Specifically, VO argues that the MCG Objection cannot be sustained because it is not brought under any of the nine grounds enumerated in §502(b)(1)-(9). [*Id.*] MCG does not address VO's argument that the MCG Objection must be overruled because it does not fall under any ground enumerated in §502(b)(1)-(9) in MCG's briefs filed with this Court. This Court agrees with VO, finds that the MCG Objection does not fall under any ground enumerated in §502(b)(1)-(9), and denies MCG's request that Claim 3 be overruled/rejected and determines that the MCG Objection must be overruled for failure to comply with § 502(b).

In view of the foregoing, this Court finds that VO was entitled to payment for Claim 3 as of January 3, 2022.

## II.    MCG's Cross-motion To Confirm Entitlement to Receive Settlement Funds from the Bankruptcy Court

MCG filed a cross-motion, seeking the same affirmative relief—an order from this Court determining that MCG has the exclusive right to collect the monies in the Bankruptcy Court's registry—that it does in its opposition to VO's Motion to Collect, incorporating by reference the arguments of its opposition. [*Compare* Dkt. 668, PageID.37656 *with* Dkt. 671, PageID.38097.] MCG has argued that it has the exclusive right to collect the entirety of the $14.5 million Judgment because: (1) VO assigned its collection right under the Letter to MCG; (2) VO granted MCG an irrevocable power coupled with an interest ("PCI") to collect payment on the Judgment; (3) MCG's statutory lien interest entitles it to collect the entire $14.5 million Judgment from

20

Heartwise; (4) MCG did not commit malpractice; and (5) MCG did not violate the Utah Rules of Professional Conduct.

### A.  MCG's rights under the Letter

MCG asserts that its Letter with VO gives MCG the right to collect the Judgment. [Dkt. 668, PageID.37641-642.] In this section MCG merely argues that MCG earned a contingency fee under the Letter, a point that VO does not dispute. But MCG does not identify any legal theory pursuant to which its right to be paid a contingency fee under the Letter would, post termination of the Letter, allow it to collect payment of the Judgment directly from Heartwise. [*See id.*] The closest MCG comes to making such an argument is the statement that "MCG is therefore entitled to receive the Escrow funds as a simple matter of contact law." [*Id.* at PageID.37643.] But MCG does not cite any contract law to support its position.

On the other hand, VO argues that the Bankruptcy Court already found that the Letter is not an assignment of the right to collect payment of the Judgment. [Dkt. 656 (citing Dkt. 656-20, 6:1-14.)] Although MCG argues at length in its opposition that it has the right to collect payment of the Judgment under the Letter, MCG appears to have abandoned its "assignment" argument as it does not respond to VO's argument, does not here argue that the Letter is an assignment, and does not identify any language in the Letter as constituting an "assignment." The Bankruptcy Court's findings concerning MCG's "assignment" argument cited by VO is as follows:

> It is common practice for a firm representing a client on a contingency fee basis to include a term in its engagement letter with the client that requires that payment of any potential judgment obtained in client's favor to be made through the firm, such that the firm can collect its contingency fee from the judgment proceeds and pay the remainder to the client. However, such a term is not an assignment but rather creates a contractual right between the firm and client; the client is, for all intents and purposes, the sole holder of the judgment, and the judgment debtor remains liable only to the holder of the judgment. If the judgment debtor does not pay the judgment through the firm or otherwise, the existence of the term in the engagement letter does not provide the firm with recourse against the judgment debtor directly, except that the firm may seek to collect the judgment on their client's behalf.

> Likewise, the firm has no recourse against the judgment debtor if the judgment debtor, contrary to the terms of the engagement letter8, pays the client directly. In that circumstance, the firm's only recourse is to seek collection of the judgment proceeds directly from the client.

[Dkt. 656-20, 6:1-14.] This Court agrees. VO did not assign the right to collect payment of the Judgment to MCG via the Letter.

