Chad E. Nydegger, (#9964)
Email: cnydegger@wnlaw.com
WORKMAN │ NYDEGGER
60 East South Temple, Suite 1000
Salt Lake City, UT 84111
Telephone: (801) 533-9800
Facsimile: (801) 328-1707

*Attorney for Vitamins Online, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| VITAMINS ONLINE, INC., a Delaware corporation, | Civil Action No. 2:13-cv-00982-DAK |
| Plaintiff, | |
| v. | **VITAMINS ONLINE, INC.'S OMNIBUS OPPOSITION TO OPENING MEMORANDA RE REGISTRY FUNDS FILED BY HEARTWISE [DKT. 824], MCG [DKT. 830], AND PRAVATI [DKT. 832]** |
| HEARTWISE, INC. an Oregon corporation d/b/a NATUREWISE, | |
| Defendant. | Judge Dale A. Kimball<br>Magistrate Judge Jared C. Bennett |
| | Demand for Jury Trial |
| MAGLEBY CATAXINOS P.C., a Utah professional corporation; PRAVATI CAPITAL, LLC., a Delaware limited liability company; PRAVATI CREDIT FUND III, LP., a Delaware limited partnership; PRAVATI INVESTMENT FUND IV, LP., a Delaware limited partnership; and WORKMAN NYDEGGER P.C., a Utah professional corporation,<br>*Intervenors.* | |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    **INTRODUCTION**.................................................................1

II.    **ALL CLAIMAINTS CLAIMS SHOULD BE DISMISSED** .....................2

    A.    **This Court Lacks Original Jurisdiction to Revisit Claimants' Claims Previously Decided in VO's Favor and Currently on Appeal** .........................3

        1.    **This Court has denied Claimants' claims and ruled that VO has the exclusive right to the Registry Funds** ................3

        2.    **MCG has appealed this Court's orders denying Claimants' claims and holding that VO holds the exclusive right to collect the Registry Funds** ................4

        3.    **MCG's appeal divested this Court of original jurisdiction over the claims and issues decided in the Appealed Orders** .........................4

        4.    **The Vacatur Order did not cure this Court's lack of jurisdiction** ................5

        5.    **This Court lacks original jurisdiction over MCG's claims currently on appeal** ................7

    B.    **Law of the Case Doctrine and Waiver Claimants from Relitigating Their Claims to the Registry Funds** ................8

        1.    **Heartwise's and Pravati's failure to Appeal Constitutes Waiver** ................9

            a)    **Heartwise's claim concerning liquidation of attorneys' fees was previously rejected and is now waived** ................10

        2.    **Pravati's claims to the Registry Funds were previously rejected and are now waived** ................10

        3.    **All Claimants' claims not previously raised are waived or forfeited** ................11

III.    **ALTERNATIVELY, THE COURT SHOULD GRANT RELIEF UNDER RULE 56(D)** ................12

    A.    **VO's Counterclaims Against MCG and Defenses to MCG's Contingency Fee Claim Require Full Factual Development** ................13

IV.    THE BANKRUPTCY COURT'S REPORT ...................................................16

    A.    The Bankruptcy Court's Report Suffers from Fundamental Procedural Failures ............................................................17

    B.    The Bankruptcy Court Lacked Power and Authority to Issue the Report..................................................................18

    C.    The Bankruptcy Court's Report Is Internally Conflicting and Unenforceable.........................................................19

    D.    Claimants' Claims Violate Federal Bankruptcy Procedure and Were Filed in a Closed Case.........................................21

    E.    The Deadline for Filing Claims Has Long Passed and Claimants Lack Standing ..................................................22

    F.    Additional Jurisdictional Defects ...................................................24

V.    CONCLUSION ...................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                                      **<u>Page(s)</u>**

*Bowles v. Russell*,
   551 U.S. 205, 127 S. Ct. 2360, 168 L. Ed. 2d 96 (2007)......................................................9, 11

*Coinbase v. Bielski*,
   599 U.S. 736 (2023).................................................................................................................4

*In re Comcoach Corp.*,
   698 F.2d 571 (2d Cir. 1983)...................................................................................................23

*Dressen v. AstraZeneca AB*,
   No. 2:24-CV-00337-RJS-CMR, 2025 WL 252793 (D. Utah Jan. 21, 2025) ...........................4

*Full Life Hospice, LLC v. Sebelius*,
   709 F.3d 1012 (10th Cir. 2013) ..............................................................................................3

*Griggs v. Provident Consumer Disc. Co.*,
   459 U.S. 56 (1982)..................................................................................................................4

*Hamer v. Neighborhood Hous. Servs. of Chi.*,
   138 S. Ct. 13 (2017)..............................................................................................................11

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).........................................................3

*Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*,
   677 F.3d 869 (9th Cir. 2012) ................................................................................................22

*Servants of Paraclete v. Does*,
   204 F.3d 1005 (10th Cir. 2000) ............................................................................................11

*Stewart v. Donges*,
   915 F.2d 572 (10th Cir. 1990) ............................................................................................5, 6

*Vitamins Online, Inc. v. Heartwise, Inc.*,
   71 F.4th 1222 (10th Cir. 2023) ............................................................................................10

*Yakus v. United States*,
   321 U.S. 414 (1944)..............................................................................................................11

**Statutes**

11 U.S.C. § 105.............................................................................................................................18

11 U.S.C. § 502.............................................................................................................................14

28 U.S.C. 157(c) ................................................................................................................18

28 U.S.C. § 1334(c)(1) .......................................................................................................21

Federal Rule of Bankruptcy Procedure 3007 .....................................................................21

Federal Rule of Bankruptcy Procedure 7003 .....................................................................22

Fed. Rule of Civ. P. 7, 8, and 24 ...............................................................................14, 15

Fed. Rule of Civ. P.  56(d) ...............................................................................12, 16, 24

Fed. Rule of Civ. P.  56(d)(1) .............................................................................................15

Fed. Rule of Civ. P. 56(d)(2) .............................................................................................15

Fed. Rule of Civ. P. 56(d)(3) .............................................................................................15

Utah Code Ann. § 38-2-7(4)(b) ...........................................................................................7

Utah Code § 38-2-7 ...........................................................................................................14

Vitamins Online, Inc. ("VO") respectfully submits this opposition to the opening claims briefs filed by Heartwise, Inc. ("Heartwise"), Pravati Capital, LLC, *et. al.* ("Pravati"), and Magleby Cataxinos & Greenwood P.C. ("MCG") (collectively, "Claimants") concerning the funds placed into the registry of the Central District Court of California Bankruptcy Court ("Bankruptcy Court") by Heartwise.