In a subsequent section of its opposition, MGC argues that the Letter granted MCG a "power coupled with an interest" ("PCI") to collect payment of the Judgment. [Dkt. 668, PageID.37649-50.] In support of this argument MCG quotes the Bankruptcy Court's analysis of the Letter and reliance on *Montague v. McCarroll*, 15 Utah 318 (1897), to find that the Letter conveyed an irrevocable PCI. [Dkt. 668, PageID.37649-650 (quoting Dkt. 668-11, 4:15-5:4).] This argument fails on multiple grounds.

First, the Bankruptcy Court, Judge Clarkson presiding, rejected the very analysis MCG relies upon and vacated that reasoning and conclusion as clearly erroneous. [Dkt. 656-20, 7:13-8:1.] The order vacating the finding of PCI was appealed to and affirmed by the BAP. [*See* Dkt. 656-20, 7:13-8:1 (vacating the Bankruptcy Court's prior order finding a PCI); Dkt. 656-33, p. 2 (BAP affirming the Bankruptcy Court's order finding the Letter did not convey a PCI).] Therefore, MCG is precluded from litigating that argument again in its Cross-motion.

Second, the attorney-client relationship "is a quintessential principal-agent relationship, for the client retains ultimate dominion and control over the underlying claim" and "the attorney is an agent who is duty bound to act in the principal's interests…regardless of whether the attorney-client contract or state law confers any special rights or protections on the attorney…." *Commissioner v. Banks,* 543 U.S. 426, 436 (2005). It is well-settled that an attorney-client fee agreement does not create a power coupled with an interest. *Halloran-Judge Tr. Co. v. Heath*, 70 Utah 124, 136, 258 P. 342, 339-40 (Sup.Ct. 1927) (contingency fee agreement did not give rise to

an irrevocable PCI); *Isrin v. Superior Court*, 63 Cal.2d 153, 159 (Cal. 1965) (same); *Todd v. Superior Court*, 181 Cal. 406 (Cal. 1919) (same); *Clark v. United States*, 57 F.2d 214 (W.D. Mo. 1932) (same); *Mubi v. Broomfield*, 108 Ariz. 39, 492 P.2d 700, 703 (1972) (same); *White v. Aiken*, 197 Ga. 29, 28 S.E.2d 263, 266-67 (1943) (same); *Courtney*, 71 V.I. at 178 (same); *Wright,* 13 Cal.2d at 141-42 (Cal. 1939) (same); *Scott v. Superior Court*, 205 Cal. 525 (Cal. 1928) (same); *O'Connell v. Superior Court*, 2 Cal.2d 418 (Cal. 1935) (same); *Estate of Cazaurang*, 1 Cal.2d 712 (Cal. 1934) (same); *Fields v. Potts*, 140 Cal.App.2d 697 (Cal. Ct. App. 1956) (same). MCG does not provide any case in which a court found that an attorney-client fee agreement created a power coupled with an interest. The only case MCG cites in support of its power coupled with an interest argument is *Montague*, which does not support MCG's argument as *Montague* concerned a power of attorney, not an attorney-client fee agreement.

Third, to hold a PCI, MCG must hold an interest in VO's claims against Heartwise, not solely an interest in the proceeds of those claims. However, the Utah Rules of Professional Conduct expressly prohibit MCG from holding such an interest in VO's cause of action. *Dahl v. Dahl*, 459 P.3d 276, 323 (Utah 2015) ("Rule 1.8(i) of the Utah Rules of Professional Conduct prohibits attorneys from acquiring 'a proprietary interest in the cause of action or the subject matter of litigation the lawyer is conducting for a client.'"). If the Letter grants MCG a PCI, then it is void *ab initio* because Utah law "voids fee agreements giving control over settlement to the attorney." *P.A.D.D. v. Graystone Pines Homeowners' Ass'n*, 789 P.2d 52, 56 (Utah Ct. App. 1990). Finding that MCG holds an irrevocable PCI would allow MCG to assert control over VO's settlement with Heartwise and the collection of its Judgment (such as delaying collection until all proceedings on remand to this Court from the Tenth Circuit have concluded as MCG agreed to in the Reorganized Plan)—in violation of Utah Rule of Professional Conduct 1.8(i).