## II.    INTRODUCTION

Claimants' claims briefs represent another attempt to relitigate issues this Court has already decisively resolved in VO's favor. To the extent Claimants advance arguments they previously raised, those arguments were rejected by this Court in the *Memorandum Decision and Order Granting Vitamins Online, Inc.'s Motion to Collect the Judgment and Denying Intervenor Magleby Cataxinos & Greenwood P.C.'s Cross-motion to Confirm Entitlement to Receive Settlement Funds from the Bankruptcy Court* [Dkt. 706] ("Collection Order"), *Order Granting Vitamins Online, Inc.'s Emergency Motion for Additional Finding re: Orders Entered at Dkt. Nos. 705 and 706* [Dkt. 711] ("Clarifying Order"), *Memorandum Decision and Order Denying MCG's Motion for Reconsideration and Denying as Moot MCG's Motion to Stay and Motion to Expedite* [Dkt. 728] ("MCG Reconsideration Order"), and *Order Denying Pravati Capital's Motion for Reconsideration* [Dkt. 774] ("Pravati Reconsideration Order"). To the extent Claimants advance arguments they failed to raise in those earlier proceedings, those arguments have been waived or forfeited.

First, MCG has appealed the Collection, Clarifying, and MCG Reconsideration Orders to the Tenth Circuit. [*See* Dkt. 746.] Consequently, this Court lacks original jurisdiction to revisit those issues and MCG's relief lies solely with the Tenth Circuit. Heartwise and Pravati chose not to appeal those orders. Consequently, Heartwise and Pravati are now bound by this Court's prior rulings and have forfeited any right to challenge them. Because this Court's prior rulings are on

appeal, this Court lacks original jurisdiction to revisit those issues and the Claimants' claims must be dismissed.

Second, this Court separately ruled Pravati has no right to collect any Registry Funds in the Pravati Reconsideration Order. The Pravati Reconsideration Order has neither been vacated nor appealed. Thus, the Pravati Reconsideration Order holding that Pravati has no rights to the Registry Funds is law of the case and Pravati's claims must be dismissed.

Third, the Bankruptcy Court's Report is fundamentally flawed as it was entered without jurisdiction and in violation of numerous procedural requirements. Consequently, the Report is ineffectual and this Court should decline to give it credence.

In view of the foregoing and as expounded below, this Court should dismiss the claims of each Claimant as a frivolous attempt to circumvent the law and rules of procedure to vexatiously relitigate rejected, waived, and/or forfeited issues.

## III.    ALL CLAIMAINTS CLAIMS SHOULD BE DISMISSED

The Bankruptcy Court's Report acknowledges VO's position that this Court conclusively decided all claims against Heartwise's bankruptcy estate (and hence the right to collect the Registry Funds from Heartwise's bankruptcy estate) in favor of VO. [*See id.*, p. 2 of 16 at n.2 (citing this Court's orders in VO's favor), pp. 3 through 6 of 16 (identifying the claims of MCG, Pravati, Workman Nydegger, Hahn & Hahn, and von Briesen Roper as claims for payment "from VOL").] But the Bankruptcy Court only has jurisdiction to determine (either itself or by referral to another court) claims against the debtor Heartwise. Nowhere has any party or any court articulated a jurisdictional ground for the Bankruptcy Court to entertain claims (either directly or by referral to this Court) of claims against VO, a ***creditor*** in Heartwise's bankruptcy case. No adversary proceeding was ever filed against VO. None of Pravati, Workman Nydegger, Hahn & Hahn, and von Briesen Roper ever filed a proof of claim against Heartwise. Nevertheless, the Bankruptcy

Court issued the Report to send the claims of seven parties to this Court. As explained below, all claims to the Registry Funds have been decided in VO's favor and this Court lacks jurisdiction to revisit those rulings.

### A.    This Court Lacks Original Jurisdiction to Revisit Claimants' Claims Previously Decided in VO's Favor and Currently on Appeal

As a preliminary matter, this Court **must** initially **presume** that each and every claim in the Report and raised by Claimants lies outside this Court's jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (a federal court must "presume[] that a cause lies outside [its] limited jurisdiction….and the burden of establishing the contrary rests upon the party asserting jurisdiction." (internal citations omitted)); *accord Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013) ("[B]ecause the jurisdiction of federal courts is limited, there is a presumption against our jurisdiction, and the party invoking federal jurisdiction bears the burden of proof." (quoting *Marcus v. Kan. Dep't of Revenue*, 170 F.3d 1305, 1309 (10th Cir. 1999))).

### 1.    This Court has denied Claimants' claims and ruled that VO has the exclusive right to the Registry Funds

This Court's Collection Order comprehensively addressed and rejected each Claimant's rights to the Registry Funds. The Court ruled unequivocally that:

- "VO has the exclusive right to collect the Judgment directly from Heartwise;" [Dkt. 706, PageID.38783]

- "VO's Claim 3 is allowed under bankruptcy law, and VO has been entitled to payment of Claim 3 in the amount of $14.5 million since January 3, 2022[;]" [*id.*]

- MCG currently has no contingency fee due from VO because it is "undisputed that VO has not recovered monies from Heartwise" and therefore "MCG has no attorney's lien on an amount not yet due[;]" [*id.* at PageID.38780] and

3

- Heartwise's argument that "Claim 3 was left unimpaired by the reorganization plan is fatal to its argument against immediate distribution of the monies in the Bankruptcy Court's registry to VO for Claim 3." [*Id.* at PageID.38773.]

The Clarifying Order further specified that "Pravati does not have the right to payment of $14.5 million from the Bankruptcy Court's registry." [Dkt. 711 at PageID.38830.] The MCG Reconsideration Order rejected MCG's attempts to relitigate these issues and confirmed VO's standing in this case. [Dkt. 728 at PageID.39218.] The Pravati Reconsideration Order similarly rejected Pravati's attempts to challenge the Court's prior rulings. [Dkt. 744 at PageID.41149.]