*Fourth*, the "power" to "collect money" cannot support a PCI as a matter of law. *See Frankel v. J.P Morgan*, 76 A.D.3d 664, 668 (N.Y. App. Div. 2010) ("Numerous cases have held that an agent granted the power to collect debts on behalf of a principal, who takes his or her fee out of the proceeds, does not have a power coupled with an interest." (citations omitted)).

*Fifth*, courts have universally rejected the proposition that attorney's liens are "pecuniary interests" that can render a power irrevocable. The Court in *Isrin*, addressing this very issue, held:

> From the foregoing analyses the conclusion emerges that in litigation an attorney conducts for a client he acquires no more than a professional interest. To hold that a contingent fee contract or any "assignment" or "lien" created thereby gives the attorney the beneficial rights of a real party in interest … would be to demean his profession and distort the purpose of the various acceptable methods of securing his fee.

63 Cal.2d at 161-62 (analyzing cases). "In other words, the contract represents nothing more than the ordinary contingent contract and does not give rise to or create a power coupled with an interest within the meaning of the authorities." *Wright v. Security-First Nat. Bank,* 13 Cal.2d 139, 141-42 (Cal. 1939). Consequently, the Letter does not entitle MCG to collect payment of the Judgment.

Under § 101(5)(A) a "claim" is a "right to payment" from the debtor, which the courts have interpreted to "mean[] an enforceable obligation under applicable state law." *In re Hummer Transportation, Inc.*, Nos. 11-60663, DCN: RHT-2, 2013 Bankr. LEXIS 5587, at *8 (B.A.P. 9th Cir. Sep. 12, 2013) (citing *Travelers*, 549 U.S at 450-51). For the reasons explained above, the Letter did not grant MCG an assignment or PCI that is an "enforceable obligation under applicable state law" against Heartwise. As such, the Court concludes that MCG did not obtain the right to collect payment of the Judgment via the Letter.

## 1. Malpractice and Rules of Professional Conduct

MCG contends that VO did not terminate MCG "for cause" and "waived" any right to challenge MCG's rights under the Letter. [Dkt. 668, PageID.37646-649.] It further contends that

24

it did not commit malpractice or violate the Utah Rules of Professional Conduct. [*Id.* at PageID.37651-655.] These arguments pertain to whether MCG's rights to collect payment of the Judgment under the Letter were terminated. Whereas the Court has found that the Letter did not give MCG a right to collect payment on the Judgment in the first instance, the Court disregards MCG's arguments concerning termination of the Letter, violation of the Utah Rules of Professional Conduct, and malpractice as moot.

### B.  MCG's rights under the Pravati agreements

MCG argues, for the first time in this Court, that VO assigned its right to collect the Judgment to Pravati—not MCG—and acknowledges that it was aware of that assignment. [Dkt. 668, PageID.37643-645.] VO responds that MCG lacks standing to assert any contractual rights Pravati may have against VO, and that MCG is wrong in any event. [Dkt. 679, PageID.38133.] VO also provides a copy of the letter that Pravati sent to MCG demanding that MCG cease and desist from taking actions in the Bankruptcy Case on behalf of Pravati and clarifying that "Pravati strongly disagrees with MCG's assertion that MCG must receive all proceeds relating to the matter…," [Dkt. 679-9, PageID.38246], and an email from Pravati's CEO stating, "If the judge makes a bad call and sends the funds to MCG, the fight is on, with no leverage. We need to figure out how to not allow these funds to be sent to MCG." [Dkt. 685-2, PageID.38324.] The Court need not address these arguments, however, because it concludes that MCG lacks constitutional and prudential standing to assert any contractual rights Pravati may have against VO. *Shelledy v. Lore,* 836 P.2d 786, 789 (Utah 1992) ("The general rule is that a litigant 'must assert his own legal rights and interests, and cannot rest his claim for relief on the legal rights or interests of third parties.'" [quoting *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205 (1975)]).