      **2.**      **MCG has appealed this Court's orders denying Claimants' claims and holding that VO holds the exclusive right to collect the Registry Funds**

MCG timely filed a notice of appeal of the Collection Order, Clarifying Order, and MCG Reconsideration Order (the "Appealed Orders") on October 30, 2024. [Dkt. 746.] Those orders are currently on appeal to the Tenth Circuit. Appellate briefing was completed on June 12, 2025. [*See* Exhibits 1 – 3.] However, Heartwise and Pravati chose not to appeal the Appealed Orders or any other orders of this Court.

      **3.**      **MCG's appeal divested this Court of original jurisdiction over the claims and issues decided in the Appealed Orders**

MCG's timely appeal of the Appealed Orders transferred jurisdiction over those rulings to the Tenth Circuit. As established precedent makes clear, "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982); *accord Dressen v. AstraZeneca AB*, No. 2:24-CV-00337-RJS-CMR, 2025 WL 252793, at *1 (D. Utah Jan. 21, 2025). The Supreme Court recently reaffirmed this principle in *Coinbase v. Bielski,* 599 U.S. 736, 740 (2023), emphasizing that "[a]n appeal, ***including an interlocutory appeal***, 'divests the district court of its control over

those aspects of the case involved in the appeal.'" (quoting *Griggs*, 459 U.S. at 58) (emphasis added). This jurisdictional divestiture is automatic and immediate upon filing the notice of appeal. The Tenth Circuit has explained that "[o]nce a notice of appeal on an appealable issue ... is filed, the status quo is that the district court has lost jurisdiction to proceed." *Stewart v. Donges*, 915 F.2d 572, 577-78 (10th Cir. 1990). The ***only*** way for this Court to regain jurisdiction after MCG filed its Notice of Appeal was for this Court to "take the affirmative step of certifying the appeal as frivolous or forfeited, and until that step is taken it simply lacks jurisdiction to proceed." *Id*. The Court has not made any such certification here and, consequently, lacks jurisdiction to proceed with Claimants' claims decided in the Appealed Orders.

Because the Appealed Orders address the rights of each Claimant to collect the Registry Funds—including this Court's rulings that Heartwise and Pravati have no rights to the Registry Funds—this Court currently lacks jurisdiction to modify or reconsider those determinations. The Court can enforce its orders but it cannot alter them while they remain under appellate review.

### 4.    The Vacatur Order did not cure this Court's lack of jurisdiction

In view of the Bankruptcy Court's refusal to give credence to and follow this Court's Appealed Orders, this Court entered its *Order Regarding Procedure Pertaining to Bankruptcy Court's Report* [Dkt. 793] ("Vacatur Order") purporting to vacate the Appealed Orders as "moot." [Dkt. 793 at PageID.41772 n.4.] However, because the Court lacked jurisdiction to vacate the Appealed Orders while on appeal to the Tenth Circuit, the Vacatur Order is a legal nullity and did not restore jurisdiction over those matters to this Court. Far from finding MCG's appeal frivolous, the Vacatur Order tacitly acknowledges that the Court found no error in the vacated orders, stating only that "events on the ground have overtaken this court's previous Orders in favor of Vitamins Online" and, consequently, that those orders had been "rendered moot." [*Id.* at PageID.41772.]

As noted above, the *only* way for this Court to regain jurisdiction over the Appealed Orders, including jurisdiction to vacate them, was to certify MCG's appeal as frivolous. *Stewart,* 915 F.2d at 577-78. The Court made no such findings here. And the Court cannot find MCG's appeal of this Court's rulings against it to be frivolous and simultaneously vacate the very orders that rejected MCG's arguments—such actions would be directly contradictory one to the other. Finding MCG's appeal to be frivolous would mean that the Court's holdings in the Appealed Orders *are correct* and MCG's challenge of those findings are "frivolous." But if the holdings in the Appealed Orders are correct, then it is not proper for the Court to vacate those to allow the claims decided in them to be relitigated.

Moreover, the Bankruptcy Court's refusal to honor this Court's orders does not render the Appealed Orders "moot"—it merely creates an interjurisdictional issue that has no effect on the validity of this Court's rulings. This Court cannot and should not allow an Article I court to effectively sit in review of this Article III court's decisions by refusing to implement them. The proper course is enforcement of this Court's valid orders, not capitulation to the Bankruptcy Court's jurisdictional interference. The Bankruptcy Court abstained from deciding the disputes concerning the Registry Funds and sent those disputes to this Court for determination. Having abstained, the Bankruptcy Court has relinquished its jurisdiction concerning those disputes and cannot effectively sit in a court of review when it does not like this Court's resolution of the disputes.

In view of the foregoing, the Vacatur Order constitutes a legal nullity entered without jurisdiction. As the Tenth Circuit has made clear, once an appeal is filed, "the district court has lost jurisdiction to proceed" unless it makes the required frivolous appeal certification. *Stewart,*

915 F.2d at 577-78. The Appealed Orders therefore remain in effect and outside this Court's jurisdiction whilst under Tenth Circuit review.

Because this Court lacks jurisdiction to proceed on Claimants' claims, VO is not required to defend against those claims and does not waive any of its rights to later contest those claims if and when this Court regains jurisdiction over those claims.

### 5. This Court lacks original jurisdiction over MCG's claims currently on appeal

MCG's claims brief arguing VO lacks standing [Dkt. 830 at p. 40], MCG has a contingency fee due from VO [*id.* at pp. 40-48], and that it has an attorney's lien against the Registry Funds [*id.* at pp. 48-55] were previously argued and rejected. This Court found that "no contingency fee is yet 'due' to MCG and MCG has no attorney's lien on an amount not yet due" because VO has not yet recovered any funds from Heartwise. [Dkt. 706 at PageID.38780.] In fact, the Utah attorney lien statute expressly prohibits attorneys from attempting to "enforce" any liens against a client's property until 30 days after the attorney has demanded payment of the amount due. Utah Code Ann. § 38-2-7(4)(b) ("An attorney may not move to intervene in an action or file a separate legal action to enforce a lien before 30 days has expired after a demand for payment has been made and not been complied with."). This Court has found that MCG's lien is unenforceable at this time— "as a matter of law," [Dkt. 706 at PageID.38780-81] and MCG has appealed that determination [Dkt. 746]. This Court also found that VO has standing in this case. [Dkt. 728 at PageID.39216-18 ("To the extent, however, that the court has not made clear that Vitamins Online has standing in this action, the court now explicitly finds that Vitamins Online has standing in this action.").]