### C.  MCG's rights under its attorney's lien

MCG contends that "MCG is independently entitled to be paid its contingency fee from the Escrow Funds, in addition to its entitlement to take possession of all of the Escrow Funds, based upon its Attorney's Lien." [Dkt. 668, PageID.37645-646.] MCG does not cite any authority to support this proposition.[4] [*See id.*] MCG's lien argument fails on multiple grounds.

First, MCG's attorney's lien asserting its contingency fee is unenforceable as it was filed in violation of the Attorney's Lien Statute. Utah Code § 38-2-7(2) expressly limits an attorney's lien to "the balance of compensation due from a client." The Letter expressly states that MCG's contingency fee is not "due" from VO until VO collects a recovery from Heartwise: "To clarify the obvious, this means that under no circumstances shall Vitamins Online be responsible for the contingency fee portion of the fee, unless and until Vitamins Online recovers monies, i.e., the Firm's contingency fee will come solely from monies recovered from the defendants." [Dkt. 656-5, PageID.35791).]   It is undisputed that VO has not recovered any monies from Heartwise. Consequently, no contingency fee is yet "due" to MCG and MCG has no attorney's lien on an amount not yet due. Utah Code § 38-2-7(2). Further, because VO has paid the $144,748.61 in hourly fees due at the time the lien was filed [*see* Dkt. 614, PageID.3611; Dkt. 656-49, 4:19-23], that portion of the lien has been satisfied and MCG's maintenance of its attorney's lien is improper *in toto*. Indeed, VO demanded that MCG retract its improper notice of lien in November 2021, but MCG refused. [*See* Dkt. 656-50.]

Second, MCG is precluded from enforcing its lien at this time as a matter of law. Utah Code § 38-2-7(4)(b) holds that "[a]n attorney may not move to intervene in an action or file a

---

[4] The only authority MCG cites in this section is Utah Code § 38-2-7(3) for the proposition that "MCG's attorney lien relates back to the time of employment of MCG by Vitamins Online." [Dkt. 668, PageID.37365.]

separate legal action to enforce a lien before 30 days has expired after a demand for payment has been made and not been complied with." MCG has not provided any evidence beyond the disputed declaration of Mr. Magleby that it has demanded payment of its contingency fee.[5] Citing *Boyle v. Clyde Snow & Sessions* PC, 2018 UT App. 69, ¶ 13, 424 P.3d 1098, 1101-02, MCG argues that Mr. Magleby's declaration is sufficient evidence to perfect its lien. [Dkt. 682, PageID.38256.] *Boyle* is distinguished from this case on the facts. In *Boyle* the firm asserting the lien produced the letters sent to the client demanding payment of its fees more than thirty days before it filed the amended notice of attorney's lien at issue in that case. *Boyle,* 424 P.3d at 1100. Mr. Magleby's declaration does not state that MCG sent a letter to VO demanding payment of the contingency fee and has not provided evidence of any such demand to the Court. Consequently, MCG merely has an (improper) notice of lien; but a mere notice of attorney's lien does allow MCG to intercept payment directly to VO. *See Sec. & Exch. Comm'n v. Clark*, No. 1:11-cv-46 DN, at *4 (D. Utah Sep. 28, 2012) ("....the Notice of Attorney's Lien filed by Mr. Wulf does not prohibit the disbursement of the funds directly to the claimants.").