MCG is ***currently*** arguing these very claims and issues in its appeal before the Tenth Circuit. [*See* Ex. 1 (MCG's opening appeal brief) at pp. 26-32 and Ex. 2 (MCG's reply appeal brief) at pp. 11-16 (MCG arguing that VO lacks standing);  Ex. 1 at pp. 38-45 and Ex. 2 at pp. 22-

29 (MCG arguing this Court made errors in applying the Utah attorney lien statute); Ex. 1 at pp. 33-37 and Ex. 2 at pp. 17-21 (MCG arguing this Court made errors in interpreting the engagement letter).] VO is *currently* defending this Court's decisions in the Tenth Circuit by arguing that MCG's arguments not only fail on the merits but also that they are *frivolous*. [*See* Ex. 3 at pp. 40-48 (VO's responsive brief defending this Court's decision on the issue of standing); *id.* at pp. 56-69 (VO defending this Court's decision in applying the Utah attorney lien statute); *id.* at pp. 5, 7, 30, 36, 51-53, and 59-66 (VO defending this Court's decision concerning interpretation of the engagement letter).] MCG's disputes concerning this Court's rulings will be resolved through the appellate process and are not subject to re-litigation before this Court in the claims brief proceedings.[1]

Further, this Court's recent rulings present additional reasons MCG's claims fail. This Court recently held that "the court declines to rule at this time that Heartwise has no rights or claim to the Registry Funds." [Dkt. 828 at PageID.42701.] Given that VO has not recovered any monies from Heartwise, and given the Court's current position that it has vacated the Collection Order and that Heartwise may have rights to the Registry Funds, it is impossible to calculate any "amount due" to MCG for its contingency fee. These holdings and positions taken by the Court provide additional reasons there is no contingency fee "due" and any "demand" for payment by MCG was premature and ineffective as any contingency fee cannot even be calculated at this time.

**B.    Law of the Case Doctrine and Waiver Claimants from Relitigating Their Claims to the Registry Funds**

---

[1] Because MCG's claims to the Registry Funds are not properly before this Court, its arguments concerning VO's "defenses" to those claims [Dkt. 830 at pp. 55-75] are likewise not properly before this Court for the same reasons.

The rulings in the Collection, Clarifying, MCG Reconsideration, and Pravati Reconsideration Orders constitute established law of the case that cannot be relitigated through the current claims brief procedure. Heartwise and Pravati each had a full and fair opportunity to present their arguments during the extensive briefing resulting in those orders. To the extent they raised arguments and lost on the merits, they cannot simply repackage the same rejected arguments to obtain a different result under the current claims brief procedure. To the extent they failed to raise arguments they could have raised during those proceedings, those arguments have been waived or forfeited. Litigation requires parties to timely present their best case and precludes parties from withholding arguments to raise in later proceedings in the event the arguments presented fail.

### 1.    Heartwise's and Pravati's failure to Appeal Constitutes Waiver

As the Supreme Court has emphasized, "[t]he taking of an appeal in a civil case within the time prescribed by statute is 'mandatory and jurisdictional.'" *Bowles v. Russell*, 551 U.S. 205, 205, 127 S. Ct. 2360, 2361, 168 L. Ed. 2d 96 (2007) (quoting *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 61, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982)). Heartwise and Pravati's failure to timely appeal constitutes an absolute waiver of any objections to this Court's rulings against them. They are now bound by those determinations and cannot collaterally attack them through the claims brief process. This principle of waiver applies regardless of whether they agree with the Court's rulings. If Heartwise and Pravati believed this Court erred in finding they had no rights to the Registry Funds, then their exclusive remedy was to timely appeal those disputes to be heard in connection with MCG's appeal of those orders. Having foregone that right, they must accept the consequences of their strategic decisions to forego appealing the Court's final determinations.

9

> **a)**    **Heartwise's claim concerning liquidation of attorneys' fees was previously rejected and is now waived**

Heartwise's claims that Registry Funds cannot be released until VO's attorney fees award is liquidated [*see* Dkt. 824 at PageID.42703-04] is a recycled version of the argument this Court specifically rejected in the Collection Order. [*See* Dkt. 106 at PageID.38771-73.] The Court rejected Heartwise's argument and held that the $14.5 million amount, including attorney fees, was established through Heartwise's own bankruptcy filings and confirmed by the Tenth Circuit's affirmance of the fee award. [*Id.* at PageID.38771-73, PageID.38783; Dkt. 656-22 at p. 7 of 14 (Heartwise's post-confirmation report stating general unsecured claims totaling "$14,949,800" were "allowed" and "paid"); *Vitamins Online, Inc. v. Heartwise, Inc.*, 71 F.4th 1222, 1230 (10th Cir. 2023) (affirming attorneys' fee award). Thus, this argument was previously argued and decided by this Court in the Collection Order now on appeal. Heartwise has waived its claim concerning liquidation of attorneys' fees by failing to appeal the Collection Order deciding that claim.

> **2.**    **Pravati's claims to the Registry Funds were previously rejected and are now waived**

Pravati's claims to the Registry Funds based on its funding agreements with VO [*see* Dkt. 832 at PageID.43689-93] and execution sale purchase [*see id.* at PageID.43685-89] were thoroughly litigated and definitively rejected. [Dkt. 705; Dkt. 711; Dkt. 774.] This Court's most recent ruling on Pravati's rights to the Registry Funds is the Pravati Reconsideration Order [Dkt. 774], which unequivocally denied Pravati's motion for reconsideration and reaffirmed that "Pravati does not have the right to payment of $14.5 million from the Bankruptcy Court's registry." [Dkt. 774at PageID.41149, citing Dkt. 711 at PageID.38830.] The Clarifying Order [Dkt. 711] is now on appeal, but Pravati chose not to appeal that order. Pravati's failure to appeal the adverse rulings against it—including the Collection Order, Clarifying Order, and Pravati Reconsideration

Order—constitutes an absolute waiver of any challenges to those determinations. As the Supreme Court has emphasized, "[t]he taking of an appeal in a civil case within the time prescribed by statute is 'mandatory and jurisdictional.'" *Bowles*, 551 U.S. at 205. Pravati cannot now collaterally attack through its claims brief what it failed to challenge through proper appellate procedures.