Third, even if MCG had perfected its lien (which it has not), under Utah law that lien would merely grant MCG a right to bring an action to enforce the lien. The Utah Court of Appeals has explained that an attorney's lien against the proceeds obtained by the client can only be enforced in a separate action brought by the attorney:

> Section 78-51-41 simply "creates an attorney's charging lien upon the client's cause of action or counterclaim, which attaches to the proceeds of the judgment or verdict in the client's favor." *Neilson v. Neilson*, 780 P.2d 1264, 1271 (Utah App. 1989) (citation omitted). However, "the statutory charging lien may not be foreclosed by

---

[5] The Court notes that VO does not dispute that the Letter entitles MCG to a contingency fee, but disputes that the amount of the contingency fee is "at least $3.375 million" as asserted in MCG's notice of lien, and an assertion MCG made that it has increased to "[a]lmost four million" as of December 15, 2022. [*See* Dkt. 656-37, 40:15.] VO asserts that it will raise its disputes regarding the amount of the lien when MCG attempts to enforce its lien.

way of the attorney's request for that relief in the original action; instead, ***counsel must bring a separate action against the client to determine the amount of the fee and foreclose the lien.*** *Id.* (emphasis added) [citations omitted]. Thus, although an attorney is entitled to a lien in an action in which he has participated, his interest is simply that: a lien, not a judgment.

*McDonald v. McDonald*, 866 P.2d 1253, 1255 (Utah Ct. App. 1993) (original emphasis); *see also Neilson,* 780 P.2d at 1271 ("If counsel for Carleen had sought an order enforcing an attorney lien or directing that his client pay him, it would clearly have been improper for the court to grant that request in this action."). In *McDonald* the attorney "made no effort to enforce his attorney's lien, but instead chose to proceed by attempting to alter the divorce decree to provide that the attorney fees be paid directly to him." *Id.* at 1255. Similarly, MCG has made no effort to enforce its attorney's lien. Instead, MCG has chosen to move this Court to enter an order directing that the Judgment be paid directly to MCG, arguing "MCG's attorney lien is valid and enforceable, and gives MCG the right to collect the judgment from the Bankruptcy Court." [Dkt. No. 681, PageID.38257.] This Court denies MCG's effort to enforce its lien via motion in violation of the statutory requirements governing attorney's liens. [6]

### D.  MCG's Claim 5 under bankruptcy law

In its reply brief MCG requests that if the Court determines matters of bankruptcy law, that the Court should find its Claim 5 "valid and Vitamins Online's Claim3 overruled/rejected." [Dkt. 681, PageID.38250.] Claim 5 asserts that the Letter gives MCG the right to collect payment of the

---

[6] Section 78-51-41 was repealed in 2001 and replaced with Section 38-2-7. The new statute no longer permits attorney's lien on client's "cause of action or counterclaim," limits the amount of the lien to the "balance of compensation due from a client," attaches only to "money or property owned by the client," and prohibits attorneys from taking any legal action to "enforce" a lien until at least "30 days has expired after a demand for payment has been made and not been complied with." The Court concludes that MCG's lien for its contingency fee cannot be enforced at this time because it has not demanded payment of its contingency fee from VO and waited the statutory period prior to initiating enforcement proceedings.

Judgment directly from Heartwise. [Dkt. 656-3, PageID.35749.] For the reasons articulated above, the Court finds that the Letter does not give MCG the right to collect payment of the Judgment directly from Heartwise. Consequently, the Court denies MCG's request that Claim 5 be found valid. The Court has determined above that VO's Claim 3 is entitled to be paid.

## CONCLUSION

Based on the foregoing reasoning, the Court hereby rules as follows:

- VO's Motion to Collect Judgment [ECF No. 656] is GRANTED;

- MCG's Cross-Motion to Confirm Entitlement to Receive Settlement Funds from the Bankruptcy Court [ECF No. 671] is DENIED;

- VO has the exclusive right to collect the Judgment directly from Heartwise;

- VO's Claim 3 is allowed under bankruptcy law, and VO has been entitled to payment of Claim 3 in the amount of $14.5 million since January 3, 2022.
  DATED this 30th day of September 2024.

BY THE COURT:

DALE A KIMBALL
United States District Judge