Additionally, the Pravati Reconsideration Order [Dkt. 774] is the law of the case concerning Pravati's rights to the Registry Funds. Pravati's current claims brief constitutes an improper second motion for reconsideration, seeking to relitigate its alleged rights to the Registry Funds that this Court has now considered and ruled on multiple times. Federal courts have virtually unfettered discretion to deny motions for reconsideration, and second motions seeking reconsideration of decided claims are particularly disfavored. *See Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

### 3. All Claimants' claims not previously raised are waived or forfeited

"No procedural principle is more familiar to this Court than that a right may be forfeited in criminal as well as in civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." *Yakus v. United States*, 321 U.S. 414, 444 (1944) (citations omitted). To the extent that any Claimant raises new claims or arguments asserting rights to the Registry Funds, those claims and arguments are waived.

> "[F]orfeiture is the failure to make the timely assertion of a right [;] waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)).

*Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 n.1 (2017). Given the extensive litigation by the parties concerning rights to the Registry Funds, it would be prejudicial and unfair to VO to permit Claimants to bring new claims and/or make new arguments concerning rights to the Registry Funds after the Court ruled against them. Additionally, it would be a waste of judicial

resources to allow those parties to engage in such piecemeal litigation. Thus, any claims and arguments not previously presented to the Court concerning rights to the Registry Funds should be dismissed as waived or forfeited.

## IV.    ALTERNATIVELY, THE COURT SHOULD GRANT RELIEF UNDER RULE 56(D)

If the Court determines to address the amount of MCG's alleged contingency fee (despite VO having not recovered any monies from Heartwise as required to trigger entitlement to a contingency fee under the engagement agreement), VO requests the Court defer deciding that claim under Federal Rule of Civil Procedure 56(d). Rule 56(d) provides that when "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." VO cannot present the facts essential to justify its opposition to MCG's claim for a contingency fee in the current procedural posture for multiple compelling reasons.

The Court should defer considering MCG's motion until VO can present all relevant facts and evidence to oppose that motion. VO cannot present all the facts and evidence in opposition to MCG's claims brief for two reasons. First, VO lacks essential evidence to oppose MCG's claim for a contingency fee because VO has not been provided an opportunity to conduct discovery on its numerous counterclaims and defenses. Second, VO cannot present its facts and evidence in opposition to MCG's opposition in the current procedural process without waiving its attorney-client privilege, which VO is unwilling to do in this case where VO continues to litigate its claims for punitive damages and injunctive relief against defendant Heartwise.[2]

---

[2] MCG has already disclosed numerous privileged communications in violation of VO's rights and without first seeking VO's consent to such disclosure. VO informed MCG that VO was not waiving any attorney-client privilege and instructed it to not disclose any privileged

### A.    VO's Counterclaims Against MCG and Defenses to MCG's Contingency Fee Claim Require Full Factual Development

VO has the following claims against MCG that directly impact any assessment of MCG's

alleged entitlement to contingency fees:

- **Fraud, Fraud in the Inducement, and Breach of Fiduciary Duty** - VO has a claim that MCG used fraud to induce VO to enter the engagement agreement. Specifically, MCG misrepresented information concerning Heartwise's damages expert's report to VO to induce VO to accept a lower "extraordinary result" threshold. During the negotiations the expert report was designated "Attorney Eyes Only" so VO was required to rely on MCG's representations of the content of the report and was unable to independently verify MCG's characterizations of the report. As MCG represented VO during the period of negotiating the extraordinary result threshold, MCG's misrepresentation of Heartwise's damages expert's report for its own gain also violated MCG's fiduciary duties to VO. VO needs to discover documents and testimony on the issue of MCG's review and understanding of Heartwise's damages expert's report and the reasons for MCG's representations and characterizations of that report to VO to be able to present these claims and defenses.

- **Breach of Contract** - VO has a claim that MCG materially breached its engagement agreement with VO. Specifically, MCG breached the engagement agreement by failing to provide the legal services it contracted to provide. As one example, MCG failed to timely prepare the Findings of Fact and Conclusions of Law following the bench trial in this case. Consequently, VO personnel were required to draft sections of that document and VO was required to enlist additional counsel at the eleventh hour to draft sections of that document so that it could be timely filed. Additionally, MCG breached the engagement agreement by filing disputes against VO outside of Utah. Specifically, MCG violated the express contractual provisions requiring all disputes to be resolved in Utah courts by filing claims and objections in the Bankruptcy Court for strategic advantage. VO needs to discover documents and testimony concerning MCG's failure to timely prepare the Findings of Fact and Conclusions of Law, MCG's litigation strategy documents for filing claims against VO outside Utah courts, communications regarding venue selection, and evidence of MCG's intentional breach of the engagement agreement for tactical purposes to be able to present these claims and defenses.

- **Breach of Fiduciary Duty** - VO has a claim that MCG breached its fiduciary duties to VO by litigating against VO, undermining VO's positions and credibility before the Bankruptcy Court and this Court, and working hand-in-hand with Heartwise in Heartwise's bankruptcy case to defeat VO's bankruptcy Claim 3. MCG also

---

communications. MCG blatantly disregarded VO's rights and instructions and has filed numerous privileged communications in violation of MCG's ethical and fiduciary obligations to VO.

attempted to supplant VO and negotiate settlement of VO's claims against Heartwise directly and for additional compensation to be paid to MCG by Heartwise for doing so. VO needs to discover documents and testimony concerning MCG's communications with Heartwise after VO terminated MCG as its counsel to be able to present these claims and defenses.

- **Tortious Interference and Breach of Fiduciary Duty** - VO has a claim that MCG has tortiously interfered with VO's legal rights and business relationship with Pravati. Specifically, during the bankruptcy proceedings MCG intentionally and tortiously interfered with VO's relationship with Pravati, as evidenced by Pravati's letter to MCG to cease and desist its interference. [*See* Dkt. 706 at PageID.38779.] Additionally, MCG has consistently and continuously made arguments against VO on behalf of Pravati to undermine and supplant VO's legal rights and has made representations to Pravati concerning VO's claims for the improper purpose of convincing Pravati to put pressure on VO to relinquish its claims with MCG and Heartwise. VO needs to discover documents and testimony concerning MCG's communications with Pravati to be able to present these claims and defenses.

- **Legal Malpractice -** VO has a claim against MCG for legal malpractice. Specifically, in the case against Heartwise before this Court MCG committed legal malpractice regarding the prejudgment and post-judgment interest rates MCG moved for as they were far below the available rates and resulted in VO losing out on significant interest on its judgment. VO needs to discover documents and testimony concerning the interest rates MCG requested and its reasons for requesting those interest rates to be able to present these claims and defenses.

- **Abuse of Process** - VO has a claim that MCG has systematically abused legal processes to avoid accountability, eliminate VO's procedural protections, and for the improper purposes of delay and increasing VO's litigation expenses to create financial pressure for it to release its claims against MCG. Specifically, MCG has attempted to circumvent VO's rights under 11 U.S.C. § 502, FRBP 3007, and 7000 *et. seq.* (which prohibited MCG from seeking affirmative relief against VO in summary proceedings in the Bankruptcy Court), VO's constitutional right to a jury trial (which MCG has attempted to circumvent here by asking this Court to bypass the procedural protections of FRCP 7, 8, and 24 governing pleading requirements and proceed straight to a bench trial), VO's rights under Utah Code § 38-2-7 that do not permit MCG to enforce a lien until an amount has been due for at least 30 days and the client does not pay, for the improper purpose of delaying resolution of VO's claims against Heartwise, delaying payment of the Registry Funds to VO, and in furtherance of a vexatious litigation strategy to deplete VO's assets to force it to either settle its claims against MCG or to file bankruptcy. VO needs to discover MCG's strategic litigation decisions, communications regarding procedural manipulation, and comprehensive analysis of MCG's pattern of process abuse across multiple proceedings.

The calculation of MCG's entitlement to a contingency fee depends on resolution of these complex disputes, which require compliant pleadings, extensive discovery, and involve facts to be determined by a jury—none of which can be accomplished through the current summary procedure.

The evidence to prove these complex claims and defenses largely resides in MCG's possession and for which VO has not been afforded an opportunity to discover. The current summary claims brief process cannot adequately address these multi-faceted attorney-client relationship disputes. Additionally, it would be improper and prejudicial to VO to require VO to litigate these disputes and the relevant evidence in this forum where Heartwise will have full, unfettered access to all production discovery and filings.

In view of the foregoing, VO submits that the Court should defer any determination of MCG's contingency fee under Rule 56(d)(2) until VO has been afforded a full and fair opportunity to discover evidence related to its claims and defenses against MCG. Additionally, VO submits that the Court should enter an order under Rule 56(d)(3) bifurcating MCG's claims such that they may be litigated outside the presence of Heartwise. Alternatively, the Court should defer considering MCG's arguments under Rule 56(d)(1) until **all** other issues in this case are resolved such that disclosure of VO's privileged information will not prejudice VO in relation to its claims against Heartwise or other parties. Bifurcation and/or deferring MCG's claims brief would allow for compliance with the pleading requirements under Rules 7, 8, and Rule 24, establishment of proper jurisdictional bases, and full development of the factual record necessary to fairly and fully adjudicate the complex attorney-client relationship disputes between VO and MCG.

In tacit recognition of its frail claims and arguments, MCG has repeatedly attempted to thwart adjudication of its disputes against VO through proper procedures by vexatiously

circumventing the procedural protections assuring a fair adjudication by seeking to eliminate VO's rights through its filings in the Bankruptcy Court and in the current claims brief process, which itself constitutes additional evidence of MCG's abuse of process. As MCG is aware, VO simply cannot present a complete opposition to MCG's claims brief within the constraints of the current procedural framework, particularly with no opportunity to conduct discovery and when doing so would require waiving privileged communications and work product that will prejudice VO's ongoing litigation against Heartwise.

VO's requests under Rule 56(d) are supported by the declaration attached as Exhibit 4.

## V.    THE BANKRUPTCY COURT'S REPORT

As a preliminary matter, VO *agrees* with this Court's position that this Court does not have the jurisdiction or authority to *order* the Bankruptcy Court to take any specific action. It was precisely for this reason that VO did not seek such an inappropriate order via its Motion to Collect the Judgment. VO understood and respected the jurisdictional boundaries and sought only an appropriate determination of its rights to the Registry Funds in this Court, which is precisely what the Collection Order did—it simply stated that VO's Claim 3 is allowed and that VO has the exclusive right to collect the Registry Funds; it did not order the Bankruptcy Court to release the funds.

However, when VO presented this Court's decision to the Bankruptcy Court and sought release of the Registry Funds, the Bankruptcy Court stated that this Court's decision "does not explicitly state" what the Bankruptcy Court was supposed to do with the Registry Funds. [*See* Dkt. 733-8 at p. 47, ll.17-20 (Bankruptcy Court stating "And quite frankly, if you look at the memorandum decision from the [Utah] District Court it does not explicitly state whether I was to release the 14.5 million, now $16 million.").] In the Bankruptcy Court's view, this Court must "explicitly state" whether, and when, and to whom the Registry Funds should be released. In other

words, the Bankruptcy Court wants this Court to "explicitly state" what the Bankruptcy Court must do. Neither this Court nor VO agree with the Bankruptcy Court's extra-jurisdictional ask.

At this time, however, the reality is that the Bankruptcy Court has sent the Report to this Court without citing any authority for such an unprecedented action. It did this *sua sponte* at the October 16, 2024, hearing without any party requesting or justifying such relief, but claiming—***post hoc***— that it did so because this Court had apparently "approved" that procedure. Because the Court is currently addressing the claims sent to it via the Report, the Court must also consider the validity, legal effect, and jurisdictional boundaries that pertain to the Report because addressing the Report raises fundamental questions concerning judicial power and constitutional authority. The Bankruptcy Court issued its unconventional Report in a closed case in an unprecedented manner, raising serious constitutional, procedural, and jurisdictional concerns. VO—the plaintiff in this case but a defendant on numerous claims addressed in the Report—presents below its arguments to preserve its contention that the Report lacks legal validity and effect should it be necessary to raise these issues on appeal.

### A.    The Bankruptcy Court's Report Suffers from Fundamental Procedural Failures

The Bankruptcy Court's Report suffers from several fundamental defects that render it legally meaningless. The Bankruptcy Court has stated that the claims of all seven parties that filed claims briefs in the Bankruptcy Court must be determined "before the Registry Funds can be distributed to any party." [Dkt. 764-8 at p. 2 of 16, ll. 12-14.] Although the Bankruptcy Court purported to refer the claims of all seven parties to this Court for determination [*see generally, id.*], two of those parties—Hahn & Hahn and von Briesen & Roper—refused to even appear before this Court or participate in the proceedings they supposedly initiated through their claims briefs. [*See* Dkt. 803-3 at PageID.41951 (Hahn & Hahn stating, "H&H has not appeared in [this] case, does

not intend to appear in the [this] case, and respectfully submits this Court lacks jurisdiction to decide its claims against VO raised in the H&H Claims Brief."); Dkt. 803-2 at PageID.41947 (von Briesen Roper stating "VBR has not appeared, and has no current intent to appear, in [this] case.").]

The absence of these parties before this Court, combined with their statements that this Court lacks jurisdiction over them and their claims, demonstrates the meaningless nature of the claims brief process. This Court cannot adjudicate the disputes of Hahn & Hahn and von Briesen Roper as directed in the Report when they refuse to prosecute their claims and this Court lacks jurisdiction to rule on them *in absentia*.

Furthermore, even Workman Nydegger, which did file a claims brief, actually supports VO's position by stating that "all the Registry Funds should be paid to VO pursuant to [this Court's] holding that VO's Claim 3 is allowed and payable since January 3, 2022." [Dkt. 764-2 at p. 4 of 4.] This acknowledgment from one of VO's own creditors confirms that the proper course is immediate release of the Registry Funds to VO after which any creditor of VO may pursue its claims through appropriate legal channels that have jurisdiction to decide them through proper procedures and proceedings.

### B.    The Bankruptcy Court Lacked Power and Authority to Issue the Report

The Bankruptcy Court lacked the requisite power and authority to issue the Report *sua sponte*. Under 11 U.S.C. § 105 ("Power of Court"), a bankruptcy court's power to act *sua sponte* is expressly limited to statutes under Title 11. However, the authority to send a report to a district judge is governed by 28 U.S.C. 157(c), not part of Title 11, and the appropriate procedure is then governed by parties' "consent," not the Bankruptcy Court's unilateral decision. Because no party sought an order or report summarizing their claims and at least VO refused to consent to the Bankruptcy Court exercising any jurisdiction of claims against it, the Bankruptcy Court was

prohibited from *sua sponte* issuing a novel Report to send claims against VO to a district judge in another district for determination.

The Bankruptcy Court cited no authority whatsoever for its unprecedented actions, much less to declare that its determinations are entirely free from appellate review. [*See* Dkt. 764-8 at p. 16 of 16 ("To be clear, the [Bankruptcy] Court also appreciates that these remaining issues may be subject to any appeals, which will be addressed by the appropriate appellate court within the Circuit of the District Court – Utah, and not by this Court or its Circuit.").] This assertion is particularly problematic because it seeks to preclude review of *its* decisions as the Utah Court and the Tenth Circuit lack authority over the Bankruptcy Court. The Report thus represents an *ultra vires* act by a court exceeding its constitutional, jurisdictional, and legislative boundaries while improperly attempting to insulate its determinations from appellate scrutiny.

### C.    The Bankruptcy Court's Report Is Internally Conflicting and Unenforceable

The Bankruptcy Court's Report is internally conflicting and, therefore, unenforceable. For example, the Report states, on the one hand, that this Court "shall determine the scope of the issues" [Dkt. 764-8 at p. 2 of 16, ll. 2-4] identified in the Report needing determination suggesting this Court has discretionary authority to define which matters require adjudication.  On the other hand, the Report indicates that *all* of the referred claims must be fully adjudicated by this Court. [*Id.* at p. 2 of 16, ll. 12-14.] This contradiction renders the Report meaningless as guidance for judicial action because it is unclear whether this Court can refuse to decide *all* the referred claims (such as those by Hahn & Hahn and von Briesen Roper who have not appeared), or must decide them all.

More fundamentally, the Report implies this Court will make final, binding decisions on the referred claims, but the Bankruptcy Court's own action demonstrates it believes it reserved the power to simply ignore any decisions of this Court as it chooses. For example, this Court's orders

were unambiguous that Pravati "does not have the right to payment" from the Registry Funds [Dkt. 711, PageID.38830]—language as clear as could possibly be drafted. Yet the Bankruptcy Court has sent Pravati's claims to the Registry Funds back to this Court nonetheless. [Dkt. 764-8 at p. 4 of 16, ll. 5-16, and pp. 13 to 15 of 16.] In a similar vein, the Bankruptcy Court ignored this Court's holding that MCG currently has no contingency fee due and no attorney's lien [*see* Dkt. 706, PageID.38780] and referred MCG's claim for a contingency fee and attorney's lien back to this Court [Dkt. 764-8 at p. 3 of 16, ll. 5-19, and pp. 9 to 12 of 16]. This Court denied MCG's motion for reconsideration as well as MCG's motion for stay after thoroughly considering and rejecting MCG's arguments. [Dkt. 706; Dkt. 728.]

Despite the Report stating that this Court shall have the final authority to determine the Claimants' claims, the Bankruptcy Court's actions point in a different direction wherein it nevertheless sent numerous MCG arguments to this Court for re-adjudication, despite MCG having failed on those very issues and having its reconsideration motion denied. The Bankruptcy Court's implicit logic appears to be that no matter what this Court decides, the Bankruptcy Court believes it can nullify this Court's rulings if it chooses to do so. This Court has refused to stay its orders [Dkt. 728], yet the Bankruptcy Court has effectively imposed exactly such a stay by refusing to release the Registry Funds based on disappointed parties' objections. The Report thus creates an unworkable framework where this Court is tasked with making "final" decisions that the Bankruptcy Court will ignore whenever it disagrees with those decisions.

The Bankruptcy Court's claimed "abstention" is contradicted by its actual substantive decision-making. The Bankruptcy Court states that it has "abstained," meaning another court (specifically this Court) must make the ultimate decision regarding Claims 3 and 5. However, as this Court clearly observed during the March 24, 2025, hearing, the Bankruptcy Court has made

abundantly clear that it will "not" issue any payment to VO regardless of what this Court decides. [March 24, 2025, Hearing Transcript at p. 8, ll. 16-20 (the Court stating, "Even though I am an Article III Judge, the bankruptcy judge is a bankruptcy judge and he is in a different circuit, not even in this circuit, and he has the money. So what am I supposed to do in your view?").] The Bankruptcy Court's decision to not release the Registry Funds despite this Court's prior orders demonstrates that it has not abstained at all—it has actually made the ultimate substantive decision that controls the outcome. Had the Bankruptcy Court clearly stated this as its final ruling, VO could have appealed that order, arguing that the Bankruptcy Court erred and exceeded its jurisdiction in disregarding the Collection Order, the Judgment, and the mandate of the Tenth Circuit affirming the Judgment. However, the Bankruptcy Court "abstained" under 28 U.S.C. § 1334(c)(1) (which is not appealable), and attempts to have it both ways: claiming abstention (not subject to appellate review) while substantively deciding VO does ***not*** have the "exclusive" right to payment against Heartwise as this Court held. This contradiction renders the abstention legally meaningless, as true abstention requires the referring court to accept and implement whatever decision the receiving court (i.e., this Court) makes, not to predetermine the outcome while masquerading as not having made a decision and abstaining in favor of another court.

**D.    Claimants' Claims Violate Federal Bankruptcy Procedure and Were Filed in a Closed Case**

The Claimants' attempts to assert claims against VO through objections to VO's bankruptcy Claim 3 violate Federal Rule of Bankruptcy Procedure 3007, which governs objections to claims. Rule 3007 does not permit parties to bring claims against creditors under the guise of objecting to a creditor's proof of claim. The proper procedure for asserting claims against a creditor is to file a separate adversary proceeding or a proof of claim directly against the debtor, not to hijack the claim objection process by objecting to the creditor's proof claim.

VO raised this procedural violation to the Bankruptcy Court, which responded by abstaining and referring these disputes to this Court rather than ruling on the dispositive issue pertaining to a rule of bankruptcy procedure. Therefore, this Court will have to address and resolve the procedural dispute first. The Bankruptcy Court's failure to address this fundamental procedural defect does not cure it, nor does the referral to this Court confer jurisdiction over claims that were improperly raised in the first instance.

More fundamentally, Claimants filed their claims briefs in a closed bankruptcy case without moving to reopen that case. Federal bankruptcy procedure requires that any adversary proceeding in a closed bankruptcy case must first be preceded by a motion to reopen the case. Claimants failed to take this required step. Moreover, if the parties sought to file adversary proceedings against VO in the Bankruptcy Court, they were required to file proper summons and complaints under Federal Rule of Bankruptcy Procedure 7003, which they failed to do.

The Bankruptcy Court's Referral Order was therefore entered in a closed case without proper procedural predicate, rendering it a legal nullity. This Court cannot address or give effect to an order that was entered without jurisdiction in a closed bankruptcy proceeding.

### E.    The Deadline for Filing Claims Has Long Passed and Claimants Lack Standing

More fundamentally, any party seeking payment from Heartwise's bankruptcy estate was required to file a proof of claim by the bar date, which expired in March 2021—almost four years ago. The Claimants' current attempts to assert rights to the Registry Funds are time-barred attempts to circumvent this mandatory deadline.

To have standing in bankruptcy court, a party "must meet the statutory 'party in interest' requirements under § 1109(b) of the bankruptcy code." *Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869, 884 (9th Cir. 2012). Federal courts

have consistently held that parties without direct claims against the debtor lack standing in bankruptcy proceedings. The law is clear that even a "judgment creditor of a creditor of the bankrupt was not a 'party in interest' because the judgment creditor was not itself a direct creditor of the bankrupt." *In re Comcoach Corp.*, 698 F.2d 571, 574 (2d Cir. 1983).

This principle applies directly here. MCG, Pravati, and the various law firms assert claims against VO (a creditor in the bankruptcy case), not against debtor Heartwise. Under established precedent, they lack standing to participate in bankruptcy proceedings concerning Heartwise's estate. Consequently, their claims against VO must be pursued in appropriate forums with jurisdiction over such creditor-versus-creditor disputes and the Bankruptcy Court has no jurisdiction over those claims (or grounds to withhold payment of Heartwise's estate to VO based on those claims against VO).

Notably, Pravati never filed any proof of claim against the bankruptcy estate, despite now asserting rights to directly collect the Registry Funds paid by that estate. The Bankruptcy Court initially mistook Pravati as having filed a proof of claim and characterized Pravati's claims as "core" proceedings. [Dkt. 733-8, PageID.39469, ll. 4-14.]  However, once the Bankruptcy Court discovered that Pravati had not filed any proof of claim, it immediately withdrew its "guarantee" about the core nature of Pravati's claims, acknowledging they were "non-core" claims. [*Id.* at ll. 15-19.]

This core versus non-core distinction is legally significant because it determines which court has authority to enter orders against VO, a creditor in Heartwise's bankruptcy case, and which appellate court would review such orders. The Bankruptcy Court's acknowledgment that Pravati's claims are non-core confirms that court's lack of authority to adjudicate claims against VO and the impropriety of its referring such claims to this Court.

### F.      Additional Jurisdictional Defects

Beyond the substantive defects in Claimants' arguments, the entire claims brief process suffers from fundamental jurisdictional problems. The claims asserted by MCG, Pravati, and the various law firms are claims against VO as a creditor, not against debtor Heartwise. The Bankruptcy Court lacks jurisdiction over such claims, and its purported referral of those claims to this Court cannot confer jurisdiction this Court otherwise lacks.

Moreover, parties like Hahn & Hahn and von Briesen & Roper have never appeared in this case and cannot invoke this Court's jurisdiction through bankruptcy court referrals. The proper course is for each party to pursue any claims against VO in courts of competent jurisdiction after the Registry Funds are released to VO.

## VI.      CONCLUSION

VO respectfully requests the Court to dismiss all Claimants' claims for lack of jurisdiction, waiver and forfeiture because Claimants' rights to the Registry Funds have already been fully litigated, and this Court's rulings on Claimants' rights to the Registry Funds are currently on appeal to the Tenth Circuit.

Alternatively, if the Court proceeds to the merits of MCG's claims, then VO respectfully requests the Court to grant relief under Rule 56(d) to allow VO to discover the evidence to support its claims and defenses, and to enter an order such that VO can present its arguments and claims against MCG such that VO's privileged communications and information will not be disclosed to Heartwise.

DATED this <u>13th</u> day of June, 2025.

WORKMAN NYDEGGER

By  /s/*Chad E. Nydegger*
　　　 CHAD E. NYDEGGER

*Attorney for Vitamins Online, Inc.*